## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| S.C., by her parent and next friend KARRIE CONLEY; K.C., by her parent and next friend KARRIE CONLEY; and R.H., by his parent and next friend MICHELE HUDAK, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 1:25-cv-10007 |
| v. | |
| LUCY CALKINS; IRENE FOUNTAS; GAY SU PINNELL; RWPN, LLC, d/b/a THE READING & WRITING PROJECT AT MOSSFLOWER, LLC; BOARD OF TRUSTEES OF TEACHERS COLLEGE, COLUMBIA UNIVERSITY; FOUNTAS AND PINNELL, LLC; GREENWOOD PUBLISHING GROUP, LLC, d/b/a HEINEMANN PUBLISHING; and HMH EDUCATION CO., | |
| Defendants. | |

**DEFENDANTS LUCY CALKINS; IRENE FOUNTAS; GAY SU PINNELL; RWPN, LLC, d/b/a THE READING & WRITING PROJECT AT MOSSFLOWER, LLC; FOUNTAS AND PINNELL, LLC; GREENWOOD PUBLISHING GROUP, LLC, d/b/a HEINEMANN PUBLISHING; and HMH EDUCATION COMPANY'S <u>MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND, IN THE ALTERNATIVE, MOTION TO STRIKE CLASS ALLEGATIONS</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................3

    A.    Plaintiffs' Allegations And Requested Relief...................................................3

    B.    "Reading Wars" And The Literacy Materials...................................................5

    C.    Shotgun Pleading And Class-Action Allegations ............................................7

LEGAL STANDARD.........................................................................................................8

ARGUMENT ......................................................................................................................9

I.    COURTS DO NOT RESOLVE DISPUTES OVER EDUCATIONAL
THEORIES .............................................................................................................9

    A.    Plaintiffs Improperly Ask The Court To Step Into the Shoes Of The
Executive and Legislative Branches ..............................................................11

    B.    There Is No Applicable Standard Of Care ......................................................13

    C.    Plaintiffs Cannot Establish Causation.............................................................15

    D.    Limited Educational Achievement Is Not A Legally Cognizable Injury .............16

    E.    Plaintiffs Improperly Ask This Court To Police The Marketplace of Ideas..........17

II.    PLAINTIFFS FAIL TO MEET BASIC PLEADING STANDARDS, LET
ALONE THE HEIGHTENED STANDARD OF RULE 9(b)............................17

III.    THE CHAPTER 93A CLAIM FAILS...................................................................20

    A.    Plaintiffs Cannot Establish The Requisite Commercial Relationship
Because They Did Not Select Or Purchase The Literacy Materials.....................20

    B.    Defendants' Conduct Was Not Unfair..............................................................22

    C.    Defendants' Conduct Was Not Deceptive .......................................................26

IV.    PLAINTIFFS' NEGLIGENCE CLAIM FAILS...................................................28

    A.    There Cannot Be Negligent Misrepresentation Where There Is No
Reliance...........................................................................................................28

    B.    Any Negligence Claim Is Barred By The Economic Loss Doctrine And
Otherwise Fails ...............................................................................................29

V.    PLAINTIFFS SEEK TO IMPROPERLY EXTEND PRODUCTS LIABILITY
LAW TO THE MARKETPLACE OF IDEAS ....................................................31

VI.    PLAINTIFFS CANNOT ESTABLISH A CLASS..............................................33

    A.    The Putative Class Includes Too Many Uninjured Members..............................34

    B.    Proving Causation Would Require Extensive Individualized Inquiry..................35

    C.    Plaintiffs' Negligent Misrepresentation And Chapter 93A Claims Cannot
Be Resolved On A Classwide Basis ...............................................................36

VII.    INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED ............................................37

    A.    HMH Should Be Dismissed Because Plaintiffs Have Not Stated Any Claim As To It ..............................................................................................................37

    B.    F&P, LLC and Mossflower Should Be Dismissed Because Plaintiffs Have Not Stated Any Claim As To Them.......................................................................38

CONCLUSION..............................................................................................................................39

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alternative Systems Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23 (1st Cir. 2004)......................18

*Ambrose v. New England Ass'n of Schools. & Colleges, Inc.*, 252 F.3d 488 (1st Cir. 2001) ................................................................................................................12, 13, 14

*In re Asacol Antitrust Litigation*, 907 F.3d 42 (1st Cir. 2018)................................................34, 36

*Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81 (1st Cir. 2021)........................................34

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................8

*Bezdek v. Vibram USA Inc.*, No. 1:12-cv-10513-DPW, 2013 WL 639145 (D. Mass. Feb. 20, 2013)................................................................................................................8

*Bittle v. Oklahoma City University*, 2000 OK CIV APP 66, 6 P.3d 509 (Okla. Civ. Ct. Appeals 2000) ................................................................................................................9, 10

*In re Boston University COVID-19 Refund Litigation*, No. 1:20-cv-10827-RGS, 2022 WL 3154670 (D. Mass. Aug. 8, 2022) ........................................................................16

*Buck v. American Airlines, Inc.*, 476 F.3d 29 (1st Cir. 2007)..........................................................8

*Canales v. Gatzunis*, 979 F. Supp. 2d 164 (D. Mass. 2013)........................................................38

*Cavaliere v. Duff's Business Institute*, 413 Pa. Super. 357, 605 A.2d 397 (Pa. Super. 1992)................................................................................................................12

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24 (1st Cir. 2000) ................................................................................................................4

*In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12 (1st Cir. 2003) ........................................5

*Commonwealth of Puerto Rico v. M/V Emily S.*, 158 F.R.D. 9 (D.P.R. 1994)............................30

*Courtemanche v. Motorola Solutions, Inc.*, 2024 WL 5111509 (D. Mass. Dec. 13, 2024) ....................20

*Craig v. Everett M. Brooks Co.*, 351 Mass. 497 (1967) ................................................................28

*Crommelin v. Takeda Pharmaceuticals U.S.A., Inc.*, No. 1:24-cv-10552-RGS, 2024 WL 4045730 (D. Mass., Sep. 4, 2024) ....................................................................26, 28

*Cumis Insurance Society, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458 (2009) ....................30

*Cummings v. HPG International, Inc.*, 244 F.3d 16 (1st Cir. 2001)..............................................19

*Diamond Crystal Brands, Inc. v. Backleaf*, LLC, 60 Mass. App. Ct. 502 (2004) ........................24

*Doe v. Secretary of Education*, 479 Mass. 375 (2018) ......................................................11

*Donohue v. Copiague Union Free School District*, 47 N.Y.2d 440 (1979) .........................12, 15

*Doucette v. Jacobs*, 106 F.4th 156 (1st Cir. 2024) ........................................................30

*Douglas v. EF Institute for Cultural Exchange, Inc.*, No. 1:20-cv-11740-DJC,
    2024 WL 3070251 (D. Mass. 2024) ..................................................................35

*Dumont v. Reilly Foods Co.*, 934 F.3d 35 (1st Cir. 2019) .....................................9, 26, 28

*Ellis v. Safety Insurance Co.*, 41 Mass. App. Ct. 630 (1996) ..........................................23

*Engren v. Johnson & Johnson, Inc.*, No. 1:21-10333-RGS, 2021 WL 4255296 .........................19

*Ezell v. Lexington Insurance Co.*, 286 F. Supp. 3d 292 (D. Mass. 2017).................................18

*In re Ford Motor Co. Securities Litigation*, 381 F.3d 563 (6th Cir. 2004)...............................27

*Gambrill v. Board of Education of Dorchester County*, 481 Md. 274 (2022)................................9

*Garcia v. Kusan, Inc.*, 39 Mass. App. Ct. 322 (1995) ...............................................31, 32

*Garcia-Catalan v. United States*, 734 F.3d 100 (1st Cir. 2013) ...........................................8

*Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315 (S.D.N.Y. 2006) .........................32, 33

*Gossels v. Fleet National Bank*, 453 Mass. 366 (2009)..................................................29

*Gupta v. New Britain General Hospital*, 239 Conn. 574 (1996) ....................................10

*Hancock v. Commisioner of Education*, 443 Mass. 428 (2005) .............................................11, 12

*Hayduk v. Lanna*, 775 F.2d 441 (1st Cir. 1985) ........................................................9

*Hershenow v. Enterprise Rent–A–Car Co. of Boston, Inc.*, 445 Mass. 790 (2006).....................25

*Hunter v. Board of Educatioin of Montgomery County*, 292 Md. 481 (1982) .......................12, 16

*Missouri v. Jenkins*, 515 U.S. 70 (1995).................................................................12

*Learning Express, Inc. v. Ray-Matt Enterprises, Inc.*, 74 F. Supp. 2d 79 (D. Mass. 1999).....................19

*Loughlin v. Vi-Jon, LLC*, 728 F. Supp. 3d 163 (D. Mass 2024) ..............................................34, 37

*Love v. Career Education Corp.*, No. 4:11cv-1585-JAR, 2012 WL 1684572 (E.D.
    Mo. May 15, 2012) ..................................................................................10, 13

*Manning v. Boston Medical Center Corp.*, 725 F.3d 34 (1st Cir. 2013) ...................................9, 33

*Martin v. Mead Johnson Nutrition Co.*, No. 1:09-cv-11609-NMG, 2010 WL 3928707 (D. Mass. Sept. 30, 2010) .................................................................................18

*McDuffy v. Secretary of the Office of Education*, 415 Mass. 545 (1993) ......................................11

*Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547 (2008).......................................................23

*Moran v. Stonehill College, Inc.*, No. 2077CV00431, 2021 WL 965754 (Mass. Sup. Ct. Feb. 16, 2021) ...........................................................................................................21

*Morris v. Princess Cruises, Inc.*, 236 F.3d 1061 (9th Cir. 2001) ..................................................27

*Mowbray v. Waste Management Holdings, Inc.*, 189 F.R.D. 194 (D. Mass. 1999) ......................36

*Mulder v. Kohl's Department Stores, Inc.*, 865 F.3d 17 (1st Cir. 2017) ..................................8, 17

*Nemirovsky v. Daikin North America Inc.*, 488 Mass. 712 (2021)................................................25

*New York State Board of Elections v. Lopez Torres*, 552 U.S. 196 (2008) ...................................17

*Nizhoni Health Systems LLC v. Netsmart Technologies, Inc.*, No. 1:22-cv-11212-DJC, 2023 WL 3657386 (D. Mass. May 25, 2023).................................................................19

*Nycal Corp. v. KPMG Peat Marwick LLP*, 426 Mass. 491 (1998) ...............................................29

*O'Hara v. Diageo-Guinness*, No. CV 1:15-cv-14139-MLW, 2021 WL 11749765 (D. Mass. Mar. 17, 2021)..........................................................................................................36

*O'Neill v. United States*, 328 F.Supp. 3d 16 (D. Mass. 2018).........................................................6

*Omni-Wave Electronics Corp. v. Marshall Industries*, 127 F.R.D. 644 (D. Mass. 1989)......................38

*Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81 (2d Cir. 2011) ..........................................................................................................................10

*Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008)..............................................................................13

*Payton v. Abbott Laboratories*, 386 Mass. 540 (1982)................................................................30

*Peter W. v. San Francisco Unified School District*, 60 Cal. App. 3d 814 (1976) .................15, 16

*Planned Parenthood Federation of America v. Problem Pregnancy of Worcester, Inc.*, 398 Mass. 480 (1986) ........................................................................................................21

*Rafferty v. Merck & Co.*, 479 Mass. 141 (2018).........................................................................21

*Ross v. Creighton University*, 957 F.2d 410 (7th Cir. 1992) ............................................13, 15, 35

*Rovinelli v. Trans World Entertainment Corp.*, No. 3:19-cv-11304-DPW, 2021
   WL 752822 (D. Mass. Feb. 2, 2021) ............................................................9, 33, 34

*Saroya v. University of the Pacific*, 503 F. Supp. 3d 986 (N.D. Cal. 2020) ..................................14

*School Committee of Springfield v. Board of Education*, 362 Mass. 417 (1972) .........................12

*Shaulis v. Nordstrom, Inc.*, 865 F.3d 1 (1st Cir. 2017) .....................................................16, 20, 27

*Solano v. Boston Scientific Corp.*, No. 1:23-cv-12366-JEK, 2024 WL 1675692
   (D. Mass. Apr. 5, 2024) ..............................................................................17, 18, 19

*Speakman v. Allmerica Financial Life Insurance*, 367 F. Supp. 2d 122 (D. Mass. 2005) ....................37

*Squeri v. Mount Ida College*, 954 F.3d 56 (1st Cir. 2020) ...........................................................21

*Steinmetz v. Coyle & Caron, Inc.*, 862 F.3d 128 (1st Cir. 2017) ...................................................20

*In re Suffolk Univeristy Covid Refund Litigation*, 616 F. Supp. 3d 115 (D. Mass. 2022) ......................9

*Sweezy v. State of New Hampshire by Wyman*, 354 U.S. 234 (1957) ...........................................17

*Swidryk v. Saint Michael's Medical Center*, 201 N.J. Super. 601 (Law. Div. 1985) ...................12

*In re TJX Cos. Retail Security Breach Litigation*, 246 F.R.D. 389 (D. Mass. 2007) ........34, 35, 37

*Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60 (1st Cir. 2020) .................................................. *passim*

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................................................35

*Walsh v. TelTech Systems, Inc.*, 821 F.3d 155 (1st Cir. 2016) ...............................................20, 26

*Walter v. Bauer*, 439 N.Y.S.2d 821 (NY App. Div. 1981) ...........................................................32

*Wang Laboratories., Inc. v. Business Incentives, Inc.*, 398 Mass. 854 (1986) .............................23

*Waugh v. Morgan Stanley & Co.*, 966 N.E.2d 540 (Ill. App. Ct. 2012) ........................................10

*Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, No. 1:14-cv-12047-
   ADB, 2015 WL 4467064 (D. Mass. July 20, 2015) ...............................................38

*Winter v. G.P. Putnam's Sons*, 938 F.2d 1033 (9th Cir. 1991) .....................................................32

*Wortman v. Logmein, Inc.*, No. 1:18-cv-11475-GAO, 2022 WL 3714620 (D.
   Mass. Aug. 29, 2022) ................................................................................................35

**Statutes and Rules**

Mass. Gen. Laws. ch. 71
    § 37....................................................................................................................11
    § 48....................................................................................................................22

Mass. Gen. Laws ch. 93A
    § 3.....................................................................................................................22
    § 9............................................................................................................... *passim*

Fed. R. Civ. P. 9(b) .................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6)......................................................................................9, 21

Fed. R. Civ. P. 23(b)(3)......................................................................................33

**Constitutional Provisions**

Massachusetts Constituion
    Pt. I, Art. 30...............................................................................................12
    Pt. II, Ch. V, § 2...........................................................................................11

**Other Authorities**

Restatement (Second) of Torts, *Products Liability*, § 19, cmt. d................................................32

*Tort Liability of Private Schools and Institutions of Higher Learning for*
    *Educational Malpractice*, 18 A.L.R.7th Art. 7 (2017) ............................................16

## **INTRODUCTION**

Plaintiffs ask this Court to make judgments about early literacy education that Massachusetts law entrusts exclusively to its schools and educators. Their claims combine nonviable theories of injury and causation with unsubstantiated factual allegations that fail to meet basic pleading requirements. This Court should dismiss the Complaint because it does not, and cannot, state a claim for relief under any legal theory or standard.

This Court is not an appropriate forum to decide how best to teach reading, or which curricula Massachusetts teachers must use in their classrooms. That power is vested in the Commonwealth's executive and legislative branches, which in turn have delegated it to local school officials. Nevertheless, Plaintiffs ask this Court to wade into a decades-long academic debate, step into the shoes of those educators, and decide for itself what role phonics should play in teaching children how to read. More than this, Plaintiffs seek a ruling that a phonics-dominant approach to teaching reading is objectively and definitively better for all Massachusetts students than the alternatives, and that teachers, professors, curriculum writers, researchers, and publishers whose ideas or approaches are different than Plaintiffs' should be held liable for multiple damages under consumer protection statutes and common law. That is not what Chapter 93A is for; it is not what the law of negligence is for; and it is not what courts are for.

The troubling nature of Plaintiffs' request is compounded by their failure to meet elementary pleading requirements. In particular, Plaintiffs fail (i) to allege the "who, what, where, and when" of the alleged fraud described in the Complaint, as required by Rule 9(b), and (ii) to explain *how* each named defendant *individually* engaged in the alleged fraud or contributed to the alleged harm. Instead, Plaintiffs rely on conclusory, sensational language and engage in improper

shotgun pleading against all Defendants.[1]  Plaintiffs' accusations are perhaps fit for a press release or Op-Ed article, but they fall far short of federal pleading requirements.

The non-justiciability of Plaintiffs' claims and the basic pleading defects of the Complaint are reason enough to dismiss.  Even were they not, Plaintiffs' claims fail for the following additional reasons.

*First*, Plaintiffs fail to state a claim under Chapter 93A because they do not proffer well-pleaded facts to support the existence of the required commercial relationship with Defendants; Defendants' alleged conduct is neither unfair nor deceptive; and Plaintiffs cannot show that the literacy materials at issue caused their alleged injury.

*Second*, Plaintiffs fail to state a claim for negligence (under either a negligent misrepresentation or a general negligence theory) because Plaintiffs did not rely on any alleged statements by Defendants; their claims are barred by the economic loss doctrine; and they have not sufficiently pled that Defendants' conduct caused them injury.

*Third*, though they label them as Chapter 93A and negligence claims, Plaintiffs are fundamentally asking the Court to extend product liability theories to the marketplace of ideas, an effort that courts routinely and consistently reject.

*Fourth*, even if this Court does not dismiss Plaintiffs' claims in their entirety, it should dismiss or strike their overbroad class allegations because the putative class definition includes large numbers of individuals who did not struggle with learning to read; determining whether those who did struggle with learning to read did so *because of* Defendants' literacy materials requires

---

[1] Lucy Calkins ("Calkins"); Irene Fountas ("Fountas"); Gay Su Pinnell ("Pinnell"); RWPN, LLC, d/b/a The Reading & Writing Project at Mossflower, LLC ("Mossflower"); Fountas and Pinnell, LLC ("F&P LLC"); Greenwood Publishing Group, LLC, d/b/a Heinemann Publishing ("Heinemann"); and HMH Education Company ("HMH").

individualized inquiries; the negligence claim requires an individualized assessment of each class member's reliance on the allegedly deceptive statements; and the Chapter 93A claim requires an individualized assessment of causation and whether each class member suffered a distinct Chapter 93A injury.

*Finally*, though Defendants have collaborated to present a single consolidated motion to dismiss, certain defendants have individualized bases that warrant dismissal of Plaintiffs' claims as to them specifically.  HMH should be dismissed from this suit because the Complaint contains no allegations that HMH, as opposed to its subsidiary Heinemann, created, marketed, or sold any of the reading materials or curricula identified in the Complaint or made any of the alleged misstatements.  F&P, LLC and Mossflower should be dismissed from this suit because Plaintiffs do not allege material facts attributable to F&P, LLC and Mossflower, including not asserting that F&P, LLC and Mossflower created, marketed, or sold any of the purportedly objectionable literacy materials, or that they made alleged misrepresentations related to such materials.

For these reasons, as described more fully below, the Complaint should be dismissed with prejudice.

## **BACKGROUND**

### A.    **Plaintiffs' Allegations And Requested Relief**

Plaintiffs accuse Defendants—professors and publishers who have devoted significant portions of their professional careers to thinking, researching, writing, and teaching about early literacy education—of ignoring and downplaying the importance of phonics in their literacy curricula and related materials ("Literacy Materials"), and making statements about the Literacy Materials that were allegedly inaccurate or misleading. *See e.g.*, Doc. 1-1, Ex. A ("Compl.") ¶¶ 30,

34, 40, 41, 43, 47, 52, 53.[2]  More specifically, Plaintiffs claim that because the Literacy Materials allegedly fail to sufficiently emphasize phonics, they are defective, fail to teach children how to read, and have been rejected by the academic community in favor of an approach that relies on phonics as the dominant means of reading instruction.  *See, e.g.*, Compl. ¶¶ 25, 27–29, 39, 42–45, 47, 50 & p. 23.

Plaintiffs attended schools that used one or more of the Literacy Materials and struggled with learning to read allegedly because of the defective nature of the reading instruction.  *See* Compl. ¶¶ 65–67.  Yet, as the materials cited in the Complaint acknowledge, "[m]any factors influence a student's reading skills—from preschool preparation to whether their basic needs are met." Ex. A (Boston Globe Oct. 4, 2023 article) at 4.[3]  Plaintiffs do not provide any allegations or details to support the inference that their children's reading struggles can be attributed to the Literacy Materials.  As a threshold matter, they do not identify what specific Literacy Materials were actually used to teach them; what other literacy curricula were used by their schools, including whether any alternative phonics materials were used; what, if any, supplemental or special education materials may also have been used; whether any of the students had any learning difficulties; the size of each student's classrooms; the student-to-teacher ratios for reading instruction; whether the teachers were trained on, implemented, and/or how they implemented any

---

[2] In the "Parties" section of the Complaint, Plaintiffs only identify the following four materials: Units of Study ("UoS"), Fountas & Pinnell Classroom ("F&P Classroom"), Leveled Literacy Intervention ("LLI"), and the Fountas & Pinnell Benchmark Assessment System ("BAS"). Compl. ¶¶ 8, 10-11, 14. Notably, Plaintiffs do not allege to have ever actually used, encountered, or been taught literacy through F&P Classroom. *See* Compl. ¶¶ 65–67.

[3] The exhibits attached to this memorandum are those cited in the Complaint and therefore incorporated into the allegations of the Complaint by reference.  *Clorox Co. P. R. v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (on motion to dismiss, courts "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint").

of the Literacy Materials or other materials; the frequency of the instruction; the time period during which Plaintiffs were taught using the Literacy Materials; or anything else about how they were educated.[4]

As for relief, Plaintiffs seek to recover actual and compensatory damages, punitive and treble damages, attorneys' fees and costs, and, alarmingly, a court order requiring Defendants to provide, free of charge, "an early-literacy curriculum that sufficiently reflects and incorporates" Plaintiffs' preferred literacy approach.  Compl., p. 23.

**B.    "Reading Wars" And The Literacy Materials**

There has been a decades-long debate concerning the appropriate role of phonics in teaching reading.  Compl. ¶¶ 7, 31–32.  Although Plaintiffs cast this debate as settled in favor of Plaintiffs' preferred literacy approach (*see, e.g.*, Compl. ¶¶ 25, 27–29), the materials relied on in the Complaint acknowledge that the discussion over how best to teach reading has been a "pendulum [that] has swung back and forth between holistic, meaning-centered approaches and phonics approaches without much hope of resolving disagreements."  Ex. B (excerpted National Reading Panel: Report of the Subgroups) at 2-1; Compl. ¶¶ 26–27 (describing the National Reading Panel's work and report).  The National Reading Panel also found that (i) "systematic phonics" or phonics-dominant instruction (Plaintiffs' preferred literacy approach) "should be

---

[4] Plaintiffs have represented that they attended public schools in the Ashland, Sandwich, and Acton-Boxborough school districts from 2015 through 2022.  Students in those school districts who were eligible to take the Massachusetts Comprehensive Assessment System ("MCAS") during those time periods achieved *higher* than average scores on the MCAS in English and Language Arts during the relevant time.  *See* Next Generation MCAS Test 2019: Percent of Students at Each Achievement Level for David Mindess, available at https://tinyurl.com/mnj55rxz; Next Generation MCAS Test 2021: Percent of Students at Each Achievement Level for David Mindess, available at https://tinyurl.com/yk8nut2c; Next Generation MCAS Test 2018: Percent of Students at Each Achievement Level for Blanchard Memorial School, available at https://tinyurl.com/5yuu3b97.  This Court may take judicial notice of MCAS scores.  *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003).

integrated with other reading instruction in phonemic awareness, fluency, and comprehension strategies to create a complete reading program," (ii) phonics is but one component "within a complete and integrated reading program" because "[s]everal additional competencies must be acquired as well to ensure that children will learn to read," (iii) "phonics teaching is a means to an end" and programs that focus "too much" on phonics and "not enough" on putting phonics to use are "unlikely to be very effective," and (iv) because "children are known to vary greatly in the skills they bring to school … [t]eachers should be able to assess the needs of the individual students and tailor instruction to meet specific needs." Ex. C (National Reading Panel Report) at 2, 5, 6, 7. Similarly, the American Institutes of Research (Compl. ¶ 41) compared schools that used Calkins' UoS to those who did not, and found that schools using the Calkins' materials "show achievement that is not only higher, but statistically significantly higher, relative to schools in the comparison group." Ex. D (American Institutes for Research study) at 3.[5]

Furthermore, despite alleging that Defendants *completely ignored* research supporting a phonics-dominant approach to teaching reading, the Complaint itself acknowledges that the Literacy Materials, which were revised over time, include phonics-based instructions. Compl. ¶¶ 30, 37, 53. Importantly, Plaintiffs and the materials on which they rely also acknowledge that it is local school officials who study, weigh, and ultimately choose which literacy curricula they believe will best serve students in the Commonwealth, and districts often select products from multiple authors and publishers to build a full literacy curriculum to educate children. Compl. ¶¶ 48, 51, 69, 77, 86; Ex. E (Boston Globe Feb. 7, 2024 article) at 1–2; *see also* Ex. A at 17–18.

---

[5] Plaintiffs simply ignore these results and conclude they suffer "from glaring methodological, theoretical, and other flaws." Compl. ¶ 41. This Court, however, need not and should not accept Plaintiffs' conclusory allegations as true. *See O'Neill v. United States*, 328 F.Supp. 3d 16, 23 (D. Mass. 2018) (allegations that are "threadbare, conclusory [or] speculative" or "devoid of any specific factual allegations" are not "well-pleaded facts").

### C.    Shotgun Pleading And Class-Action Allegations

Defendants include (i) Mses. Calkins, Fountas, and Pinnell, who are professors at Columbia University, Lesley University, and The Ohio State University, respectively, and their associated corporate entities; (ii) HMH, a learning technology company that delivers integrated K–12 learning materials and solutions; and (iii) Heinemann, the publisher of the Literacy Materials and provider of educational services for teachers from prekindergarten through college, and a subsidiary of HMH.  The Complaint also names as a defendant Teachers College, Columbia University, the first and largest graduate school of education in the United States.  Compl. ¶¶ 7–15.

Rather than distinguishing and making claims against each of these eight defendants individually, Plaintiffs simply lump them all together.  *See, e.g.*, Compl. ¶¶ 7, 30, 71, 76, 84.  For example, Plaintiffs refer to the Literacy Materials as "Defendants' products" even though the Literacy Materials were authored by different author defendants, *e.g.*, Ms. Calkins did not author the materials written by Mses. Fountas and Pinnell, and vice versa.  Compl. ¶¶ 16, 37, 59, 61.  Plaintiffs take the same approach when attempting to describe Defendants' alleged false statements and wrongful conduct.  Compl. ¶¶ 40, 43, 49, 71.  By doing so, Plaintiffs fail to plead facts demonstrating the who, what, where, and when, of Defendants' allegedly false statements—let alone specify which person or entity engaged in what allegedly wrongful conduct.  *Id.*

Plaintiffs' blunderbuss approach to the eight defendants extends to their class allegations, which put forth an unworkably broad class definition.  Plaintiffs seek to certify a class of:

> [A]ll children and parents and/or legal guardians of children currently or previously enrolled in kindergarten, first, second, or third grade in a Massachusetts elementary school that purchased, licensed, reproduced, or otherwise employed any . . . [of the Literacy Materials], and who reached (or will reach) the age of majority on or after December 4, 2020.

Compl. ¶ 69.  Absent from this definition is a requirement that a putative class member actually be taught to read using the Literacy Materials or that a putative class member even struggled to learn to read as a result.  The inclusion of a large number of non-injured students in Plaintiffs' overly broad class definition is confirmed by the materials cited in the Complaint, which note that Massachusetts students "outperform their peers nationally in virtually every measure of academic achievement."  Ex. A at 2.

## LEGAL STANDARD

A complaint that fails to "state a claim to relief that is plausible on its face" is subject to dismissal.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In reviewing a motion to dismiss, the court must distinguish the complaint's factual allegations (which, if well-pleaded, must be accepted as true) from its conclusory legal conclusions (which need not be credited).  *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013).  A plaintiff must provide more than labels, bald conclusions, or speculation to plead an entitlement to relief.  *Twombly*, 550 U.S. at 555; *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 (1st Cir. 2007).  When a plaintiff fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," dismissal is required.  *Bezdek v. Vibram USA Inc.*, No. 1:12-cv-10513-DPW, 2013 WL 639145 at, *2 (D. Mass. Feb. 20, 2013) (internal quotation marks and citation omitted).  Where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief" and should be dismissed.  *Id.*

In addition, where (as here) a claim sounds in fraud, Rule 9(b)'s heightened pleading standard applies, requiring "plaintiffs to specifically plead 'the time, place, and content of an alleged false representation.'"  *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21–22 (1st Cir.

2017) (citation omitted); *see also Dumont v. Reilly Foods Co.*, 934 F.3d 35, 38–39 (1st Cir. 2019) ("The circumstances to be stated with particularity under Rule 9(b) generally consist of 'the who, what, where, and when' of the allegedly [misleading] representation.") (citation omitted).[6] General or conclusory allegations of fraud do not suffice. *See Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985).

## ARGUMENT

## I.    COURTS DO NOT RESOLVE DISPUTES OVER EDUCATIONAL THEORIES

Plaintiffs allege that there is a particular educational theory underlying all of the Literacy Materials that failed to sufficiently incorporate phonics, *see, e.g.*, Compl. ¶¶ 76–77, 85–86, and caused reduced educational achievement, Compl. ¶¶ 79, 86–87.  Claims based on underlying questions of educational approaches or effectiveness have been nearly universally rejected in every jurisdiction in which they have been made.  *See, e.g.*, *In re Suffolk Univ. Covid Refund Litig.*, 616 F. Supp. 3d 115, 118 (D. Mass. 2022) (rejecting claims that would require the "judiciary to define the sufficiency or quality of an educational program"); *Gambrill v. Bd. of Educ. of Dorchester Cnty.*, 481 Md. 274, 310 (2022) ("[C]ourts have declined to recognize a cause of action or claims regarding the quality of education provided[.]"); *Bittle v. Oklahoma City Univ.*, 2000 OK CIV APP 66, ¶ 14, 6 P.3d 509, 514 (Okla. Civ. Ct. Appeals 2000) (noting that, for suits by students "asserting

---

[6] As explained below, to the extent all claims are not dismissed, Defendants alternatively move to strike the class allegations.  The standard for striking class allegations is the same as the standard for a motion to dismiss, namely that Plaintiffs must "plead[] the existence of a group of putative class members whose claims are susceptible of resolution on a classwide basis."  *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013).  "[C]ourts retain 'considerable discretion' to strike material under Rule 12(f), and when 'it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations.'"  *Rovinelli v. Trans World Ent. Corp.*, No. 3:19-cv-11304-DPW, 2021 WL 752822, at *6 (D. Mass. Feb. 2, 2021) (first quoting *Alvarado-Morales v. Dig. Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988), and then quoting *Manning*, 725 F.3d at 59).

inadequate or improper instruction … [t]he courts uniformly reason that such a claim runs afoul of established public policy"); *Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574, 590 (1996) ("[T]he court is ... asked to evaluate the course of instruction [and] called upon to review the soundness of the method of teaching … This is a project that the judiciary is ill equipped to undertake.").

Attempts to re-package claims that fundamentally allege the shortcomings of education under other labels such as fraud, negligence, or breach of contract have been similarly unavailing. *See e.g.*, *Waugh v. Morgan Stanley & Co*., 966 N.E.2d 540, 551 (Ill. App. Ct. 2012) (dismissing negligence claim and noting that "most jurisdictions that have considered the issue have found that … claims [requiring an analysis of the quality of education] are not cognizable") (collecting cases); *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) ("[A] student may not seek to avoid this [bar on claims regarding education quality] rule by couching such a claim as a breach of contract claim."); *Bittle*, 6 P.3d at 514 (affirming judgment where "all of [plaintiff's] claims for fraud, breach of contract, tortious breach of contract, negligence, and unjust enrichment commonly" involve educational-quality allegations); *Love v. Career Educ. Corp.*, No. 4:11cv-1585-JAR, 2012 WL 1684572, at *3 (E.D. Mo. May 15, 2012) ("Plaintiff's tort claims regarding the 'sufficiency,' 'adequacy' and 'quality' of her education cannot be evaluated by the Court, even if they are framed as allegations of fraud.").

The basic principle that courts should not resolve disputes over education theory is based on a number of rationales, any one of which is sufficient to warrant dismissal here: (1) overseeing educational options is a task entrusted to political bodies, not courts; (2) there is no objective standard of care to resolve these sorts of cases; (3) causation cannot be established for these types

of claims; (4) a failure of educational achievement does not constitute a legally cognizable injury; and (5) endorsing one pedagogy over another runs contrary to the First Amendment.

### A.    Plaintiffs Improperly Ask The Court To Step Into the Shoes Of The Executive and Legislative Branches

The Massachusetts Constitution expressly commits the oversight of education to the elected branches—not the judiciary.  *See* Mass. Const. Pt. II, Ch. V, § 2 ("[I]t shall be the duty of legislatures and magistrates,[7] in all future periods of this commonwealth, to cherish the interests of literature and the sciences, and all seminaries of them; especially … public schools and grammar schools in the towns[.]").  In turn, the Massachusetts General Court (legislature) has tasked school districts to "establish educational goals and policies for the schools in the district consistent with the requirements of law and statewide goals and standards established by the board of education." Mass. Gen. Laws. ch. 71 § 37; *see also id.* § 48 ("The principal at each school … shall … purchase textbooks and other school supplies.").  As a part of these duties, schools decide which curricular materials to use, including the Literacy Materials, with full access to information regarding the advantages and disadvantages of different approaches to teaching reading.  Compl. ¶ 26.

Consistent with this constitutional delineation, Massachusetts courts recognize that choices related to education policy are "fundamentally political," *Doe v. Sec'y of Educ.*, 479 Mass. 375, 390 (2018), and that "Courts are not well positioned to make such decisions," *Hancock v. Comm'r of Educ.*, 443 Mass. 428, 460 (2005) (Marshall, C.J., concurring).  Accordingly, Massachusetts courts routinely find that questions regarding education policy are left "to the Governor and the Legislature." *Hancock*, 443 Mass. at 460 (Cowin & Sosman, JJ., concurring); *see Doe*, 479 Mass. at 390 (declining to make "policy choices [about charter schools] that are properly the Legislature's

---

[7] In this provision, "magistrates" refers to the executive branch, not the judiciary. *See McDuffy v. Secretary of the Office of Education*, 415 Mass. 545, 606 (1993).

domain"). Indeed, the courts cannot exercise such legislative and executive powers under Massachusetts' constitutional structure. *Hancock*, 443 Mass. at 466, (Cowin & Sosman, JJ., concurring) (in an education-policy case, noting that "the overarching doctrine of the separation of powers prohibits judicial intervention in otherwise discretionary functions of the executive and legislative branches"); Mass. Const., Pt. I, Art. 30 (containing the Massachusetts separation of powers directive); *School Committee of Springfield v. Board of Education*, 362 Mass. 417, 459 (1972) (citing Article 30 and declining to displace state and local education authorities from their assigned responsibilities to correct racial imbalance in public schools).[8]

Not only is overseeing education expressly assigned to the non-judicial branches, but as a functional matter, courts lack the means to schools and make determinations regarding the fundamental policy questions surrounding differing educational theories, decisions, or approaches. *Ambrose v. New England Ass'n of Schs. & Colleges, Inc.*, 252 F.3d 488, 499 (1st Cir. 2001) (noting "the patent undesirability of having courts attempt to assess the efficacy of the operations of academic institutions"); *Missouri v. Jenkins*, 515 U.S. 70, 131–32 (1995) (Thomas, J., concurring) ("State and local school officials not only bear the responsibility for educational decisions, they

---

[8] Numerous jurisdictions have similarly concluded that claims based on educational quality are not viable where authority over educational policy is committed to non-judicial bodies. *See generally Donohue v. Copiague Union Free Sch. Dist.*, 47 N.Y.2d 440, 445 (1979) ("Recognition in the courts of this cause of action would constitute blatant interference with the responsibility for the administration of the public school system lodged by Constitution and statute in school administrative agencies."); *Swidryk v. Saint Michael's Med. Ctr.*, 201 N.J. Super. 601, 607 (Law. Div. 1985) ("The Legislature has vested [various boards] with the authority to insure that a proper medical education … It would be against public policy for the court to usurp these functions."); *Hunter v. Bd. of Educ. of Montgomery Cnty.*, 292 Md. 481, 488 (1982) ("Such matters have been properly entrusted by the Generally [sic] Assembly to the State Department of Education and the local school boards who are invested with authority over them."); *Cavaliere v. Duff's Bus. Inst.*, 413 Pa. Super. 357, 364, 605 A.2d 397, 401 (Pa. Super. 1992).

also are better equipped than a single federal judge to make the day-to-day policy, ***curricular***, and funding choices." (emphasis added)).

These principles warrant dismissal here. The Complaint itself acknowledges the fundamentally non-judicial nature of the questions it raises. For example, Plaintiffs allege that many states have adopted the type of reading programs Plaintiffs prefer through the political processes. *See* Compl. ¶ 51 (noting that states have "passed laws or promulgated regulations" requiring the use of Plaintiffs' preferred educational methods).[9] At bottom, Plaintiffs ask this Court to usurp individual schools' power to make this decision by deciding what the correct amount of phonics should be in early literacy curricula statewide. Even if Plaintiffs' allegations regarding the merits of their preferred, phonics-dominant approach to teaching reading were true, the relief they seek is not one a court can give. For concerns like a "school's choice of books," Plaintiffs' recourse is in the "the normal political processes for change in the town and state." *Parker v. Hurley*, 514 F.3d 87, 107 (1st Cir. 2008).

### B.    There Is No Applicable Standard Of Care

Courts regularly reject the types of education-based claims raised by the Complaint because of "the lack of a satisfactory standard of care" for resolving them. *See Ambrose*, 252 F.3d at 499. "Theories of education are not uniform, and different but acceptable scientific methods of academic training [make] it unfeasible to formulate a standard by which to judge the conduct of those delivering the services." *Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992) (internal quotation marks omitted)); *see also Love v. Career Educ. Corp.*, 2012 WL 1684572, at *3 (E.D. Mo. May 15, 2012) ("Plaintiff's claims would require the Court to become entangled in a dispute[]

---

[9] Massachusetts' General Court has notably chosen *not* to pass similar laws, even though bills to require such methods have been before the legislature. *See, e.g.*, S. 263, 194th Gen. Ct. (Mass. 2023-24).

'over the pedagogical methods employed,' and would 'involve an inquiry into the nuances of educational processes and theories.'") (citations omitted).

Plaintiffs' claims here demand precisely the entanglement with differing educational theories that courts wisely avoid. The core of the Complaint attacks the underlying quality of the Literacy Materials. Plaintiffs allege that the Literacy Materials were inadequate because they "did not include meaningful phonics instruction, the one thing essential to literacy success." Comp. ¶ 3. To adjudicate that claim, the Court would necessarily need to determine the amount of phonics that is "essential" to "literacy success." *Id.*

The Complaint demonstrates why this question cannot be resolved through the application of legal standards. For example, it describes decades of debate over literacy instruction that has taken place in academia (e.g. among faculty at Teachers College, *id.* at ¶ 32, and other universities, *id.* at ¶ 44) and in the political sphere, *id.* at ¶ 26 (describing work by a National Reading Panel convened by Congress to study and make determinations about early literacy education), 51 (describing the passage of state laws and regulations that require educators to adopt certain approaches to reading instruction). Unlike academics, appointed experts, or elected officials, who have resources and expertise that allow them to develop standards to study and make decisions about education policy, courts are limited to applying strict legal standards that are ill-suited to answering the sorts of pedagogical questions that resolution of Plaintiffs' claims would require. *See Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 996 (N.D. Cal. 2020) (noting that courts do not resolve claims that would "require[s] judgments about pedagogical methods or the quality of . . . classes, instructors, curriculum, textbooks, or learning aids").[10]

---

[10] Courts similarly decline to adjudicate claims addressing education-related conduct like accreditation decisions. *Ambrose*, 252 F.3d at 497 ("Such a claim invites us to substitute our judgment for that of professional educators regarding the College's suitability for accreditation.").

### C.    Plaintiffs Cannot Establish Causation

Courts have also dismissed similar education-quality based claims on the grounds that "[f]actors such as the student's attitude, motivation, temperament, past experience and home environment may all play an essential and immeasurable role in learning," such that it may be a "practical impossibility" to prove the proximate cause of the "learning deficiency of the plaintiff student." *Ross*, 957 F.2d at 414 (quoting *Donohue v. Copiague Union Free School Dist.*, 47 N.Y.2d 440 (1979)).  Indeed, in a case much like this one, concerning literacy skills, the California Court of Appeals affirmed dismissal and explained that "the achievement of literacy in the schools, or its failure, are influenced by a host of factors which affect the pupil subjectively, from outside the formal teaching process, and beyond the control of its ministers. They may be physical, neurological, emotional, cultural, environmental; they may be present but not perceived, recognized but not identified."  *Peter W. v. San Francisco Unified Sch. Dist.*, 60 Cal. App. 3d 814, 824 (1976).  The court concluded:  "We find in this situation . . . no such perceptible 'connection between the defendant's conduct and the injury suffered,' as alleged, which would establish a causal link between them within the same meaning."  *Id.* at 825.

Plaintiffs trespass exactly this ground:  They allege that certain educational material caused specific learning deficiencies that—under another educational theory or different education materials—otherwise would not have occurred.  *See, e.g.*, Compl. ¶¶ 3–5.  Indeed, the Complaint strays even farther afield by suggesting a class definition that includes *all* Massachusetts students who attended schools that purchased, licensed, or used the Literacy Materials—regardless of whether any of the students actually received reading instruction using the Literacy Materials, much less if they actually struggled to read.  *Id.* at ¶ 69.  Plaintiffs' failure to allege causation with respect to their class claims is illustrative of the insurmountable hurdles they face with respect to their individual claims.

### D.    Limited Educational Achievement Is Not A Legally Cognizable Injury

Courts also conclude that "the failure of an educational achievement cannot be characterized as an injury within the meaning of tort law." *Tort Liability of Private Schools and Institutions of Higher Learning for Educational Malpractice*, 18 A.L.R.7th Art. 7 (2017); *Hunter v. Bd. of Educ. of Montgomery Cnty.*, 292 Md. 481, 484 (1982) ("The 'injury' claimed here is plaintiff's inability to read and write. … We find in this situation … no reasonable 'degree of certainty that … plaintiff suffered injury' within the meaning of the law of negligence." (quoting *Peter W. v. San Francisco Unified Sch. Dist.*, 131 Cal. Rptr. 854, 861 (Ct. App. 1976))). Similarly, this Court has elsewhere made clear that a plaintiff "may not attempt to calculate damages based on an alleged subjective difference in quality between" two educational options. *See In re Bos. Univ. COVID-19 Refund Litig.*, No. 1:20-cv-10827-RGS, 2022 WL 3154670, at *4 (D. Mass. Aug. 8, 2022).[11]

Here, the Plaintiffs' alleged injuries all connect to literacy achievement. Compl. ¶¶ 65–67 (describing struggles with literacy skills); 77 ("As a result, Plaintiffs and the Class Members received deficient reading instruction."); 86 (similar). But deficient literacy skills are not legally cognizable injuries, *see Hunter*, 292 Md. at 484, nor may a court calculate damages based on a subjective difference in quality between offerings, *see Bos. Univ. COVID-19 Refund Litig.*, 2022 WL 3154670, at *4; *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10 (1st Cir. 2017).

---

[11] While this principle has been framed in terms of tort and negligence in the case law, Chapter 93A claims likewise require alleging "injury[] as that term is defined by the SJC." *See Shaulis*, 865 F.3d at 14. In particular, Plaintiffs must allege an "identifiable harm," *id.* at 10, and this identifiable harm may not be based on Plaintiffs' "subjective belief as to the value received." *Id.* at 13.

### E.    Plaintiffs Improperly Ask This Court To Police The Marketplace of Ideas

Among the many reasons courts avoid cases that require them to wade into questions of education policy is the risk that doing so will run afoul of the First Amendment and stifle academic freedom by endorsing certain views over others.  Plaintiffs ask the court to do precisely that.  At bottom, Plaintiffs would like the court to (1) penalize Defendants through multiple damages for writing about and publishing ideas Plaintiffs disagree with and (2) order Defendants to furnish new curricula that Plaintiffs do agree with.  Compl. p. 23 (Prayer For Relief).  This is improper.

The First Amendment "creates an open marketplace where ideas … may compete without government interference."  *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 208 (2008).  It "does not call on the federal courts to manage the market."  *Id.*; *see also infra* Section V (citing cases in which courts refuse to extend products liability principles to ideas).  Plaintiffs' request is particularly troubling in the education context.  As the Supreme Court explained decades ago, "no field of education is so thoroughly comprehended by man that new discoveries cannot yet be made."  *Sweezy v. State of N.H. by Wyman*, 354 U.S. 234, 250 (1957).  Plaintiffs are entitled to disagree with the methods or approaches used in the Literacy Materials, and they are certainly free to argue the merits of their own approach in the court of public opinion—but their request that this Court intervene in this ongoing academic debate and discredit a view they disagree with is well out of bounds.  Put simply, courts do not tell teachers what and how to teach.

## II.    PLAINTIFFS FAIL TO MEET BASIC PLEADING STANDARDS, LET ALONE THE HEIGHTENED STANDARD OF RULE 9(b)

Where a claim's "core allegations effectively charge fraud," the special pleading standard of Federal Rule of Civil Procedure 9(b) applies.  *Mulder*, 865 F.3d at 21–22.  This includes Chapter 93A claims, *see id.*, and claims involving negligent misrepresentations, *see Solano v. Bos. Sci. Corp.*, No. 1:23-cv-12366-JEK, 2024 WL 1675692, at *3 (D. Mass. Apr. 5, 2024).  Because these

claims effectively charge fraud, Plaintiffs' pleading must meet the strictures of Rule 9(b). *See* Compl. ¶¶ 1, 5, 76, 85; *Martin v. Mead Johnson Nutrition Co.*, No. 1:09-cv-11609-NMG, 2010 WL 3928707, at *3 (D. Mass. Sept. 30, 2010) ("A claim under Chapter 93A that involves fraud is subject to the heightened pleading requirement."); *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) ("[M]isrepresentation is considered a species of fraud.").

To meet the Rule 9(b) pleading standard, Plaintiffs must "allege with specificity the who, what, where, and when of the allegedly false or fraudulent representation." *Solano*, 2024 WL 1675692, at *3 (internal quotation marks and citation omitted). This same principle applies to alleged inadequate warnings. *Id.* Plaintiffs' allegations fall well short of satisfying Rule 9(b)'s exacting requirements.

The marketing statements that Plaintiffs identify as misleading are a handful of phrases that unspecified Defendants used to "tout" their materials, including terms like "studies," "data," "research-backed," and "standards-based instruction." Compl. ¶¶ 40, 43, 71. These allegations do not include the necessary who, what, where, and when that Rule 9(b) requires. Plaintiffs' shotgun pleading, for example, fails to identify which of the eight defendants actually made which of the objectionable statements—let alone to whom such statements were made—entirely failing to adequately plead the "who" that is required by Rule 9(b). *See Ezell v. Lexington Ins. Co.*, 286 F. Supp. 3d 292, 300 (D. Mass. 2017) ("Although plaintiffs sufficiently allege that a misrepresentation was made . . . they do not make clear which defendant made such a misrepresentation.").

Rather than identifying the actual statements they object to, the context in which they were made, or even full sentences, Plaintiffs offer only snippets of words. *See* Compl. ¶¶ 40, 43, 71 ("studies," "data," "research-backed," and "standards-based instruction."). Nor do they explain

18

which of the specific Literacy Materials the alleged misstatements were related to or where the statements were made. *See Nizhoni Health Sys. LLC v. Netsmart Techs., Inc*., No. 1:22-cv-11212-DJC, 2023 WL 3657386, at *8 (D. Mass. May 25, 2023) (Plaintiff "fails to specify the statements that it contends were false" by, for example "delineat[ing] which . . . functionalities [Defendant] represented its software already included."); *Solano*, 2024 WL 1675692, at *3 (dismissing misrepresentation claim where plaintiff failed to "describe the form, content, or date of the marketing"). On the "when," aside from identifying a thirty-year period of alleged misconduct beginning in the 1990s, Compl. ¶ 7, Plaintiffs have failed to identify a single "particular time[] [or] date[]" of the alleged misrepresentations. *Learning Express, Inc. v. Ray-Matt Enters., Inc.*, 74 F. Supp. 2d 79, 85 (D. Mass. 1999); *Solano*, 2024 WL 1675692, at *3 (plaintiff failed to identify "date of the marketing"). Absent such particulars, Rule 9(b) requires dismissal. *See Solano*, 2024 WL 1675692, at *3; *Engren v. Johnson & Johnson, Inc.*, No. 1:21-10333-RGS, 2021 WL 4255296, at *5 (dismissing complaint that was "devoid of facts describing 'where' and 'when' this 'allegedly false representation' occurred") (citation omitted).

In addition to the allegedly false and misleading marketing terms discussed above, the Complaint identifies a number of other statements from various Defendants and other individuals unrelated to marketing, *see* Compl. ¶¶ 35 (books on educational theory); 36 (university post on educational methods); 46 (discussion of an academic study); 49 (blog post on educational methods); 50 (statement and memorandum on educational methods). None of these allegations can support Plaintiffs' misrepresentation claims as Plaintiffs do not allege that these statements marketed or represented the challenged Literacy Materials in any way (e.g. by being included in sales materials), much less that they were misleading or even could be misleading, *see Cummings*

*v. HPG Int'l, Inc.*, 244 F.3d 16, 21 (1st Cir. 2001) (in the context of a 93A misrepresentation claim "only statements of fact are actionable; statements of opinion cannot give rise to a deceit action").

## III.    THE CHAPTER 93A CLAIM FAILS

Even if this Court determined that Plaintiffs claims were justiciable and satisfied Rule 9(b), their Chapter 93A claim still fails.  A plaintiff seeking relief under Chapter 93A "must prove that the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce" and that those acts caused a distinct injury.  Mass. Gen. Laws ch. 93A § 9; *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (internal citation omitted); *see also Shaulis*, 865 F.3d at 6.  Plaintiffs' unfair and deceptive conduct claims boil down to the following allegations:  Defendants marketed and sold defective Literacy Materials, did not provide adequate warnings about those materials, and made false or misleading statements about them.  *See* Compl. ¶ 76.  Through this conduct, Plaintiffs allege, "Defendants induced schools throughout Massachusetts to buy their defective products, rather than those early-literacy products that provide adequate and scientifically sound early-literacy instruction," and "[a]s a result, Plaintiffs and the Class Members received deficient reading instruction."  *Id.* at ¶ 77.

These allegations fail to state a Chapter 93A claim for three reasons: (1) Plaintiffs cannot establish the requisite commercial relationship with Defendants; (2) Defendants' conduct was not unfair; and (3) Defendants' conduct was not deceptive.

### A.    Plaintiffs Cannot Establish The Requisite Commercial Relationship Because They Did Not Select Or Purchase The Literacy Materials

Although contractual privity is not required to sustain a Chapter 93A claim, at least some business, commercial, or transactional relationship between the parties is necessary. *See* Mass. Gen. L. ch. 93A § 2(a) (governing acts or practices "in the conduct of any trade or commerce"); *Steinmetz v. Coyle & Caron, Inc.*, 862 F.3d 128, 141 (1st Cir. 2017); *Courtemanche v. Motorola*

*Solutions, Inc.*, 2024 WL 5111509, *2 (D. Mass. Dec. 13, 2024) (a "commercial link" must exist between a plaintiff consumer and a defendant engaged in commerce). To state a claim, a plaintiff must allege facts sufficient to establish a *commercial* relationship between the plaintiff and the defendant. *See Rafferty v. Merck & Co.*, 479 Mass. 141, 161 (2018) (rejecting Chapter 93A claim where "although Chapter 93A does not require privity, it is limited to actions taken in the course of trade or commerce"). Plaintiffs have not and cannot establish that relationship here.

Plaintiffs complain that the public schools they attended did not properly teach them how to read. True or not, the provision of public education does not amount to "trade or commerce" within the meaning of Chapter 93A. *See Squeri v. Mount Ida College*, 954 F.3d 56, 73 (1st Cir. 2020) (Chapter 93A claims brought by students complaining about their education dismissed under Rule 12(b)(6) because, among other things, the school was not engaged in "trade or commerce" when providing education). As the First Circuit acknowledged in *Squeri*, the provision of education to students by a non-profit school conducting activities "motivated by legislative mandate" is not "trade or commerce" within the meaning of Chapter 93A. *See id.*; *Moran v. Stonehill College, Inc.*, No. 2077CV00431, 2021 WL 965754 at * 7 (Mass. Sup. Ct. Feb. 16, 2021) (provision of non-profit education not "trade or commerce"); *see also Planned Parenthood Fed'n of Am. v. Problem Pregnancy of Worcester, Inc.*, 398 Mass. 480, 493–94 (1986) (non-profit pro-life advocacy does not constitute "trade or commerce").

Much like the plaintiff in *Squeri*, Plaintiffs' relationship with public schools is not a commercial or business one within the meaning of Chapter 93A. And even if certain Defendants had a direct or indirect relationship with schools that may have purchased the Literacy Materials, Plaintiffs fail to allege *any* facts establishing any commercial, business, or transactional relationship *between* Plaintiffs and Defendants. Defendants did not have any relationship with

Plaintiffs, the schools did, and the schools did so in furtherance of (and as required by) their statutory mandate to provide public education.[12]  *See* Compl. ¶ 7.

Plaintiffs' only alleged connection to Defendants is through the public schools they attended.  Compl. ¶¶ 65–67.  The fact that those schools are not actually engaged in "trade or commerce" with Plaintiffs is dispositive of any claim against Defendants.  If Plaintiffs are not in a commercial relationship with the schools, and their only link to Defendants is through those schools, then they cannot be in a commercial relationship with the Defendants.  The mere fact that Defendants authored or published the Literacy Materials, which were *selected by the schools*[13] when providing public education to Plaintiffs, is not sufficient to establish the necessary business or transactional relationship between Plaintiffs and Defendants required to state a Chapter 93A claim.[14]

## B.    Defendants' Conduct Was Not Unfair

Under Chapter 93A, an act or practice is unfair if it (1) falls "within the penumbra of a common-law, statutory, or other established concept of unfairness"; (2) is "immoral, unethical, oppressive, or unscrupulous"; and (3) "causes substantial injury to consumers."  *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 79 (1st Cir. 2020).  The "conduct must generally be of an egregious,

---

[12] As discussed in Section II, *supra*, Plaintiffs' Complaint fails to delineate the purported acts of specific Defendants, including neglecting to identify which Defendant(s) allegedly sold the subject Literacy Materials to the Plaintiffs' schools or school districts, or otherwise had a commercial relationship.  *See* Compl. ¶¶ 5, 16, 17.

[13] That local school officials approved use of the Literacy Materials, which they did pursuant to their statutory authority, *see* Mass. Gen. Laws. ch. 71 § 48, also makes liability under Chapter 93A unavailable.  Mass. Gen. Laws. ch. 93A § 3.

[14] The lack of a commercial relationship between Plaintiffs and Defendants underscores the fundamental problem discussed in Section I, *supra*.  Plaintiffs' pedagogical dispute involves *ideas* about how to educate children.  There is no legal authority that supports exposing an author or publisher of a book that is selected and used by a teacher in a public education setting to liability under any law, let alone under a consumer protection statute such as Chapter 93A.

non-negligent nature." *Tomasella.*, 364 F. Supp. 3d 26, at 32.  Although the question of unfairness is a factual inquiry, "the boundaries of what may qualify for consideration as a c. 93A violation is a question of law." *Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547, 563 (2008) (citation omitted).

As an initial matter, Plaintiffs have not pointed to any common-law, statutory, or other established concept of unfairness into which the conduct at issue falls.  For example, Plaintiffs do not allege that there is any common-law, statutory, or other established standard that defines proper literacy instruction in Massachusetts.  *See supra* Section I.D (no applicable standard of care in the education context).

Plaintiffs also cannot establish that Defendants engaged in the type of "immoral" or "unethical" conduct required to state a claim under Chapter 93A.  Plaintiffs do not allege that Defendants believed the Literacy Materials were defective but nonetheless maliciously sold them to schools in order to harm students.  To the contrary, the Complaint concedes that the Literacy Materials do include phonics, *see, e.g.*, Compl. ¶ 37 (e.g. by offering phonics-based instruction), and that they were revised at points to include even more.  *Id.* at ¶ 53 ("In 2021, Heinemann released a new edition of *Units of Study* that it described as 'build[ing] upon the foundational work of the original materials with an increased focus on systematic phonics instruction, inclusive content, and ease of use.'").

At most, Plaintiffs allege that Defendants' focus on phonics is not sufficiently structured, that the amount of phonics is not enough, or that revisions to the materials came too late.  *Id.* at ¶¶ 30, 34, 47, 52.  This falls far short of the sort of "unethical" or "immoral" conduct that would violate Chapter 93A's unfairness prong.  *See, e.g.*, *Ellis v. Safety Ins. Co.*, 41 Mass. App. Ct. 630, 640 (1996) (racial harassment in the course of doing business);  *Wang Labs., Inc. v. Business*

*Incentives, Inc.*, 398 Mass. 854, 857 (1986) (deliberate breach of a contract for a party's gain);

*Diamond Crystal Brands, Inc. v. Backleaf*, LLC, 60 Mass. App. Ct. 502, 507 (2004) (coercive

conduct designed to extort a benefit or advantage from a business or bargaining opponent).

Plaintiffs' Chapter 93A claim also fails because they cannot establish causation.

*Tomasella*, 962 F.3d at 79.  Plaintiffs' causal allegations, to the extent there are any, are devoid of

specifics and entirely conclusory.  For example, the Complaint alleges:

- S.C. and K.C. "were exposed" to the Literacy Materials and "[a]s a result" "have suffered a variety of developmental, emotional, and financial injuries."  Compl. ¶ 16; *see also* Compl. ¶ 17 (similar for R.H.).

- Because the Literacy Materials "do not contain the building blocks for teaching effective early-childhood literacy," "countless children in the Commonwealth, have suffered devastating setbacks in their educational development."  Compl. ¶ 59.

- S.C. "was taught" using UoS and "received ineffective assistance" through LLI "resulting in her reading delays going unnoticed for years." Compl. ¶ 65.

- K.C. "was exposed" to UoS and LLI from kindergarten through second grade, which led to her parents "detect[ing]" that she "appeared not to be developing the necessary and appropriate literacy decoding skills."  Compl. ¶ 66.

- R.H. "was taught" using UoS and LLI, and received "defective assessments" through BAS, which "suggested that he 'read' at grade level" even though it "become apparent" that he "was far behind many of his peers."  Compl. ¶ 67.

- Plaintiffs "received early-literacy instruction using Defendants' defective early-literacy products" and "suffered from literacy deficiencies as a result."  Compl. ¶ 72.

- Defendants "induced schools" in Massachusetts to choose the Literacy Materials rather than Plaintiffs' preferred phonics-dominant literacy curricula, and "[a]s a result, Plaintiffs and Class Members received deficient reading instruction."  Compl. ¶ 77.

Even accepting these allegations as true, they are wholly insufficient to plead causation.

***First***, as Plaintiffs' sources confirm and as described above, there are many facets to

teaching literacy, many reasons why a student may struggle with learning to read, and school

districts employ many different curricula, materials, and strategies to teach reading.  *See supra*

Section I.C (collecting cases regarding impossibility of attributing lack of achievement to any one causal factor).

**Second**, Plaintiffs cast phonics as a one-size-fits-all solution, yet their own cited sources acknowledge that using their preferred approach would not necessarily be better for all learners. Ex. C at 6 ("Teachers may be expected to use a particular program in their classroom but may find that it suits some students better than others."); *see also Hershenow v. Enterprise Rent–A–Car Co. of Boston, Inc.*, 445 Mass. 790, 800–01 (2006) (rejecting a Chapter 93A claim where plaintiffs failed to establish "any causal connection between the deception and any loss").   If using a non-phonics dominant approach to teach reading is deemed to "cause" injury to children whose individual learning style would benefit more from a phonics-dominant one, then the reverse would also be true and educators who follow a phonics-dominant approach would be equally liable for "causing" injury to students whose learning style is not suited to it.

**Third**, the Literacy Materials are purchased by school districts, which integrate them with other products to create a full curriculum.  Compl. ¶ 7.  The Complaint contains no allegations about the extent to which the Literacy Materials *were actually used* to teach the Plaintiffs, or what other literacy materials were incorporated into the subject curricula, and thus contains no allegations that could support the inference that the Literacy Materials were a but-for cause of the alleged harm.  Where, as here, schools combine materials to create a full curriculum, to the extent the Court views ideas as "products" (which it should not), "it would be unjust and inefficient to impose liability" on the creator of one of those materials if, ultimately, it is the combined set of materials that may not work for a particular student.  *See Nemirovsky v. Daikin N. Am. Inc.*, 488 Mass. 712, 718 (2021) ("a component manufacturer may be liable if the component itself was

defective and the component's defect caused the harm," but the maker "of a nondefective component is not liable for harms caused by the integrated product").

*Finally*, the harms alleged are inseparable from the individual Plaintiffs' needs, their instruction, and the environment in which Plaintiffs were taught. Thus, Plaintiffs' allegations with respect to Defendants' supposed advertising and promotional conduct are far too attenuated, and not explicitly tied to, their own individual struggles with learning to read. *See Walsh v. Teltech Sys., Inc.*, 821 F.3d 155, 164 (1st Cir. 2016) (proximate cause requirement not satisfied "absent any connection between [non-parties' allegedly wrongful] actions and [defendant']s promotional material" purportedly encouraging those actions).

## C.    Defendants' Conduct Was Not Deceptive

Plaintiffs also fail to allege that Defendants committed deceptive acts under Chapter 93A. To do so Plaintiffs must allege (1) "a deceptive act or practice on the part of" Defendants;[15] (2) "an injury or loss suffered"; and (3) "a causal connection between the [Defendant]'s deceptive act or practice and [Plaintiffs'] injury." *Tomasella*, 962 F.3d at 71.

As explained above, Plaintiffs allege that Defendants made false or misleading statements about the Literacy Materials that purportedly resulted in "Plaintiffs and the Class Members receiv[ing] deficient reading instruction." Compl. ¶¶ 76–77. Specifically, they allege that at some unknown time and in some unknown context, Defendants stated that the Literacy Materials were (1) supported by "studies" and "data"; (2) "'research-backed,' based on 'intensive research, testing, and experience'"; (3) provided 'data-based' and 'standards-based instruction'"; and (4)

---

[15] An act or practice is deceptive if "it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted (i.e., to entice a reasonable consumer to purchase the product)." *Dumont v. Reily Foods Co.*, 934 F.3d 35, 40 (1st Cir. 2019); *Crommelin v. Takeda Pharmaceuticals U.S.A., Inc.*, No. 1:24-cv-10552-RGS, 2024 WL 4045730, * 2 (D. Mass., Sep. 4, 2024)

"based on 'volume[s] of research' and a 'gold-standard' study that prove the 'efficacy and value' of their approach." Compl. ¶ 40 (alteration in Complaint). These allegations fail to state a claim for deceptive conduct for several reasons.

**First**, Plaintiffs' deception allegations do not survive Rule 9(b)'s particularity requirements. *Supra* Section II.

**Second**, even if Plaintiffs had met the heightened Rule 9(b) pleading standard, they acknowledge that research **does** support the methods in the Literacy Materials, *see* Compl. ¶ 41; *see also, e.g.*, Ex. 5 (Student Achievement Partners report) at 14 ("The [UoS] program follows an approach to phonics instruction informed by developmental spelling, an extensive trove of research that has shown how students come to understand the relationship between sounds, letters, and words as reflected in their writing.").[16] Moreover, statements like "gold standard" and "efficacy and value," Compl. ¶ 71, are non-actionable statements of opinion for which courts consistently dismiss misrepresentation claims. *See, e.g.*, *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (representation that consumers "would be safely and adequately served" failed to state a claim because it was "devoid of any meaningful specificity"); *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570–572 (6th Cir. 2004) (statements about "quality [and] safety" were non-actionable opinions).

**Third**, Plaintiffs have not alleged, nor could they, that they were "entice[d] . . . to purchase" the Literacy Materials, and would not have done so, or would have acted differently in some way,

---

[16] Plaintiffs' own subjective view that "these studies suffer from glaring methodological, theoretical, and other flaws that wholly undermine that conclusion," Compl. ¶ 47, does not render Defendants' statements misleading, incomplete, or inadequate, and is far from sufficient to support a claim. *Shaulis,* 865 F.3d at 12 ("[A] plaintiff's bare assertion that a product is deficient in some way is conclusory and can be subjective and thus does not suffice to state a viable claim."); *cf. Duclersaint*, 427 Mass. at 814; *Graf*, 2015 WL 4731526, at *18.

had they known about any purported defect. *See Dumont*, 934 F.3d at 40, *Crommelin v. Takeda Pharmaceuticals U.S.A., Inc.*, No. 1:24-cv-10552-RGS, 2024 WL 4045730, * 2 (D. Mass. Sept. 4, 2024). They did not buy the Literacy Materials and had no role in selecting the reading curricula that their schools purchased or chose to use.

**Fourth**, for the reasons explained *supra* at Section I.C and Section III.B, Plaintiffs have failed to plead that any alleged deceptive act caused their alleged injury. *See Tomasella*, 962 F.3d at 71. Indeed, Plaintiffs have not alleged that any of them ever even saw or heard any of the allegedly deceptive statements—let alone relied or acted on them to their detriment.

## IV.    PLAINTIFFS' NEGLIGENCE CLAIM FAILS

Count II of Plaintiffs' Complaint ambiguously asserts either a negligence claim or a negligent misrepresentation claim. Compl. ¶ 86 (alleging Defendants engaged in both "negligence and negligent misrepresentations").[17] However they are framed, the allegations fail to state any negligence-based claim.

### A.    There Cannot Be Negligent Misrepresentation Where There Is No Reliance

The negligent misrepresentation claim fails because Plaintiffs do not allege that they are among the limited group of persons who are eligible to recover for the alleged misrepresentations. Plaintiffs acknowledge that the allegedly negligent marketing was directed to "induce[] schools and school districts" to purchase the Literacy Materials. Compl. ¶ 86. But Massachusetts law limits liability for negligent misrepresentation to a "loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance [the Defendant] intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a

---

[17] Where, as here, the challenged conduct relates to a statement or representation, courts analyze the claim as one for negligent misrepresentation. *Craig v. Everett M. Brooks Co.*, 351 Mass. 497, 499 (1967) ("Although count 2 does not use the word 'misrepresentation,' … [s]uch acts are a form of representation.").

transaction that [the Defendant] intends the information to influence or knows that the recipient so intends or in a substantially similar transaction." *Nycal Corp. v. KPMG Peat Marwick LLP*, 426 Mass. 491, 496 (1998) (quoting and adopting Restatement (Second) of Torts § 552).   As the allegedly negligent marketing was directed to the schools and not the students, Plaintiffs are not among the "limited group of persons for whose benefit and guidance [Defendants] intend[ed] to supply the information or kn[ew] that the recipient intend[ed] to supply it," nor did Plaintiffs allegedly suffer loss "through reliance on [the information] in a transaction that [Defendants] intend[ed] the information to influence or kn[ew] that the recipient so intends or in a substantially similar transaction." *Nycal*, 426 Mass. at 496.   For the same reason, Plaintiffs cannot allege that they suffered loss "by their justifiable reliance on the information," because they do not allege that they relied on the alleged misrepresentations at all.   *See Gossels v. Fleet Nat. Bank*, 453 Mass. 366, 371–72, 377 (2009) (reliance is an element of negligent misrepresentation).

In addition, Plaintiffs have not plausibly alleged that Defendants' representations were false or misleading, *supra* Section III.C, or that those representations caused a cognizable injury, *supra* Section I.D;[18] *Gossels*, 453 Mass. at 371–72 (listing other elements of negligent misrepresentation, including falsity, causation, and injury).

### B.   Any Negligence Claim Is Barred By The Economic Loss Doctrine And Otherwise Fails

Even if construed as plain negligence, Plaintiffs' claim also fails.

---

[18] They likewise fail to plausibly allege that changes in marketing would have affected school administrators' or teachers' willingness to purchase and use a substantially similar curriculum.   To the contrary, as described, many administrators and teachers held strong views on appropriate literacy instruction rooted in the wider "reading wars," *supra* **Background** Section , and Plaintiffs do not plausibly allege that Defendants' representations—rather than these underlying views—caused schools to adopt curricula that (in Plaintiffs' view) de-emphasized phonics.

*First*, a standalone negligence claim is barred by the economic loss doctrine which "bars recovery unless the plaintiffs can establish that the injuries they suffered due to the defendants' negligence involved physical harm or property damage, and not solely economic loss." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc*., 455 Mass. 458, 469 (2009). Plaintiffs do not allege physical harm or property damage. While Plaintiffs do allege certain non-economic injuries, *e.g.*, Compl. ¶ 16 (referring to "developmental" and "emotional" injuries), these allegations cannot overcome the economic loss doctrine. Lack of educational achievement is not a cognizable injury under tort law, *see supra*, Section I.D, and  a plaintiff cannot recover for emotional or psychological injuries in tort unless there is a physical manifestation, *Payton v. Abbott Labs*, 386 Mass. 540, 547 (1982) ("Where a defendant was only negligent, his fault is not so great as to require him to compensate the plaintiff for a purely mental disturbance."). The Complaint includes no allegations related to physical manifestations of injury. Finally, emotional injury is "intractably individual in character," and so cannot satisfy the typicality requirement for class treatment. *Com. of Puerto Rico v. M/V Emily S.*, 158 F.R.D. 9, 14 (D.P.R. 1994). Because Plaintiffs seek to pursue this claim on a class-wide basis, the only relief available to the class would be economic damages, which cannot be recovered on an ordinary negligence claim under the economic loss doctrine.

*Second*, Plaintiffs have not plausibly pleaded the necessary substantive elements—breach and causation—of a negligence claim. *See Doucette v. Jacobs*, 106 F.4th 156, 175 (1st Cir. 2024) (breach and causation are essential elements of a negligence claim). Plaintiffs have not plausibly alleged a breach of any duty because none of Defendants' alleged representations were false or misleading, *supra* Section III.C, and there is no applicable standard of care by which to judge a breach, *supra* Section I.C. Plaintiffs similarly have not plausibly alleged that Defendants caused a cognizable injury, *supra*, Section I.D.

## V.    PLAINTIFFS SEEK TO IMPROPERLY EXTEND PRODUCTS LIABILITY LAW TO THE MARKETPLACE OF IDEAS

Massachusetts does not extend product liability law to ideas, methods, and instructions contained in books.  *See Garcia v. Kusan, Inc*., 39 Mass. App. Ct. 322, 327–29 (1995) (no warranty or negligence liability for instructions).  Yet that is precisely what Plaintiffs hope to do here. Although Plaintiffs label their claims under Chapter 93A and negligence, the actual contents of the Complaint reveal that Plaintiffs are attempting to improperly advance products liability claims under different names.  The first paragraph of the Complaint describes this as a lawsuit based on "marketing and sale of products."  Compl. ¶ 1.  Plaintiffs then allege that "Defendants failed to warn…[about defects] in their alleged literacy training products."  *Id.* at ¶ 3. They refer to the teaching materials they find objectionable as "defective goods" and "defective early-literacy products."  *Id.* at ¶¶ 5, 6.  And the Complaint alleges that "Defendants did not disclose the flaws in their products," and sold "defective products to schools and teachers."  *Id.* at ¶¶ 49, 58. Plaintiffs' Chapter 93A claim boils down to the allegation that Defendants engaged in unfair and deceptive practices arising from "sale of defective and deficient reading curricula, reading diagnostic tests, and teacher-training programs," "[f]ailing to provide adequate or complete disclosures and warnings regarding deficient reading curricula and other training and reading products," and "[d]isseminating false, misleading, incomplete, and/or inadequate statements, instructions, training materials, and marketing materials regarding their reading and training products."  *Id.* at ¶ 76.  Plaintiffs' negligence claim is similarly based on Defendants allegedly "breach[ing] their duties to exercise reasonable care or competence by falsely and deceptively marketing their products."  *Id.* at ¶ 84.

Plaintiffs' reluctance to bring their clams under a products liability theory is understandable, as courts have correctly held that the product-liability-based theory of injury

advanced by the Complaint should not be extended to books and ideas, which are protected by the First Amendment. *See* Restatement (Second) of Torts, *Products Liability*, § 19, cmt. d. ("Most courts, expressing concern that imposing strict liability for the dissemination of false and defective information would significantly impinge on free speech have, appropriately, refused to impose strict products liability in these cases"); *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1036 (9th Cir. 1991) ("[W]e decline to expand products liability law to embrace the ideas and expressions in a book. We know of no court that has chosen the path to which the plaintiffs point."); *Walter v. Bauer*, 439 N.Y.S.2d 821, 822–23 (NY App. Div. 1981) (rejecting argument that a science book describing an experiment which led to a classroom injury could be considered a "defective product").

Massachusetts courts have expressly rejected the application of products liability law to speech, explaining that products liability is "geared to the tangible world and is unsuited to words and ideas." *Garcia*, 39 Mass. App. Ct. at 327. For example, in *Garcia* a father whose son was injured by a plastic hockey stick and puck asserted that the defendant made misrepresentations about the game's safety in the game's instructional materials to "induce elementary schools" to buy the game. *Id*. at 322–324. The Appeals Court rejected plaintiff's attempt to extend product liability concepts to the defendant's instructions for the game. *See id*. at 327–328. Rather, *it was the hockey stick and puck*—the tangible items—from which products liability could arise. *See id.* at 328–329.

The Southern District of New York reached the same conclusion in *Gorran v. Atkins Nutritionals, Inc*., 464 F. Supp. 2d 315, 318, 323 (S.D.N.Y. 2006). In *Gorran*, the plaintiff brought product liability claims against defendants (a nutrition company and creator of the "Atkins Diet") strikingly similar to the claims Plaintiffs bring here—"(a) products liability, (b) negligent

misrepresentation, and (c) deceptive conduct in violation of [the Florida Unfair Trade Practices Act]." *Gorran*, 464 F. Supp. 2d at 323.  According to the *Gorran* plaintiff, the defendants' books and diet "advice" were "defective and unreasonably dangerous." *See id.* at 318.  The *Gorran* court refused to extend products liability law to the ideas expressed in the defendants' books—even if those ideas are "controversial and subject [to] criticism." *See id.* at 319, 327.

Here, the Defendants did not manufacture and sell a defective hockey stick or puck, or any other tangible product.  Rather, the individual author defendants wrote, and the publisher defendants published, about their ideas on how to teach reading. *See* Compl. ¶¶ 31–33.  Plaintiffs may disagree with their ideas, but that is not a permissible basis for imposing civil liability under Massachusetts law.

## VI.    PLAINTIFFS CANNOT ESTABLISH A CLASS

To the extent Plaintiffs' claims are not dismissed in their entirety, Defendants move to dismiss, or alternatively to strike, Plaintiffs' class allegations because the proposed class cannot be maintained as a matter of law.[19]  Fed. R. Civ. P. 23(b)(3) demands that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Compl. ¶ 74 (alleging that predominance is satisfied).  It is obvious from the Complaint that Plaintiffs cannot satisfy these requirements.  Individual questions predominate with respect to: (1) identification of uninjured plaintiffs included in the enormous putative class;

---

[19] If "'it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations.'" *Rovinelli v. Trans World Ent. Corp.*, No. 3:19-cv-11304-DPW, 2021 WL 752822, at *6 (D. Mass. Feb. 2, 2021) (quoting *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013)).

(2) determinations of causation; and (3) assessment of whether Defendants' conduct can be sufficiently linked to the class members' alleged injuries.

### A.    The Putative Class Includes Too Many Uninjured Members

"It is well-established that members of a plaintiff class must all have the legal right to bring suit against the defendant on their own; inclusion of those without such standing renders the class overbroad." *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 393 n.2 (D. Mass. 2007); *see In re Asacol Antitrust Litigation*, 907 F.3d 42, 53–54 (1st Cir. 2018) (denying certification where "[t]he need to identify those [uninjured] individuals will predominate and render an adjudication unmanageable"). Classes containing more than a *de minimis* number of uninjured members or that require inquiries into individualized facts to determine whether any injury exists are not appropriate for class treatment.[20]

Plaintiffs' class definition includes huge numbers of uninjured members. They seek to represent a class of *all* "children and parents and/or legal guardians of children currently or previously enrolled in kindergarten, first, second, or third grade in a Massachusetts elementary school that purchased, licensed, reproduced, or otherwise employed" the Literacy Materials. Compl. ¶ 69. Determining which members of the putative class actually struggled with learning to read will require mini-trials that render the claims unfit for class treatment. *Bais Yaakov of*

---

[20] *See, e.g.*, *In re Asacol Antitrust Litigation*, 907 F.3d at 53-54; ("[T]his is a case in which any class member may be uninjured, and there are apparently thousands who in fact suffered no injury."); *Loughlin v. Vi-Jon, LLC*, 728 F. Supp. 3d 163, 180 (D. Mass 2024) (denying motion to certify class in part because "it is foreseeable that defendants will be able to raise 'plausible individual challenges' concerning whether many of the thousands of putative class members have suffered an injury," and that "the required individualized process of identifying and excluding uninjured class members would predominate over questions of fact and law common to the proposed class"); *Rovinelli*, 2021 WL 752822, at *2 (finding that "no conceivable amendment to the Complaint could overcome, on behalf of the class as a whole, the hurdle created by the need for particularized details regarding each putative member's experience").

*Spring Valley v. ACT, Inc.*, 12 F.4th 81, 92 (1st Cir. 2021) (declining certification on predominance grounds because court would be required to "identify and cull out" non-injured parties).[21]

### B.    Proving Causation Would Require Extensive Individualized Inquiry

Even if Plaintiffs could feasibly identify and limit their proposed class to individuals who have suffered an actual injury, determining whether Defendants caused the alleged injury of each putative class member would require individualized inquiry that likewise precludes class treatment.  *See In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. at 398; *see also Wortman v. Logmein, Inc.*, No. 1:18-cv-11475-GAO, 2022 WL 3714620, at *1-2 (D. Mass. Aug. 29, 2022). "What matters to class certification is not the raising of common 'questions'—even in droves— but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within a proposed class are what have the potential to impede the generation of common answers."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

As described above, isolating the cause of any given student's failure to achieve educational benchmarks is effectively impossible.  *Supra* Section I.C; *Ross*, 957 F.2d at 414 ("Factors such as the student's attitude, motivation, temperament, past experience and home environment may all play an essential and immeasurable role in learning," and thus "it may be a "practical impossibility [to] prov[e] that alleged [failures by the teacher] proximately caused the learning deficiency of the plaintiff student.").  As Plaintiffs' own sources state, "in the early grades, children are known to vary greatly in the skills they bring to school," and "there will be some

---

[21] Redefining the proposed class would be futile; as any alternative definition would lead to issues of ascertainability.  *Douglas v. EF Inst. for Cultural Exch., Inc.*, No. 1:20-cv-11740-DJC, 2024 WL 3070251, at *7 (D. Mass. 2024) ("Not every class member must be identified, but the class must be sufficiently ascertainable to permit a court to 'decide and declare who will receive notice, who will share in any recovery, and who will be bound by the judgment.'" (quoting *Crosby v. Soc. Sec. Admin. of the U.S.*, 796 F.2d 576, 580 (1st Cir. 1986))).

children who already know most letter-sound correspondences, some children who can even decode words, and others who have little or no letter knowledge." Ex. C at 6. At a classwide level, the challenge of sorting through the variability of educational outcomes, and the different potential causes that contribute to them, only multiply.

Dissimilarities abound within Plaintiffs' putative class. As discussed, *supra* Section VI.A, were class treatment allowed, the case would immediately be mired in "multiple law-suits separately tried" to assess each Plaintiff's history of instruction, whether and to what extent they struggled with reading, and whether and to what extent that struggle could plausibly be attributed to use of the Literacy Materials. These are the exact sort of inefficiencies that make class treatment inappropriate. *In re Asacol Antitrust Litigation*, 907 F.3d 42, 58 (1st Cir. 2018) (reversing class certification where individual inquiries predominated related to whether particular class members were injured by the defendant).

### C.    Plaintiffs' Negligent Misrepresentation And Chapter 93A Claims Cannot Be Resolved On A Classwide Basis

As set forth in Sections III.C and IV.A, *supra*, Plaintiffs' Complaint includes nondescript allegations that Defendants' negligent misrepresentations and deceptive conduct induced various school districts to purchase and integrate the Literacy Materials into their literacy curricula. Even if Plaintiffs' individual claims on this basis were viable—which they are not—they are unfit for class treatment because "proving reliance" on misrepresentations under common law negligence, or showing a causal connection between deceptive or unfair conduct as well as a distinct injury under Chapter 93A, "requires individualized factual determinations." *Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D. 194, 199 (D. Mass. 1999) (denying class certification of sub-group alleging reliance an implied warranty) *aff'd*, 208 F.3d 288 (1st Cir. 2000); *O'Hara v. Diageo-Guinness*, No. CV 1:15-cv-14139-MLW, 2021 WL 11749765, at *1 (D. Mass. Mar. 17, 2021)

(denying certification of "negligent misrepresentation claims because reliance is an element of such claims under Massachusetts law and, therefore, they are not amenable to be resolved in a class action."); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. at 395–397 (declining to certify a class on plaintiff's negligent misrepresentation claims due to the individual inquiries necessary to prove reasonable reliance); *Loughlin*, 728 F. Supp. 3d at 180, 184 (denying class certification of Chapter 93A claims where essential elements of claims were subject to individual challenges).[22]

## VII.    INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED

Finally, though the claims against all Defendants should be dismissed for the reasons described above, certain defendants have the following additional grounds for dismissal of Plaintiffs' claims as to them specifically.

### A.    HMH Should Be Dismissed Because Plaintiffs Have Not Stated Any Claim As To It

To the extent that the Court finds that Plaintiffs have stated a claim at all, the claims against HMH must still be dismissed because Plaintiffs have not alleged any facts about any conduct by HMH. Indeed, the only allegation about HMH is that it "is a Massachusetts corporation with its principal place of business at 125 High Street, Boston, MA 02110." Compl. ¶ 13. Plaintiffs do not allege HMH created, marketed, or sold any of the Literacy Materials, or that HMH made any alleged misstatements regarding the Literacy Materials. In fact, as the Complaint makes clear, Heinemann, not HMH, publishes and markets the Literacy Materials. *See, e.g.*, Compl. ¶¶ 14, 34. Without more, the mere fact that Heinemann is a subsidiary of HMH, *id.*, is insufficient to hold HMH liable for any alleged Heinemann conduct. *See, e.g.*, *Speakman v. Allmerica Fin. Life Ins.*,

---

[22] In addition to the reasons set forth above, Plaintiffs cannot establish their proposed class because no named plaintiff here is a "parent[] and/or legal guardian," Compl. ¶ 69, and thus there is no basis to find that any named Plaintiff would be representative of those proposed class members. Relatedly, Plaintiffs have not defined parents or guardians in a way that would limit those with a cause of action to those who have some control over the education that their child or ward receives.

367 F. Supp. 2d 122, 142 (D. Mass. 2005) ("[A] corporation's parents, subsidiaries, and other affiliates are not liable for the actions of the corporation under Chapter 93A unless they played an active role in the alleged wrongful conduct."); *Omni-Wave Elecs. Corp. v. Marshall Indus.*, 127 F.R.D. 644, 650 (D. Mass. 1989) (denying motion to amend to add parent corporation because "the plaintiff must delineate the factual basis for holding [related companies] independently liable under Chapter 93A"); *Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, No. 1:14-cv-12047-ADB, 2015 WL 4467064, at *10 (D. Mass. July 20, 2015) (granting motion to dismiss in part because plaintiff's conclusory allegations that "each of the [d]efendants engaged in unfair or deceptive act practices  fail[ed] to state a plausible claim" against a parent company when the complaint only included factual allegations about the subsidiary's conduct).

### B. F&P, LLC and Mossflower Should Be Dismissed Because Plaintiffs Have Not Stated Any Claim As To Them

If the Court finds that Plaintiffs have stated claims, which it should not, the Court should dismiss the claims against F&P, LLC and Mossflower because Plaintiffs have not alleged any material facts concerning F&P, LLC and Mossflower.  In fact, the only allegation about F&P, LLC is that it "is an Ohio limited liability company with its principal place of business in Columbus, Ohio." Compl. ¶ 12. The only allegation about Mossflower is that it is a Connecticut limited liability corporation that "is affiliated with" Ms. Calkins.  Compl. ¶ 9.  Plaintiffs do not allege that F&P, LLC and Mossflower created, marketed, or sold any of the Literacy Materials, or that F&P, LLC and Mossflower made any alleged misstatements regarding the Literacy Materials.  Plaintiffs, therefore, have not stated a claim against F&P, LLC or Mossflower. *See Canales v. Gatzunis*, 979 F. Supp. 2d 164, 170 (D. Mass. 2013) (quoting *Bagheri v. Galligan*, 160 F. Appx. 4, 5 (1st Cir. 2005)) ("In order to satisfy the minimal requirements of notice pleading, a plaintiff cannot 'lump'

multiple defendants together and must 'state clearly which defendant or defendants committed each of the alleged wrongful acts.'").

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss all claims with prejudice.

Dated: February 6, 2025

Respectfully submitted,

_/s/ Felicia H. Ellsworth_
FELICIA H. ELLSWORTH (BBO # 665232)
ANDY O'LAUGHLIN (BBO # 691836)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
Felicia.Ellsworth@wilmerhale.com
Andy.Olaughlin@wilmerhale.com
_Counsel for Greenwood Publishing Group,_
_LLC; HMH Education Company_

_/s/ David Thomas_
DAVID THOMAS (BBO # 640854)
GREENBERG TRAURIG, LLP
1 International Pl #2000
Boston, MA 02110
Tel: (617) 310-6040
Fax: (617) 897-0940
David.Thomas@gtlaw.com
_Counsel for RWPN, LLC;_
_Lucy Calkins in her personal capacity_

_/s/ Javier F. Flores_
JAVIER F. FLORES (BBO # 666089)
DINSMORE & SHOL, LLP
101 Arch Street, Suite 1800
Boston, MA 02110
Tel: (857) 305-6383
Fax: (857) 305-6401
Javier.Flores@dinsmore.com
_Counsel for Fountas and Pinnell, LLC;_
_Irene C. Fountas in her personal capacity;_
_Gay Su Pinnell in her personal capacity_

## LOCAL RULE 7.1 CERTIFICATION

I, Felicia H. Ellsworth, certify that on February 5, 2025, the parties conferred in good faith to resolve or narrow the issue presented by this motion and were unable to resolve or narrow the issues.

/s/ *Felicia H. Ellsworth*
Felicia H. Ellsworth


## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of February, 2025, I caused this document to be filed through the CM/ECF system, where it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ *Felicia H. Ellsworth*
Felicia H. Ellsworth