## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

S.C., by her parent and next friend KARRIE
CONLEY; K.C., by her parent and next friend
KARRIE CONLEY; and R.H., by his parent
and next friend MICHELE HUDAK, on
behalf of themselves and all others similarly
situated,

        Plaintiffs,

        v.

LUCY CALKINS; IRENE FOUNTAS; GAY
SU PINNELL; RWPN, LLC, d/b/a THE
READING & WRITING PROJECT AT
MOSSFLOWER, LLC; BOARD OF
TRUSTEES OF TEACHERS COLLEGE,
COLUMBIA UNIVERSITY; FOUNTAS
AND PINNELL, LLC; GREENWOOD
PUBLISHING GROUP, LLC, d/b/a
HEINEMANN PUBLISHING; and HMH
EDUCATION CO.,

        Defendants.

Case No. 1:25-cv-10007

**DEFENDANTS LUCY CALKINS; IRENE FOUNTAS; GAY SU PINNELL; RWPN, LLC,
d/b/a THE READING & WRITING PROJECT AT MOSSFLOWER, LLC; FOUNTAS
AND PINNELL, LLC; GREENWOOD PUBLISHING GROUP, LLC, d/b/a
HEINEMANN PUBLISHING; and HMH EDUCATION COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND, IN THE
ALTERNATIVE, MOTION TO STRIKE CLASS ALLEGATIONS**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................3

    A.    Plaintiffs' Allegations ...............................................................................3

    B.    "Reading Wars" And The Literacy Materials.........................................5

    C.    Shotgun Pleading And Class-Action Allegations ..................................6

LEGAL STANDARD...............................................................................................................7

ARGUMENT ...........................................................................................................................8

I.     COURTS DO NOT RESOLVE DISPUTES OVER EDUCATIONAL THEORIES ........8

    A.    Plaintiffs Improperly Ask The Court To Step Into the Shoes Of The Executive and Legislative Branches ...........................................................................10

    B.    There Is No Applicable Standard Of Care ............................................12

    C.    Plaintiffs Cannot Establish Causation...................................................13

    D.    Limited Educational Achievement Is Not A Legally Cognizable Injury .............14

    E.    Plaintiffs Improperly Ask This Court To Police The Marketplace of Ideas..........15

II.    PLAINTIFFS FAIL TO MEET BASIC PLEADING STANDARDS, LET ALONE THE HEIGHTENED STANDARD OF RULE 9(b) ...........................................................15

III.   THE CHAPTER 93A CLAIM FAILS...........................................................................19

    A.    Plaintiffs Cannot Establish The Requisite Commercial Relationship Because They Did Not Select Or Purchase The Literacy Materials ...............................20

    B.    Defendants' Conduct Was Not Unfair...................................................21

    C.    Defendants' Conduct Was Not Deceptive .............................................25

IV.   PLAINTIFFS' NEGLIGENCE CLAIM FAILS.............................................................27

    A.    There Cannot Be Negligent Misrepresentation Where There Is No Reliance.......28

    B.    Any Negligence Claim Is Barred By The Economic Loss Doctrine And Otherwise Fails.........................................................................................................28

V.     PLAINTIFFS' FALSE ADVERTISING CLAIM FAILS................................................30

VI.   PLAINTIFFS SEEK TO IMPROPERLY EXTEND PRODUCTS LIABILITY LAW TO THE MARKETPLACE OF IDEAS .................................................................................31

VII.  PLAINTIFFS CANNOT ESTABLISH A CLASS..........................................................33

    A.    The Named Plaintiffs Are Not Members Of The Proposed Class .........................34

    B.    The Proposed Class Is Not Readily Ascertainable ................................34

    C.    Proving Causation Would Require Extensive Individualized Inquiry..................36

    D.    Plaintiffs' Claims Cannot Be Resolved On A Classwide Basis ...........................37

VIII.  INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED ..........................................38

CONCLUSION......................................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

### CASES

Page(s)

*Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23 (1st Cir. 2004) .......................15

*Ambrose v. New England Ass'n of Schools & Colleges, Inc.*, 252 F.3d 488 (1st Cir. 2001) ........................................................................................................11, 12, 13

*Arabian Support & Services v. Textron Systems Corp.*, 368 F. Supp. 3d 211 (D. Mass. 2019)........................................................................................................28

*Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81 (1st Cir. 2021)........................................35

*Bais Yaakov of Spring Valley v. ACT, Inc.*, 328 F.R.D. 6 (D. Mass. 2018).................................34

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................7, 8

*Bertrand v. Quincy Market Cold Storage & Warehouse Co.*, 728 F.2d 568 (1st Cir. 1984) ........................................................................................................30

*Bezdek v. Vibram USA Inc.*, No. CIV.A. 12-10513-DPW, 2013 WL 639145 (D. Mass. Feb. 20, 2013)................................................................................................8, 30

*Bittle v. Oklahoma City University*, 2000 OK 66, 6 P.3d 509 (Okla. Civ. App. 2000) .........................................................................................................................9

*Bose Corp. v. Linear Design Laboratories, Inc.*, 467 F.2d 304 (2d Cir.1972)............................27

*Buck v. American Airlines, Inc.*, 476 F.3d 29 (1st Cir. 2007)........................................................8

*Canales v. Gatzunis*, 979 F. Supp. 2d 164 (D. Mass. 2013) ........................................................39

*Cavaliere v. Duff's Business Institute*, 605 A.2d 397 (Pa. Super. Ct. 1992) ................................11

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24 (1st Cir. 2000) .........................................................................................................................4

*Commonwealth of Puerto Rico v. M/V Emily S.*, 158 F.R.D. 9 (D.P.R. 1994).............................29

*Courtemanche v. Motorola Solutions, Inc.*, 2024 WL 5111509 (D. Mass. Dec. 13, 2024)......................................................................................................................20

*Craig v. Everett M. Brooks Co.*, 351 Mass. 497 (1967) ..............................................................27

*Crommelin v. Takeda Pharmaceuticals U.S.A., Inc.*, 747 F. Supp. 3d 304 (D. Mass. 2024)................................................................................................................25, 27

*Crosby v. Social Security Administration of U.S.*, 796 F.2d 576 (1st Cir. 1986) .........................35

*Cumis Insurance Society Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458 (2009) ....................28

*Cummings v. HPG Int'l, Inc.*, 244 F.3d 16 (1st Cir. 2001).............................................................19

*Diamond Crystal Brands, Inc. v. Backleaf, LLC*, 60 Mass. App. Ct. 502 (2004).........................23

*DiCroce v. McNeil Nutritionals, LLC*, 640 F. Supp. 3d 182 (D. Mass. 2022) .............................30

*Doe v. Secretary of Education*, 479 Mass. 375 (2018) ..................................................................10

*Donohue v. Copiague Union Free School District*, 47 N.Y.2d 440 (1979) ...........................11, 13

*Doucette v. Jacobs*, 106 F.4th 156 (1st Cir. 2024) ........................................................................29

*Dumont v. Reily Foods Co.*, 934 F.3d 35 (1st Cir. 2019) ........................................................25, 27

*Ellis v. Safety Insurance Co.*, 41 Mass. App. Ct. 630 (1996) .......................................................22

*Fernandes v. Centessa Pharmaceuticals PLC*, No. 1:22-CV-8805-GHW, 2024
    WL 3638254 (S.D.N.Y. Aug. 2, 2024).........................................................18, 19, 29, 26

*Fitzer v. Security Dynamics Technologies, Inc.*, 119 F. Supp. 2d 12 (D. Mass.
    2000) ...............................................................................................................................18

*Gambrill v. Board of Education of Dorchester County*, 481 Md. 274 (2022)................................9

*Garcia v. Kusan, Inc.*, 39 Mass. App. Ct. 322 (1995) ............................................................31, 32

*Garcia-Catalan v. United States*, 734 F.3d 100 (1st Cir. 2013) ....................................................8

*Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315 (S.D.N.Y. 2006) ................................32

*Gossels v. Fleet National Bank,* 453 Mass. 366 (2009)................................................................28

*Gupta v. New Britain General Hospital*, 239 Conn. 574 (1996) ....................................................9

*Hancock v. Commissioner of Education*, 443 Mass. 428 (2005)..................................................10

*Hayduk v. Lanna*, 775 F.2d 441 (1st Cir. 1985) ............................................................................8

*Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790 (2006)......................23

*Hunter v. Board of Education of Montgomery County.*, 292 Md. 481 (1982).........................11, 15

*In re Asacol Antitrust Litigation*, 907 F.3d 42 (1st Cir. 2018).....................................................36

*In re Boston University COVID-19 Refund Litigation*, No. 1:20-cv-10827-RGS, 2022 WL 3154670 (D. Mass. Aug. 8, 2022) ...............................................................14, 15

*In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12 (1st Cir. 2003) ...........................................4

*In re GNC Corp.*, 789 F.3d 505 (4th Cir. 2015) ...........................................................26

*In re Suffolk University Covid Refund Litigation*, 616 F. Supp. 3d 115 (D. Mass. 2022) ...............................................................................................................8

*In re TJX Cos. Retail Security Breach Litigation*, 246 F.R.D. 389 (D. Mass. 2007). ..............36, 37

*Islam v. Option One Mortgage Corp.*, 432 F. Supp. 2d 181 (D. Mass. 2006)..............................30

*Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012) .....................................................30

*Kent v. SunAmerica Life Insurance Co.*, 190 F.R.D. 271 (D. Mass. 2000) ...........................33, 35

*Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995).....................................................26, 27

*Loughlin v. Vi-Jon*, 728 F. Supp 3d 163 (D. Mass. 2024) ...........................................37

*Love v. Career Education Corp.*, No. 4:11cv-1585-JAR, 2012 WL 1684572 (E.D. Mo. May 15, 2012) .......................................................................................9, 12

*Manning v. Boston Medical Center Corp.*, 725 F.3d 34 (1st Cir. 2013) .................................8, 33

*Martin v. Mead Johnson Nutrition Co.*, No. 1:09-cv-11609-NMG, 2010 WL 3928707 (D. Mass. Sept. 30, 2010) ...............................................................15

*McDuffy v. Secretary of the Office of Education*, 415 Mass. 545 (1993) .....................................10

*Messner v. Northshore University HealthSystem*, 669 F.3d 802 (7th Cir. 2012) .........................35

*Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547 (2008) .....................................21

*Missouri v. Jenkins*, 515 U.S. 70 (1995).....................................................11

*Moran v. Stonehill College, Inc.*, No. 2077CV00431, 2021 WL 965754 (Mass. Sup. Ct. Feb. 16, 2021) .....................................................20

*Mowbray v. Waste Management Holdings, Inc.*, 189 F.R.D. 194 (D. Mass. 1999) )..................37

*MSP Recovery Claims, Series LLC & Series 17-04-631 v. Plymouth Rock Assurance Corp., Inc.*, 404 F. Supp. 3d 470 (D. Mass. 2019) ..........................................34

*Mulder v. Kohl's Department Stores, Inc.*, 865 F.3d 17 (1st Cir. 2017) .................................8, 15

*Nemirovsky v. Daikin North America LLC*, 488 Mass. 712 (2021)...............................................24

*New York State Board of Elections v. Lopez Torres*, 552 U.S. 196 (2008) ................................15

*Niazi v. McKinsey*, 2023 WL 4627981 (D. Mass. July 19, 2023) ...........................................16, 19

*Nycal Corp. v. KPMG Peat Marwick LLP*, 426 Mass. 491 (1998) ..............................................28

*O'Hara v. Diageo-Guinness*, No. CV 1:15-cv-14139-MLW, 2021 WL 11749765
    (D. Mass. Mar. 17, 2021) ................................................................................................37

*O'Neill v. United States*, 328 F.Supp.3d 16 (D. Mass. 2018) ........................................................5

*Omni-Wave Electronics Corp. v. Marshall Industries*, 127 F.R.D. 644 (D. Mass.
    1989) ................................................................................................................................38

*Orduno v. Pietrzak*, 932 F.3d 710 (8th Cir. 2019) .......................................................................35

*Ortiz v. Energy*, No. 24-1455-BLS1, 2025 WL 752568 (Mass. Super. Feb. 19,
    2025) ................................................................................................................................30

*Padnes v. Scios Nova Inc.*, No. C 95-1693 MHP, 1996 WL 539711 (N.D. Cal.
    Sept. 18, 1996) ................................................................................................................17

*Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81 (2d
    Cir. 2011) ..........................................................................................................................9

*Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008) ............................................................................12

*Payton v. Abbott Laboratories* 386 Mass. 540 (1982)................................................................28

*Peter W. v. San Francisco Unified School District*, 60 Cal. App. 3d 814 (1976) ........................13

*Planned Parenthood Federation of America v. Problem Pregnancy of Worcester,
    Inc.*, 398 Mass. 480 (1986) ............................................................................................21

*Rafferty v. Merck & Co.*, 479 Mass. 141 (2018)........................................................................20

*Ross v. Creighton University*, 957 F.2d 410 (7th Cir. 1992) ...........................................12, 13, 36

*Rossman v. Herb Chambers Commonwealth Avenue, Inc.*, 80 Mass. App. Ct. 1116..................26

*Rovinelli v. Trans World Entertainment Corp.*, No. 3:19-cv-11304-DPW, 2021
    WL 752822 (D. Mass. Feb. 2, 2021) ..................................................................8, 33, 35

*Saroya v. University of the Pacific*, 503 F. Supp. 3d 986 (N.D. Cal. 2020) ................................13

*Schonton v. MPA Granada Highlands LLC*, No. 16-CV-12151-DJC, 2019 WL
    1455197 (D. Mass. Apr. 2, 2019) ....................................................................................35

*School Committee of Springfield v. Board of Education*, 362 Mass. 417 (1972) ........................11

*Shaulis v. Nordstrom, Inc.*, 865 F.3d 1 (1st Cir. 2017) ........................................................14, 15, 19

*Solano v. Boston Scientific Corp.*, No. 1:23-cv-12366-JEK, 2024 WL 1675692
(D. Mass. Apr. 5, 2024) ...........................................................................................15

*Speakman v. Allmerica Financial Life Insurance*, 367 F. Supp. 2d 122 (D. Mass.
2005) .................................................................................................................38

*Squeri v. Mount Ida College*, 954 F.3d 56 (1st Cir. 2020) ............................................................20

*Steinmetz v. Coyle & Caron, Inc.*, 862 F.3d 128 (1st Cir. 2017) ..................................................20

*Stigman v. Nickerson Enterprises, Inc.*, 2000 Mass. App. Div. 223 (Dist. Ct.
2000) .................................................................................................................26

*Suna v. Bailey Corp.*, 107 F.3d 64 (1st Cir. 1997) ...........................................................................17

*Swidryk v. Saint Michael's Medical Center*, 201 N.J. Super. 601 (Law. Div. 1985) ...................11

*Tapogna v. Egan*, 141 F.R.D. 370 (D. Mass. 1992) ................................................................17, 18

*Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60 (1st Cir. 2020) .......................................21, 22, 25, 27

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................................................36

*Walsh v. TelTech System, Inc.*, 821 F.3d 155 (1st Cir. 2016) ..................................................19, 24

*Walter v. Bauer*, 439 N.Y.S.2d 821 (NY App. Div. 1981) .............................................................32

*Wang Labs., Inc. v. Business Incentives, Inc.*, 398 Mass. 854 (1986) ...........................................22

*Waugh v. Morgan Stanley & Co.*, 966 N.E.2d 540 (Ill. App. Ct. 2012) ..........................................9

*Winter v. G.P. Putnam's Sons*, 938 F.2d 1033 (9th Cir. 1991) .....................................................32

*Wortman v. Logmein, Inc.*, No. 1:18-cv-11475-GAO, 2022 WL 3714620 (D.
Mass. Aug. 29, 2022) .............................................................................................36

## CONSTITUTIONAL PROVISIONS

Mass. Const.,
    Pt. I, Art. 30 ..........................................................................................................11
    Pt. II, Ch. V, § 2 ....................................................................................................10

## STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 23(b)(3) .................................................................................................................33

Mass. Gen. L.
    ch. 71 § 37 ........................................................................................................10
    ch. 71 § 48 ...............................................................................................10, 21
    ch. 93A § 2 .......................................................................................................20
    ch. 93A § 3 .......................................................................................................21
    ch. 93A § 9 .......................................................................................................19
    ch. 266 § 91 .....................................................................................................30

## LEGISLATIVE MATERIAL

S. 263, 194th Gen. Ct. (Mass. 2023-24) .........................................................12

## OTHER AUTHORITIES

7A Wright & Miller, *Federal Practice and Procedure* § 1761 (4th ed. June 2024) ..............33, 34

Restatement (Second) of Torts, *Products Liability*, § 19.............................................32

*Tort Liability of Private Schools and Institutions of Higher Learning for
    Educational Malpractice*, 18 A.L.R.7th Art. 7 (2017) ......................................14

## INTRODUCTION

Plaintiffs ask this Court to make judgments about early literacy education that Massachusetts law entrusts exclusively to the Commonwealth's schools and educators. Their claims combine nonviable theories of injury and causation with conclusory factual allegations that fail to meet basic pleading requirements. Plaintiffs' amended Complaint ("Complaint" or "FAC") fares no better than their first attempt to state a claim and should be dismissed.

This Court is not an appropriate forum to decide how best to teach reading, or which curricula Massachusetts teachers must use in their classrooms. That power is vested in the Commonwealth's executive and legislative branches, which in turn have delegated it to local school officials. Nevertheless, Plaintiffs ask this Court to wade into a decades-long academic debate, step into the shoes of those educators, and decide whether or the extent to which phonics should dominate early literacy classrooms. In fact, Plaintiffs seek a ruling that their preferred approach to teaching reading is objectively better for all Massachusetts students than the alternatives, and that teachers, professors, curriculum writers, researchers, and publishers whose ideas or approaches differ from Plaintiffs should be held liable for multiple damages under consumer protection and common law. That is not what Chapter 93A is for; it is not what the law of negligence is for; and it is not what courts are for.

The troubling nature of Plaintiffs' request is compounded by their failure to meet the heightened pleading requirements of Rule 9(b). Plaintiffs take issue with certain statements that characterized the literacy materials as "research-backed," but their own allegations concede, as they must, that the literacy materials were supported by research. And although Plaintiffs contend that the research was flawed, they fail to identify what research they find problematic and how it is deficient, let alone why it renders the challenged statements misleading or false.

1

The non-justiciability and the basic pleading defects of Plaintiffs' claims are reason enough to dismiss. Even were they not, the Complaint should be dismissed for the following additional reasons.

*First*, Plaintiffs fail to state a claim under Chapter 93A because they do not proffer well-pleaded facts to support the existence of the required commercial relationship with Defendants[1]; Defendants' alleged conduct is neither unfair nor deceptive; and Plaintiffs cannot show that the literacy materials at issue caused their alleged injury.

*Second*, Plaintiffs fail to state a claim for negligence (under either a negligent misrepresentation or a general negligence theory) because Plaintiffs did not rely on any alleged statements by Defendants; their claims are barred by the economic loss doctrine; and they have not sufficiently pleaded that Defendants' conduct caused them injury.

*Third*, Plaintiffs fail to state a claim for false advertising for the same reasons they have failed to state a claim under Chapter 93A.

*Fourth*, though they label them as Chapter 93A, negligence, and false advertising claims, Plaintiffs are fundamentally asking the Court to extend product liability theories to the marketplace of ideas, an effort that courts routinely reject.

*Fifth*, even if this Court does not dismiss Plaintiffs' claims in their entirety, it should dismiss or strike their class allegations because Plaintiffs are not members of the proposed class, the class is not ascertainable, and resolving Plaintiffs' claims on a classwide basis would require individualized inquiries.

---

[1] Lucy Calkins ("Calkins"); Irene Fountas ("Fountas"); Gay Su Pinnell ("Pinnell"); RWPN, LLC, d/b/a The Reading & Writing Project at Mossflower, LLC ("Mossflower"); Fountas and Pinnell, LLC ("F&P, LLC"); Greenwood Publishing Group, LLC, d/b/a Heinemann Publishing ("Heinemann"); and HMH Education Company ("HMH").

*Finally*, though Defendants have collaborated to present a single consolidated motion to dismiss, certain defendants have individualized bases that warrant dismissal of Plaintiffs' claims against them.

## BACKGROUND

### A.    Plaintiffs' Allegations

Plaintiffs accuse Defendants—professors and publishers who have devoted significant portions of their professional careers to thinking, researching, writing, and teaching about early literacy education—of ignoring and downplaying the importance of phonics in their literacy curricula and related materials ("Literacy Materials"), and making statements about the Literacy Materials that were allegedly inaccurate or misleading. *See e.g.*, Dkt. 47 ("FAC") ¶¶ 38-57.[2] More specifically, Plaintiffs claim that because the Literacy Materials allegedly fail to sufficiently emphasize phonics, they are defective, fail to teach children how to read, and have been rejected by the academic community in favor of an approach that relies on phonics as the dominant means of reading instruction. *See, e.g.*, FAC ¶¶ 30-40, 45-47, 59-76.

Plaintiffs allege they attended schools that used one or more of the Literacy Materials and struggled to learn to read because of the supposedly defective nature of the reading instruction. *See* FAC ¶¶ 103-104, 106.  Yet, as the materials cited in the Complaint (FAC ¶¶ 6, 90, 92-93) acknowledge, "[m]any factors influence a student's reading skills—from preschool preparation to

---

[2] Plaintiffs identify the following four sets of materials in the Complaint: Units of Study ("UoS"), Fountas & Pinnell Classroom ("F&P Classroom"), Leveled Literacy Intervention ("LLI"), and the Fountas & Pinnell Benchmark Assessment System ("BAS").  FAC ¶¶ 9, 20-24.  Notably, Plaintiffs do not allege that they ever actually used, encountered, or were taught literacy through F&P Classroom. *See id.* ¶¶ 25-26, 103-104, 106.  LLI is a supplementary interventional resource utilized for children who need extra help learning to read. *See id.* ¶ 39.  And BAS is an assessment resource that gives teachers the ability to measure reading progress against grade-level criteria. *See id.* ¶ 59. In other words, LLI and BAS are not used for core literacy instruction in the classroom.

whether their basic needs are met." Ex. A (Boston Globe Oct. 4, 2023 article) at 4.[3]  Plaintiffs allege that they struggled to read but do not allege facts—as opposed to conclusory statements—indicating that they struggled to read *because* of the Literacy Materials.  For example, they do not identify how, or which portions of, the Literacy Materials were used to instruct them; what other literacy curricula were used;[4] whether any of the students had learning difficulties; the size of their classrooms; the student-to-teacher ratios in those classes; whether the teachers were trained on and/or actually implemented the Literacy Materials as designed; the frequency and duration of the instruction; the time period during which Plaintiffs were taught using the Literacy Materials; or anything else about how they were educated.[5]

---

[3] The exhibits attached to this memorandum are those cited in the Complaint and therefore incorporated into the allegations of the Complaint by reference.  *Clorox Co. P. R. v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (on motion to dismiss, courts "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint") (citation omitted).

[4] Plaintiffs do not allege facts about phonics programs the relevant school districts used, or allege, for example, that they did or did not use UoS in Phonics, one of the three series (along with UoS in Reading and UoS in Writing) comprising the UoS curricula, at any time.  *See New Units of Study in Phonics from Lucy Calkins and TCRWP*, Heinemann (July 3, 2018), https://blog.heinemann. com/new-units-of-study-in-phonics-with-lucy-calkins (noting UoS in Phonics was published in 2018).

[5] Instead of identifying the specific years during which they purportedly received literacy instruction using the Literacy Materials, Plaintiffs allege only that they attended public schools in the Ashland, Sandwich, and Acton-Boxborough school districts and that their teachers at some point used some of the Literacy Materials.  FAC ¶¶ 25-26.  Students in those school districts who were eligible to take the Massachusetts Comprehensive Assessment System ("MCAS") achieved *higher* than average scores on the MCAS in English and Language Arts during the years Defendants understand Plaintiffs would have attended those schools.  *See* DESE, *Next Generation MCAS Test 2019: Percent of Students at Each Achievement Level for David Mindess* (Sept. 24, 2019), https://tinyurl.com/mnj55rxz; DESE, *Next Generation MCAS Test 2021: Percent of Students at Each Achievement Level for David Mindess* (Sept. 24, 2024), https://tinyurl.com/yk8nut2c; DESE, *Next Generation MCAS Test 2018: Percent of Students at Each Achievement Level for Blanchard Memorial School* (Sept. 27, 2018), https://tinyurl.com/5yuu3b97.  This Court may take judicial notice of MCAS scores. *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003).

### B.    "Reading Wars" And The Literacy Materials

There has been a decades-long public and academic debate concerning the appropriate role of phonics in teaching reading.  FAC ¶¶ 33, 39-40.  Although Plaintiffs cast this debate as settled in favor of Plaintiffs' preferred approach (*see, e.g.*, *id.* ¶¶ 2, 31, 38), the materials relied on in the Complaint acknowledge that the discussion over how best to teach reading has been a "pendulum [that] has swung back and forth between holistic, meaning-centered approaches and phonics approaches without much hope of resolving disagreements."  Ex. B (excerpted National Reading Panel ("NRP"): Report of the Subgroups) at 2-1.  The NRP report cited (FAC ¶¶ 2, 33-35) by Plaintiffs found that (i) "systematic phonics" or phonics-dominant instruction "should be integrated with other reading instruction in phonemic awareness, fluency, and comprehension strategies to create a complete reading program," (ii) phonics is but one component "within a complete and integrated reading program" because "[s]everal additional competencies must be acquired as well to ensure that children will learn to read," and (iii) because "children are known to vary greatly in the skills they bring to school ... [t]eachers should be able to assess the needs of the individual students and tailor instruction to meet specific needs."  Ex. C (NRP Report) at 2-3, 6-7.  Similarly, the American Institutes of Research (FAC ¶¶ 54-55) found that schools that used Calkins' UoS "show achievement that is not only higher, but statistically significantly higher, relative to schools" that do not use UoS.  Ex. D (American Institutes for Research study) at 3.[6]

Despite alleging that Defendants completely ignored research supporting a phonics-dominant approach to teaching reading, the Complaint itself acknowledges that the Literacy

---

[6] Plaintiffs simply ignore these results and conclude that the cited studies suffer "from glaring methodological, theoretical, and other flaws."  FAC ¶ 55.  This Court, however, need not and should not accept Plaintiffs' conclusory allegations as true.  *See O'Neill v. United States*, 328 F.Supp.3d 16, 23 (D. Mass. 2018) (allegations that are "threadbare, conclusory [or] speculative" or "devoid of any specific factual allegations" are not "well-pleaded facts").

Materials—which were revised over time, FAC ¶ 80—include phonics-based instructions, *id.* ¶¶ 38, 45.  It also acknowledges that Defendants relied on research and studies in creating and marketing the Literacy Materials.  *See, e.g.*, *id.* ¶¶ 50*,* 52, 55.  For example, the Complaint cites a report from the U.S. Department of Education (*id.* ¶ 52) that stated LLI demonstrated statistically significant positive effects on general reading achievement and fluency and "provides *explicit instruction in phonological awareness*, *phonics*, fluency, vocabulary, reading comprehension, oral language skills, and writing."  Ex. E (What Works Clearinghouse report) at 1.

Importantly, Plaintiffs and the materials on which they rely also acknowledge that local school officials choose literacy curricula, *see* FAC ¶¶ 8, 77, 119, 132; Ex. F (Boston Globe Feb. 7, 2024 article) at 1-2 (cited in FAC ¶¶ 6, 90-92), and school districts often mix and match by combining different teaching materials from multiple authors and publishers, *see, e.g.*, FAC ¶¶ 94 (alleging that teachers are trained on other practices), 104, 106; Ex. A at 16-17 (showing selections of curricula in several districts).

### C.    Shotgun Pleading And Class-Action Allegations

Defendants include (i) Mses. Calkins, Fountas, and Pinnell, who are professors at Columbia University, Lesley University, and The Ohio State University, respectively,  and associated LLC entities; (ii) HMH, a learning technology company that delivers integrated K-12 learning materials and solutions; and (iii) Heinemann, the publisher of the Literacy Materials and provider of educational services for teachers from prekindergarten through college, and a subsidiary of HMH.  FAC ¶¶ 9, 16-24.  The Complaint also names as a defendant Teachers College, Columbia University, the first and largest graduate school of education in the United States.  *Id.* ¶¶ 10-14.

Rather than distinguishing and making claims against each of these eight defendants individually, Plaintiffs simply lump them all together.  *See* FAC ¶¶ 3, 6-8, 38, 47, 58, 68, 73, 88,

92, 112, 118-122, 127, 130-132, 136 ("Defendants" created, sold, or marketed the Literacy Materials); 4-7, 48-49, 54-57, 60, 68, 72-73, 112, 118-122, 130-132, 136 ("Defendants" made false and misleading statements). For example, Plaintiffs refer to the Literacy Materials as "Defendants' Literacy Products" even though the Literacy Materials were authored by different author defendants, *e.g.*, Ms. Calkins did not author the materials written by Mses. Fountas and Pinnell, and vice versa. *See id.* ¶¶ 45, 49, 60, 100.

Plaintiffs' blunderbuss approach to the eight defendants extends to their class allegations, which put forth an unworkably broad class definition. Plaintiffs seek to certify a class of:

> *All* children and parents and/or legal guardians of children (1) currently or previously enrolled in kindergarten, first, second, or third grade in a Massachusetts elementary school that purchased, licensed, reproduced, or otherwise employed [the Literacy Materials], (2) who failed to meet state benchmarks on the Massachusetts Comprehensive Assessment System English Language Arts exam, (3) who suffered related developmental, emotional, and/or financial injuries as a result, and (4) who reached (or will reach) the age of majority on or after December 4, 2020.

FAC ¶ 109. Notably absent from this definition is a requirement that a putative class member was actually taught to read using the Literacy Materials—just attending a school that purchased them would suffice. Further, Plaintiffs do not specify what, exactly, constitutes "fail[ing] to meet state benchmarks." *Id.*[7] Nor do they allege that Plaintiffs in fact failed to meet state benchmarks.

## LEGAL STANDARD

A complaint that fails to "state a claim to relief that is plausible on its face" is subject to dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing a motion to dismiss, the court must distinguish the complaint's factual allegations (which, if well-pleaded, must be

---

[7] MCAS scores are generally separated into: (1) Not Meeting Expectations; (2) Partially Meeting Expectations; (3) Meeting Expectations; and (4) Exceeding Expectations. DESE, *About the MCAS* (Jan. 2, 2025)*,* https://www.doe.mass.edu/mcas/ #:~:text= MCAS%20assessments%20are% 20based%20on.

accepted as true) from its legal conclusions (which need not be credited). *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013). A plaintiff must provide more than labels, bald conclusions, or speculation to plead an entitlement to relief. *Twombly*, 550 U.S. at 555; *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 (1st Cir. 2007). Where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief" and should be dismissed. *Bezdek v. Vibram USA Inc.,* No. 12-10513-DPW, 2013 WL 639145 at, *2 (D. Mass. Feb. 20, 2013) (internal quotation marks and citation omitted).

In addition, where (as here) a claim sounds in fraud, Rule 9(b)'s heightened pleading standard applies, requiring "plaintiffs to specifically plead 'the time, place, and content of an alleged false representation.'" *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21-22 (1st Cir. 2017) (citation omitted).[8] General or conclusory allegations of fraud do not suffice. *See Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985).

## ARGUMENT

## I.    COURTS DO NOT RESOLVE DISPUTES OVER EDUCATIONAL THEORIES

Plaintiffs allege that all the Literacy Materials failed to sufficiently incorporate phonics, *see, e.g.*, FAC ¶¶ 118-119, 130-132, which caused Plaintiffs to suffer educational harm, *id.* ¶¶ 121, 133. But claims based on alleged lack of educational quality have been nearly universally rejected in every jurisdiction in which they have been made. *See, e.g.*, *In re Suffolk Univ. Covid Refund*

---

[8] To the extent all claims are not dismissed, Defendants alternatively move to strike the class allegations. The standard for striking class allegations is the same as the standard for a motion to dismiss. *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013). "[C]ourts retain 'considerable discretion' to strike material under Rule 12(f), and when 'it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations.'" *Rovinelli v. Trans World Ent. Corp.*, No. 19-cv-11304-DPW, 2021 WL 752822, at *6 (D. Mass. Feb. 2, 2021) (citation omitted).

*Litig.*, 616 F. Supp. 3d 115, 118 (D. Mass. 2022) (rejecting claims that would require the "judiciary to define the sufficiency or quality of an educational program"); *Gambrill v. Bd. of Educ. of Dorchester Cnty.*, 481 Md. 274, 310 (2022) ("[C]ourts have declined to recognize a cause of action or claims regarding the quality of education provided[.]"); *Bittle v. Oklahoma City Univ.*, 2000 OK CIV APP 66, ¶ 14, 6 P.3d 509, 514 (Okla. Civ. App. 2000) (noting that, for suits by students "asserting inadequate or improper instruction … [t]he courts uniformly reason that such a claim runs afoul of established public policy"); *Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574, 590 (1996) (noting that "the judiciary is ill equipped" to "evaluate the course of instruction" or "to review the soundness of [a] method of teaching") (cleaned up)).

Attempts to re-package claims that fundamentally allege the shortcomings of education under other labels such as fraud, negligence, or breach of contract have been similarly unavailing. *See, e.g.*, *Waugh v. Morgan Stanley & Co.*, 966 N.E.2d 540, 551 (Ill. App. Ct. 2012) (dismissing negligence claim and noting that "most jurisdictions that have considered the issue have found that … claims [requiring an analysis of the quality of education received] are not cognizable") (collecting cases); *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) ("[A] student may not seek to avoid this [bar on claims regarding education quality] by couching such a claim as a breach of contract claim."); *Bittle*, 6 P.3d at 515 (affirming judgment where "all of [plaintiff's] claims for fraud, breach of contract, tortious breach of contract, negligence, and unjust enrichment commonly" involve educational-quality allegations); *Love v. Career Educ. Corp.*, No. 4:11-cv-1585-JAR, 2012 WL 1684572, at *3 (E.D. Mo. May 15, 2012) ("Plaintiff's tort claims regarding the 'sufficiency,' 'adequacy' and 'quality' of her education cannot be evaluated by the Court, even if they are framed as allegations of fraud.").

The basic principle that courts should not resolve disputes over education theory is based on a number of rationales, discussed below, any one of which is sufficient to warrant dismissal here.

### A.    Plaintiffs Improperly Ask The Court To Step Into the Shoes Of The Executive and Legislative Branches

The Massachusetts Constitution expressly commits the oversight of education to the elected branches—not the judiciary.  *See* Mass. Const. Pt. II, Ch. V, § 2 ("[I]t shall be the duty of legislatures and magistrates,[9] in all future periods of this commonwealth, to cherish the interests of literature and the sciences, and all seminaries of them; especially ... public schools and grammar schools in the towns[.]").  In turn, the Massachusetts General Court (legislature) has tasked school districts to "establish educational goals and policies … consistent with the requirements of law and statewide goals and standards established by the board of education."  Mass. Gen. L. ch. 71 § 37; *see also id.* § 48 ("The principal at each school … shall … purchase textbooks and other school supplies.").  As a part of these duties, schools decide which curricular materials to use.

Consistent with this constitutional provision and these statutes, Massachusetts courts recognize that choices related to education policy are "fundamentally political," *Doe v. Sec'y of Educ.*, 479 Mass. 375, 390 (2018); that "Courts are not well positioned to make such decisions," *Hancock v. Comm'r of Educ.*, 443 Mass. 428, 460 (2005) (Marshall, C.J., concurring); and that questions regarding education policy are left "to the Governor and the Legislature," *id.* at 454.  *See also Doe*, 479 Mass. at 390 (declining to make "policy choices [about charter schools] that are properly the Legislature's domain").  Indeed, courts cannot exercise such legislative and executive powers under Massachusetts' constitutional structure.  *Hancock*, 443 Mass. at 466 (Cowin &

---

[9] In this provision, "magistrates" refers to the executive branch, not the judiciary.  *See McDuffy v. Sec'y of the Office of Edu.*, 415 Mass. 545, 606 (1993).

Sosman, JJ., concurring) (in an education-policy case, noting that "the overarching doctrine of the separation of powers prohibits judicial intervention in otherwise discretionary functions of the executive and legislative branches"); Mass. Const., Pt. I, Art. 30 (containing the Massachusetts separation of powers directive); *School Comm. of Springfield v. Bd. of Educ.*, 362 Mass. 417, 458-459 (1972) (citing Article 30 and declining to displace state and local education authorities from their assigned responsibilities for public schools).[10]

Educational policy-making is expressly assigned to the political branches for good reason. Unlike the legislative or executive branches, courts lack the means to determine the fundamental policy questions surrounding differing educational theories, decisions, or approaches. *Ambrose v. New England Ass'n of Schs. & Colls., Inc.*, 252 F.3d 488, 499 (1st Cir. 2001) (noting "the patent undesirability of having courts attempt to assess the efficacy of the operations of academic institutions"); *Missouri v. Jenkins*, 515 U.S. 70, 131-132 (1995) (Thomas, J., concurring) ("State and local school officials not only bear the responsibility for educational decisions, they also are better equipped than a single federal judge to make the day-to-day policy, *curricular*, and funding choices." (emphasis added)).

---

[10] Numerous jurisdictions have similarly concluded that claims based on educational quality are not viable where authority over educational policy is committed to non-judicial bodies. *See generally Donohue v. Copiague Union Free Sch. Dist.*, 47 N.Y.2d 440, 445 (1979) ("Recognition in the courts of this cause of action would constitute blatant interference with the responsibility for the administration of the public school system lodged by Constitution and statute in school administrative agencies."); *Swidryk v. Saint Michael's Med. Ctr.*, 201 N.J. Super. 601, 607 (N.J. Super. Ct. Law. Div. 1985) ("The Legislature has vested [various boards] with the authority to insure that a proper medical education ... . It would be against public policy for the court to usurp these functions[.]"); *Hunter v. Bd. of Educ. of Montgomery Cnty.*, 292 Md. 481, 488 (1982) ("Such matters have been properly entrusted by the Generally [sic] Assembly to the State Department of Education and the local school boards who are invested with authority over them."); *Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 401 (Pa. Super. Ct. 1992).

These principles warrant dismissal here.  The Complaint itself acknowledges the fundamentally non-judicial nature of the questions it raises.  For example, Plaintiffs allege that many states have adopted the type of reading programs Plaintiffs prefer through the political processes.  *See* FAC ¶ 77 (noting that states have "passed laws or promulgated regulations" requiring the use of Plaintiffs' preferred educational methods).  But Massachusetts has not done so.[11]  This Court should decline Plaintiffs' request that it rush in to set policy in an area the legislature has left to local school districts.

At bottom, Plaintiffs ask this Court to supplant individual schools' choices about how to teach reading.  This is improper.  Even if Plaintiffs' allegations regarding the merits of their preferred pedagogy were true, the remedy they seek is not one a court can give.  Plaintiffs' recourse to resolve questions about a "school's choice of books," is in the "the normal political processes for change in the town and state"—not the courts.  *Parker v. Hurley*, 514 F.3d 87, 107 (1st Cir. 2008).

### B.    There Is No Applicable Standard Of Care

Courts regularly reject the types of education-based claims raised by the Complaint because of "the lack of a satisfactory standard of care" for resolving them.  *See Ambrose*, 252 F.3d at 499.  "Theories of education are not uniform, and different but acceptable scientific methods of academic training [make] it unfeasible to formulate a standard by which to judge the conduct of those delivering the services." *Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992) (internal quotation marks omitted); *see also Love*, 2012 WL 1684572, at *3 ("Plaintiff's claims would require the Court to become entangled in a dispute[] 'over the pedagogical methods employed,'

---

[11] Bills to require increased phonics instruction have been introduced in the Massachusetts legislature but have not passed. *See, e.g.*, S. 263, 194th Gen. Ct. (Mass. 2023-24).

and would 'involve an inquiry into the nuances of educational processes and theories.'") (citations omitted).

Plaintiffs' claims here demand precisely the entanglement with differing educational theories that courts avoid. The Complaint describes decades of debate over literacy instruction in academia and in the political sphere. *See, e.g.*, FAC ¶¶ 33-36, 40, 43, 60, 70-71, 77. No legal standard exists for this Court to resolve that debate. *See Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 996 (N.D. Cal. 2020) (noting that courts do not resolve claims that would "require judgments about pedagogical methods or the quality of … classes, instructors, curriculum, textbooks, or learning aids").[12]

## C.    Plaintiffs Cannot Establish Causation

Courts have also dismissed similar education-quality based claims on the grounds that "[f]actors such as the student's attitude, motivation, temperament, past experience and home environment may all play an essential and immeasurable role in learning," such that it may be a "practical impossibility" to prove the proximate cause of the "learning deficiency of the plaintiff student." *Ross*, 957 F.2d at 414 (quoting *Donohue*, 47 N.Y.2d at 440). Indeed, in a case much like this one, concerning literacy skills, the California Court of Appeals affirmed dismissal and explained that "the achievement of literacy in the schools, or its failure, are influenced by a host of factors which affect the pupil subjectively, from outside the formal teaching process, and beyond the control of its ministers. They may be physical, neurological, emotional, cultural, environmental; they may be present but not perceived, recognized but not identified." *Peter W. v. San Francisco Unified Sch. Dist.*, 60 Cal. App. 3d 814, 824 (1976). The court concluded: "We

---

[12] Courts similarly decline to adjudicate claims addressing education-related conduct like accreditation decisions. *Ambrose*, 252 F.3d at 497 ("Such a claim invites us to substitute our judgment for that of professional educators regarding the College's suitability for accreditation.").

find … no such perceptible 'connection between the defendant's conduct and the injury suffered,' as alleged, which would establish a causal link between them within the same meaning." *Id.* at 825.

Plaintiffs violate these principles by alleging that certain educational material ***caused*** specific learning difficulties. *See, e.g.*, FAC ¶¶ 3-7. But their own allegations highlight the impossibility of establishing causation for these claims. For example, Plaintiffs include LLI among the Literacy Materials they target. FAC ¶¶ 25-26. But they acknowledge LLI is designed "for children who struggle with reading," FAC ¶ 39—in other words, children who use LLI *already* struggled with reading, contradicting any allegation that LLI caused those struggles.

### D.    Limited Educational Achievement Is Not A Legally Cognizable Injury

Courts also conclude that "the failure of an educational achievement cannot be characterized as an injury within the meaning of tort law." *Tort Liability of Private Schools and Institutions of Higher Learning for Educational Malpractice*, 18 A.L.R.7th Art. 7, § 2 (2017); *Hunter*, 292 Md. at 484 ("The 'injury' claimed here is plaintiff's inability to read and write. ... We find in this situation ... no reasonable 'degree of certainty that ... plaintiff suffered injury' within the meaning of the law of negligence[.]" (quoting *Peter W.*, 131 Cal. Rptr. at 861)). Similarly, this Court has made clear that a plaintiff "may not attempt to calculate damages based on an alleged subjective difference in quality between" two educational options. *See In re Bos. Univ. COVID-19 Refund Litig.*, No. 1:20-cv-10827-RGS, 2022 WL 3154670, at *4 (D. Mass. Aug. 8, 2022).[13]

Here, Plaintiffs' alleged injuries all connect to literacy achievement. FAC ¶¶ 103-107 (describing struggles with literacy skills); 119 ("As a result, Plaintiffs and the Class Members

---

[13] While this principle has been framed in terms of tort and negligence, Chapter 93A claims likewise require alleging "injury[] as that term is defined by the SJC." *See Shaulis*, 865 F.3d at 14. In particular, Plaintiffs must allege an "identifiable harm," *id.* at 10, and this identifiable harm may not be based on Plaintiffs' "subjective belief as to the value received." *Id.* at 13.

received [deficient] reading instruction …."); 132 (similar). But deficient literacy skills are not legally cognizable injuries, *see Hunter*, 292 Md. at 484, nor may a court calculate damages based on a subjective difference in quality between offerings, *see Boston Univ. COVID-19 Refund Litig.*, 2022 WL 3154670, at *4; *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10 (1st Cir. 2017).

### E.    Plaintiffs Improperly Ask This Court To Police The Marketplace of Ideas

Among the many reasons courts avoid cases that require them to wade into questions of education policy is the risk that doing so will run afoul of the First Amendment and stifle academic freedom by endorsing certain views over others. Plaintiffs ask the Court to do precisely that. At bottom, Plaintiffs would like the court to (1) penalize Defendants for writing about and publishing ideas Plaintiffs disagree with and (2) order Defendants to furnish new curricula that Plaintiffs do agree with. FAC p. 35 (Prayer For Relief). This is well out of bounds. The First Amendment "creates an open marketplace where ideas … may compete without government interference." *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 208 (2008). It "does not call on the federal courts to manage the market." *Id.*; *see also infra* pp. 31-33 (citing cases in which courts refuse to extend products liability principles to ideas). Put simply, courts do not tell teachers what and how to teach.

## II.    PLAINTIFFS FAIL TO MEET BASIC PLEADING STANDARDS, LET ALONE THE HEIGHTENED STANDARD OF RULE 9(b)

Where a claim's "core allegations effectively charge fraud," the special pleading standard of Federal Rule of Civil Procedure 9(b) applies. *Mulder*, 865 F.3d at 21-22. This includes Chapter

93A claims and claims involving deceptive advertising or negligent misrepresentations.[14] Because Plaintiffs' claims effectively charge fraud, they must meet the strictures of Rule 9(b). *See* FAC ¶¶ 1, 6, 56, 57, 131.

To meet the Rule 9(b) pleading standard, Plaintiffs must allege with particularity "the facts as to whom, about what, where, and when the allegedly false or fraudulent representation took place." *Niazi v. McKinsey & Co.*, No. 23-11397-RGS, 2023 WL 4627981, *2 (D. Mass. July 19, 2023). Plaintiffs failed to plead those particularities here. To support their allegations that Defendants falsely claimed the Literacy Materials were "science-backed," "research-backed," "research-based," "data-based," and based on "'gold-standard' research" (FAC ¶¶ 4, 48-49, 55, 57), Plaintiffs offer snippets of statements from the websites for Heinemann, (*id.* ¶¶ 50, 53), UoS (*id.* ¶ 51), and Fountas & Pinnell (*id.* ¶ 52).[15]

However, far from meeting the Rule 9(b) threshold, Plaintiffs' own allegations and the very website excerpts they provide show that the challenged statements *were in fact supported by research*. For example, the Complaint acknowledges the Heinemann website "contains links to data reports and case studies concerning Units of Study" and it includes a screenshot from the site that says "Download the Research Base document for a summary of some of TCRWP's key beliefs and practices as *well as a summary of the research that informs their work.*" FAC ¶ 50 (emphasis added). The link itself contains data reports and case studies supporting UoS. The Complaint also

---

[14] *See Solano v. Bos. Sci. Corp.*, No. 1:23-12366-LTS, 2024 WL 1675692, at *3 (D. Mass. Apr. 5, 2024); *Martin v. Mead Johnson Nutrition Co.*, No. 09-11609-NMG, 2010 WL 3928707, at *3 (D. Mass. Sept. 30, 2010) ("A claim under Chapter 93A that involves fraud is subject to the heightened pleading requirement."); *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) ("[M]isrepresentation is considered a species of fraud.").

[15] The Complaint includes information taken from fountasandpinnell.com (the "Fountas & Pinnell Website"), that Plaintiffs' broadly attribute to Defendants Fountas and Pinnell. Their unsubstantiated inference is presumably based upon the domain name.

includes a screenshot from Heinemann's website prompting a viewer to "Visit the Fountas & Pinnell Literacy Research and Standards Page," with a hyperlink for accessing the underlying research. The same is true of the Fountas & Pinnell website, which the Complaint acknowledges "includes a page devoted to research" with tabs linking to research underlying "each of the F&P Literacy products." *Id.* ¶ 52.[16]

Reading the Complaint in the light most charitable to Plaintiffs, arguably they are not alleging that the statements about the Literacy Materials being "research-backed" were misrepresentations because there was *no research at all* to support them—Plaintiffs acknowledge and cite to numerous studies. Instead, Plaintiffs must be intending to allege that the academic work relied upon to support the challenged statements was so flawed that it does not count as "research." *See, e.g.*, FAC ¶ 55 ("And given the significant limitations and marginal results of these studies, Defendants' reliance on these studies as support for the claim that the Literacy Products are science-backed is misleading.").

This claim falls flat. They offer no facts—let alone particularized ones—to support their allegation that the academic work was of such dubious validity that it would be fraudulent to describe the Literacy Materials as "research backed." *See Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997) (Rule 9(b) requires a complaint to "'specify the statements that the plaintiff contends were fraudulent'" and "'explain why the statements were fraudulent.'"); *Tapogna v. Egan*, 141 F.R.D. 370, 377 (D. Mass. 1992) ("The plaintiffs have quoted and paraphrased from many statements, "[b]ut such a catalogue, no matter how exhaustive, coupled with the bare allegation that the representations were false and misleading, quite simply is not enough."); *Padnes*

---

[16] The Complaint alleges that Defendants represented that the Literacy Materials were "science-based" but provides no factual support for this hyper-specific allegation.

*v. Scios Nova Inc.*, No. C 95-1693 MHP, 1996 WL 539711, at *5 (N.D. Cal. Sept. 18, 1996) (noting in dismissing claims that "the fact that plaintiffs disagree with the [] researchers and with defendants about the import of the [] data does not make defendants' summaries of the study false or misleading"); *Fernandes v. Centessa Pharms. PLC*, No. 1:22-cv-8805-GHW, 2024 WL 3638254, at *18-20 (S.D.N.Y. Aug. 2, 2024) (dismissing for lack of an actionable misstatement about studies, under ordinary plausibility pleading, where plaintiff "merely disagree[s] with the underlying studies' designs").

Indeed, Plaintiffs offer only three conclusory allegations to substantiate their allegation that the research underlying the Literacy Materials was inadequate:

> Indeed, the few studies that Defendants have cited in support of their approaches are unreliable, methodologically flawed, and lack sound theoretical or empirical foundations. FAC ¶ 5.

> Upon information and belief, however, Defendants conducted no rigorous research and collected no data (as opposed to anecdotes from adherents) to support their methodologies until the early 2020s. FAC ¶ 54.

> Defendants have pointed to the American Institutes for Research study—and a small number of other, mostly recent studies (some funded by Heinemann)—as proof of the efficacy of their methods, even though all of these studies suffer from glaring methodological, theoretical, and other flaws that wholly undermine that conclusion. The studies on which Defendants rely are not sufficiently reliable to permit one to conclude with reasonable certainty that their Literacy Products are effective. FAC ¶ 55

As an initial matter, "[p]leadings based on information and belief, without specifying the source of the information and the reasons for the belief, do not pass muster under the First Circuit's interpretation of Rule 9(b)." *Fitzer v. Sec. Dynamics Techs., Inc.*, 119 F. Supp. 2d 12, 18 (D. Mass. 2000). Even if not made on information and belief, Plaintiffs' threadbare allegations do not even identify the "few studies" they disagree with—let alone describe the studies' supposedly flawed methodologies.

Far more particularized claims than these have been dismissed for failing to state a claim. *See, e.g.*, *Tapogna*, 141 F.R.D. at 377 (dismissing even though the plaintiffs "quoted and paraphrased from a compilation of SEC filings, newspaper articles, analyst reports and press releases," due to conclusory allegations of falsity); *Niazi*, 2023 WL 4627981 at *3 (plaintiff who "points to instances of allegedly altered presentations containing incorrect and manipulated data" did not "specifically aver any fraudulent misrepresentations made to any identified clients or investors" and failed to satisfy Rule 9(b)); *Fernandes*, 2024 WL 3638254, at *18-20. Plaintiffs have far from cleared the high bar of Rule 9(b).[17]

## III.    THE CHAPTER 93A CLAIM FAILS

Even if this Court determined that Plaintiffs claims were justiciable and satisfied Rule 9(b), their Chapter 93A claim still fails. A plaintiff seeking relief under Chapter 93A "must prove that the defendant engaged in 'unfair or deceptive acts or practices in the conduct of any trade or commerce'" and that those acts caused a distinct injury. *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (quoting Mass. Gen. L. ch. 93A § 2); *see also Shaulis*, 865 F.3d at 6. Plaintiffs' unfair and deceptive conduct claims boil down to the following allegations: Defendants marketed and sold defective Literacy Materials, did not provide adequate warnings about those materials, and made false or misleading statements about them. *See* FAC ¶ 118. According to Plaintiffs, this

---

[17] The Complaint also identifies a number of other statements from various Defendants and other individuals unrelated to marketing, *see* FAC ¶¶ 43 (books on educational theory); 44 (university post on educational methods); 65 (discussion of an academic study); 74 (blog post on educational methods); 75 (statement and memorandum on educational methods). None of these allegations support Plaintiffs' claims as Plaintiffs do not allege that these statements marketed or represented the challenged Literacy Materials in any way (*e.g.*, by being included in sales materials), much less that they were misleading or even could be misleading, *see Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 21 (1st Cir. 2001) (in the context of a 93A misrepresentation claim "only statements of fact are actionable; statements of opinion cannot give rise to a deceit action").

conduct "induced schools throughout Massachusetts to buy their defective Literacy Products," and "[a]s a result, Plaintiffs and the Class Members received [deficient] reading instruction." *Id.* ¶ 119.

These allegations fail to state a Chapter 93A claim for three reasons: (1) Plaintiffs cannot establish the requisite commercial relationship with Defendants; (2) Defendants' conduct was not unfair; and (3) Defendants' conduct was not deceptive.

### A.    Plaintiffs Cannot Establish The Requisite Commercial Relationship Because They Did Not Select Or Purchase The Literacy Materials

Although contractual privity is not required to sustain a Chapter 93A claim, at least some business, commercial, or transactional relationship between the parties is necessary.  *See* Mass. Gen. L. ch. 93A § 2(a) (governing acts or practices "in the conduct of any trade or commerce"); *Steinmetz v. Coyle & Caron, Inc.*, 862 F.3d 128, 141 (1st Cir. 2017); *Courtemanche v. Motorola Sols., Inc.*, 4:24-CV-40030-MRG, 2024 WL 5111509, *2 (D. Mass. Dec. 13, 2024) (a "commercial link" must exist between a plaintiff consumer and a defendant engaged in commerce).  To state a claim, a plaintiff must allege facts sufficient to establish a *commercial* relationship between the plaintiff and the defendant.  *See Rafferty v. Merck & Co.*, 479 Mass. 141, 162 (2018) (rejecting Chapter 93A claim where "[a]lthough [Chapter] 93A does not require privity, it is limited only to actions taken in the course of trade or commerce" (cleaned up)).  Plaintiffs have not and cannot establish that relationship here.

Plaintiffs complain that the public schools they attended did not properly teach them how to read.  True or not, the provision of public education does not amount to "trade or commerce" within the meaning of Chapter 93A.  *See Squeri v. Mount Ida Coll.*, 954 F.3d 56, 73 (1st Cir. 2020) (Chapter 93A claims brought by students complaining about their education dismissed under Rule 12(b)(6) because, among other things, the school was not engaged in "trade or commerce" when providing education).  *Moran v. Stonehill Coll., Inc.*, No. 2077CV00431, 2021 WL 965754 at * 7

(Mass. Sup. Ct. Feb. 16, 2021) (provision of non-profit education not "trade or commerce"); *see also Planned Parenthood Fed'n of Am. v. Problem Pregnancy of Worcester, Inc.*, 398 Mass. 480, 493-494 (1986) (non-profit advocacy does not constitute "trade or commerce").

Even if certain Defendants had a direct or indirect relationship with schools that may have purchased the Literacy Materials, Plaintiffs fail to allege *any* facts establishing any commercial, business, or transactional relationship *between* Plaintiffs and Defendants. Plaintiffs' only alleged connection to Defendants is through the public schools they attended. FAC ¶¶ 25-26, 103-104, 106-107. The fact that those schools are not actually engaged in "trade or commerce" with Plaintiffs is dispositive of any claim against Defendants. If Plaintiffs are not in a commercial relationship with the schools, and their only link to Defendants is through those schools, then they cannot be in a commercial relationship with the Defendants. The mere fact that Defendants authored or published the Literacy Materials, which were *selected by the schools*[18] when providing public education to Plaintiffs, is not sufficient to establish the necessary business or transactional relationship between Plaintiffs and Defendants required for a Chapter 93A claim.

### B.    Defendants' Conduct Was Not Unfair

Under Chapter 93A, an act or practice is unfair if it (1) falls "within the penumbra of any common-law, statutory, or other established concept of unfairness"; (2) is "immoral, unethical, oppressive, or unscrupulous"; and (3) "causes substantial injury to consumers." *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 79 (1st Cir. 2020) (cleaned up). The "conduct must generally be of an egregious, non-negligent nature." *Tomasella*, 364 F. Supp. 3d at 32 (citations omitted). Although the question of unfairness is generally a factual inquiry, "'the boundaries of what may

---

[18] That local school officials approved use of the Literacy Materials, which they did pursuant to their statutory authority, *see* Mass. Gen. L. ch. 71 § 48, also makes liability under Chapter 93A unavailable. Mass. Gen. L. ch. 93A § 3.

qualify for consideration as a c. 93A violation is a question of law.'" *Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547, 563 (2008).

Plaintiffs fail to allege that Defendants engaged in unfair conduct and have not pointed to any common-law, statutory, or other established concept of unfairness into which the conduct at issue falls. For example, Plaintiffs do not allege that there is any common-law, statutory, or other established standard that defines proper literacy instruction in Massachusetts. *See supra* pp. 12-13 (no applicable standard of care in the education context).

Plaintiffs also cannot establish that Defendants engaged in the type of "immoral" or "unethical" conduct required to state a claim under Chapter 93A. Plaintiffs do not allege that Defendants believed the Literacy Materials were defective but nonetheless maliciously sold them to schools in order to harm students. To the contrary, the Complaint concedes that the Literacy Materials do include phonics, *see, e.g.*, FAC ¶¶ 38, 45, 68 (e.g. by offering phonics-based instruction), and that they were revised at points to include even more, *id.* ¶ 80 ("In 2021, Heinemann released a new edition of *Units of Study* that it described as 'build[ing] upon the foundational work of the original materials with an increased focus on systematic phonics instruction, inclusive content, and ease of use.'") (alteration in original).

At most, Plaintiffs allege that Defendants' focus on phonics is not sufficiently structured, that the amount of phonics is not enough, or that revisions to the materials came too late. FAC ¶¶ 38, 45, 68, 79, 80. This falls far short of the sort of "unethical" or "immoral" conduct that would violate Chapter 93A's unfairness prong. *See, e.g.*, *Ellis v. Safety Ins. Co.*, 41 Mass. App. Ct. 630, 640 (1996) (racial harassment in the course of doing business); *Wang Labs., Inc. v. Bus. Incentives, Inc.*, 398 Mass. 854, 857 (1986) (deliberate breach of a contract for a party's gain);

*Diamond Crystal Brands, Inc. v. Backleaf, LLC*, 60 Mass. App. Ct. 502, 507 (2004) (coercive conduct designed to extort a benefit or advantage from a business opponent).

Plaintiffs' Chapter 93A claim also fails because they cannot establish causation. *Tomasella*, 962 F.3d at 79. Plaintiffs' causal allegations, to the extent there are any, are devoid of specifics and entirely conclusory. For example, the Complaint alleges generally that Plaintiffs "were exposed" to or "w[ere] taught" using the Literacy Materials and "as a result" suffered "from literacy deficiencies" and "a variety of developmental, emotional, and financial injuries." FAC ¶¶ 25-26, 103-104, 106, 113; *see also id.* ¶ 119 (Defendants "induced schools" in Massachusetts to choose the Literacy Materials rather than Plaintiffs' preferred phonics-dominant literacy curricula, and "[a]s a result, Plaintiffs and Class Members received [deficient] reading instruction."). Even accepting these allegations as true, they are insufficient to plead causation.

***First***, as Plaintiffs' sources confirm, there are many facets to teaching literacy, many reasons why a student may struggle with learning to read, and school districts often employ many different curricula, materials, and strategies to teach reading. *See supra* pp. 13-14 (collecting cases regarding the impossibility of attributing lack of achievement to any one causal factor).

***Second***, Plaintiffs cast phonics as a one-size-fits-all solution, yet their own cited sources acknowledge that using their preferred approach would not necessarily be better for all learners. Ex. C at 7 at 6-7 ("Teachers may be able to use a particular program in the classroom but may find that it suits some students better than others."); *see also Hershenow v. Enter. Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790, 800-801 (2006) (rejecting a Chapter 93A claim where plaintiffs failed to establish "any causal connection between the deception and any loss"). If using a non-phonics dominant approach to teach reading is deemed to "cause" injury to children whose individual learning style would benefit more from a phonics-dominant one, then the reverse would also be

true and educators who follow a phonics-dominant approach would be equally liable for "causing" injury to students whose learning style is not suited to it.

**Third**, the Literacy Materials are purchased by school districts, *e.g.* FAC ¶¶ 8, 119, 132, which generally integrate them with other learning resources to create a full curriculum, *see* Ex. A at 16-17. The Complaint contains no allegations about the extent to which the Literacy Materials *were actually used* to teach the Plaintiffs, or what other literacy materials were incorporated into the subject curricula, and thus contains no allegations that could support the inference that the Literacy Materials were a but-for cause of the alleged harm. Where, as here, schools combine materials to create a full curriculum, to the extent the Court views ideas as "products" (which it should not), "it would be unjust and inefficient to impose liability" on the creator of one of those materials if, ultimately, it is the combined set of materials that may not work for a particular student. *See Nemirovsky v. Daikin N. Am. LLC*, 488 Mass. 712, 718 (2021) ("a component manufacturer may be liable if the component itself was defective and the component's defect caused the harm," but the maker "of a nondefective component is not liable for harms caused by the integrated product").

**Finally**, the harms alleged are inseparable from the individual Plaintiffs' needs, their instruction, and the environment in which Plaintiffs were taught. Thus, Plaintiffs' allegations with respect to Defendants' supposed advertising and promotional conduct are far too attenuated, and not explicitly tied to, their own individual struggles with learning to read. *See Walsh*, 821 F.3d at 164 (proximate cause requirement not satisfied "absent any connection between [non-parties' allegedly wrongful] actions and [defendant']s promotional material" purportedly encouraging those actions).

24

### C.    Defendants' Conduct Was Not Deceptive

Plaintiffs also fail to allege that Defendants committed deceptive acts under Chapter 93A. To do so Plaintiffs must allege (1) "a deceptive act or practice on the part of" Defendants; (2) "an injury or loss suffered"; and (3) "a causal connection between the [Defendant]'s deceptive act or practice and [Plaintiffs'] injury." *Tomasella*, 962 F.3d at 71 (cleaned up).  An act or practice is deceptive if "it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." *Dumont v. Reily Foods Co.*, 934 F.3d 35, 40 (1st Cir. 2019) (citation omitted); *Crommelin v. Takeda Pharms. U.S.A., Inc.*, 747 F. Supp. 3d 304, 307 (D. Mass. 2024).

As explained above, Plaintiffs allege that Defendants made false or misleading statements about the Literacy Materials that purportedly resulted in "Plaintiffs and the Class Members receiv[ing deficient] reading instruction."  FAC ¶¶ 118-119.  Specifically, they allege "False Representations," including that Defendants claimed that their Literacy Materials were "research-backed," "research-based," "data-based," "gold standard," and fit for the purpose of providing early literacy education, FAC ¶ 4, and identify statements where Defendants' allegedly used the term "research," "data," or the like.  *Id.* ¶¶ 50-53.  These allegations fail to state a claim for deceptive conduct for several reasons.

***First***, Plaintiffs' deception allegations do not survive Rule 9(b)'s particularity requirements.  *See supra* pp. 15-19.

***Second***, none of the alleged statements are actionable because they are not plausibly alleged to be false or misleading.  Plaintiffs take issue with assertions that the Literacy Materials were based on research and data.  *See* FAC ¶¶ 4, 50-53.  But far from plausibly alleging that these representations are false, Plaintiffs affirmatively concede that Defendants *did* rely on research. *See* FAC ¶ 55 (referring to "the studies on which Defendants rely").  Indeed, the Complaint includes

25

links where Heinemann posted "data reports and case studies concerning Units of Study."  FAC ¶ 50; *see also id.* ¶ 52 (providing a link to a site with research and studies); ¶ 55 (describing studies that Defendants have allegedly relied on).

The Complaint's acknowledgement and description of studies and research that underpin the challenged statements' claim that the Literacy Materials are "research-backed" is proof enough that those statements are not false and hence not actionable.  *See Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) (reversing false advertising judgment against seller who allegedly stated that he "thoroughly researched" the product where the plaintiff "offered nothing to contradict [the defendant's] assertion that he conducted independent research"); *In re GNC Corp.*, 789 F.3d 505, 515 (4th Cir. 2015) (dismissing complaint that alleged that the "overwhelming weight of high quality, credible and reliable studies" showed that defendant's statements were false, but did not allege that *no* research supported defendants); *cf. Fernandes*, 2024 WL 3638254, at *18-20 (in securities case, finding an alleged omission non-actionable where plaintiff "merely disagree[d] with the underlying studies' designs").

Moreover, many of the challenged statements are non-actionable statements of opinion regarding the "superlative quality" of the Literacy Materials.  *Stigman v. Nickerson Enters., Inc.*, 2000 Mass. App. Div. 223, *2 (Dist. Ct. 2000) ("A representation is ordinarily considered one of opinion instead of fact if it merely expresses the maker's 'judgment as to quality, value, authenticity or other matters of judgment.'"); *see also Rossman v. Herb Chambers Commonwealth Ave., Inc.*, 80 Mass. App. Ct. 1116, at *3 n.3 (2011).  These types of statements cannot support a Chapter 93A claim.  *Stigman*, 2000 Mass. App. Div. 223, at *2.  For example, Plaintiffs take issue with use of phrases like "rigorous and responsive," FAC ¶ 50, or "30 years of intensive research, testing, and experience," *id.* ¶ 51.  Yet these are classic statements of opinion that courts routinely

26

hold are non-actionable.  *See, e.g.*, *Lipton,* 71 F.3d at 474 (advertising claim regarding "thorough research" was non-actionable "puff[ery]" and a "[s]ubjective claim … which cannot be proven either true or false."); *Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 310-11 (2d Cir.1972) (statement that a product resulted from "countless hours of research" is non-actionable).  To the extent Plaintiffs allege that any statements were misleading due to implying something about the quality of research, such implications would be non-actionable for the same reasons.[19]

**Third**, Plaintiffs have not alleged, nor could they, that they were "entice[d] … to purchase" the Literacy Materials, and would not have done so, or would have acted differently, had they known about any purported defect.  *See Dumont*, 934 F.3d at 40; *Crommelin*, 747 F. Supp. 3d at 307.  They did not buy the Literacy Materials and had no role in selecting the reading curricula that their schools purchased or chose to use.

**Finally**, for the reasons explained above, *supra* pp. 13-15, 25-27, Plaintiffs have failed to plead that any alleged deceptive act caused their alleged injury.  *See Tomasella*, 962 F.3d at 71. Indeed, Plaintiffs have not alleged that any of them ever even saw or heard any of the allegedly deceptive statements—let alone relied or acted on them to their detriment.

## IV.    PLAINTIFFS' NEGLIGENCE CLAIM FAILS

Count II of Plaintiffs' Complaint ambiguously asserts either a negligence claim or a negligent misrepresentation claim.  FAC ¶ 132 (alleging Defendants engaged in both "negligence and negligent misrepresentations").[20]  However framed, the allegations fail to state a claim.

---

[19] Some of the alleged misrepresentations are unrelated to research underlying the Literacy Materials.  For example, Plaintiffs quote Lucy Calkins' use of the *metaphor* of a "researcher's laboratory" to describe the operation of a reading workshop.  FAC ¶ 51.  Such a statement could not plausibly indicate anything about research underlying the Literacy Materials.

[20] Where the challenged conduct relates to a statement, courts analyze the claim as one for negligent misrepresentation. *Craig v. Everett M. Brooks Co.*, 351 Mass. 497, 499 (1967).

### A.    There Cannot Be Negligent Misrepresentation Where There Is No Reliance

The negligent misrepresentation claim fails because Plaintiffs do not allege that they are among the limited group of persons who are eligible to recover for the alleged misrepresentations. Massachusetts law limits liability for negligent misrepresentation to those who "reasonabl[y]" and "justifiabl[y]" relied on the representation at issue.  *Cumis Ins. Soc'y Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 471-474 (2009); *Arabian Support & Servs. Co. v. Textron Sys. Corp.*, 368 F. Supp. 3d 211, 227 (D. Mass. 2019).   But Plaintiffs acknowledge that the allegedly negligent marketing was directed to "induce[] schools and school districts" to purchase the Literacy Materials.  FAC ¶ 132.  Because Plaintiffs do not allege that they relied on the misrepresentations at all, much less reasonably or justifiably, they fail to state a claim for negligent misrepresentation.[21]

In addition, Plaintiffs have not plausibly alleged that Defendants' representations were false or misleading, *supra* pp. 25-27, or that those representations caused a cognizable injury, *supra* pp. 13-15; *Gossels v. Fleet Nat. Bank*, 453 Mass. 366, 377 (2009) (listing other elements of negligent misrepresentation, including falsity, causation, and injury).

### B.    Any Negligence Claim Is Barred By The Economic Loss Doctrine And Otherwise Fails

Even if construed as plain negligence, Plaintiffs' claims also fail.  ***First***, a standalone negligence claim is barred by the economic loss doctrine which "bars recovery unless the plaintiffs can establish that the injuries they suffered due to the defendants' negligence involved physical harm or property damage, and not solely economic loss."  *Cumis Ins. Soc'y, Inc.*, 455 Mass. at 469.  Plaintiffs do not allege physical harm or property damage.  While Plaintiffs do allege certain

---

[21] Plaintiffs similarly do not plausibly allege that they are among that "limited group of persons for whose benefit" Defendants supplied the information.  *Nycal Corp. v. KPMG Peat Marwick LLP*, 426 Mass. 491, 496 (1998).

non-economic injuries, *e.g.*, FAC ¶¶ 25-26 (referring to "developmental" and "emotional" injuries), these allegations cannot overcome the economic loss doctrine. Lack of educational achievement is not a cognizable injury under tort law, *see supra* pp. 14-15, and a plaintiff cannot recover for emotional or psychological injuries in tort unless there is a physical manifestation, *Payton v. Abbott Labs*, 386 Mass. 540, 547 (1982) ("Where a defendant was only negligent, his fault is not so great as to require him to compensate the plaintiff for a purely mental disturbance."). The Complaint includes no allegations related to physical manifestations of injury. Finally, emotional injury is "intractably individual in character," and so cannot satisfy the typicality requirement for class treatment. *Commonwealth of Puerto Rico v. M/V Emily S.*, 158 F.R.D. 9, 14 (D.P.R. 1994). Because Plaintiffs seek to pursue this claim on a classwide basis, the only relief available to the class would be economic damages, which cannot be recovered on an ordinary negligence claim under the economic loss doctrine.

**Second**, Plaintiffs have not plausibly pleaded the necessary substantive elements—breach and causation—of a negligence claim. *See Doucette v. Jacobs*, 106 F.4th 156, 175 (1st Cir. 2024) (breach and causation are essential elements of a negligence claim). Plaintiffs have not plausibly alleged a breach of any duty because none of Defendants' alleged representations were false or misleading, *supra* pp. 25-27, and there is no applicable standard of care by which to judge a breach, *supra* pp. 12-13. Plaintiffs similarly have not plausibly alleged that Defendants caused a cognizable injury, *supra* pp. 13-15.

**Third**, Plaintiffs attempt to raise a new argument in their amended Complaint that they are beneficiaries of the contract between Defendants and the schools, and that Defendants breached a duty of good faith and fair dealing in connection with that contract. *See* FAC ¶¶ 57, 127. This too fails. Breach of the "covenant of good faith and fair dealing … is a contract claim and not a tort."

*Bertrand v. Quincy Mkt. Cold Storage & Warehouse Co.*, 728 F.2d 568, 571 (1st Cir. 1984); *Islam v. Option One Mortg. Corp.*, 432 F. Supp. 2d 181, 195 (D. Mass. 2006) ("[T]he breach of such a duty [of good faith and fair dealing] gives rise to a contract action, not one for negligence."). Because the Complaint does not raise any contract cause of action, it cannot invoke the implied covenant of good faith and fair dealing.

## V.    PLAINTIFFS' FALSE ADVERTISING CLAIM FAILS

In their amended Complaint, Plaintiffs add a false advertising claim that is derivative of their Chapter 93A claims and similarly fails to pass muster.

*First*, as with the Chapter 93A and negligence claims, Plaintiffs' false advertising claim fails because adjudicating it would improperly require the court to resolve a dispute over educational theory. *Supra* pp. 8-15. Namely, the court would be required to adjudicate whether Plaintiffs have a cognizable injury, *see Bezdek v. Vibram USA Inc.*, No. 12-10513-DPW, 2013 WL 639145, at *4 n.5 (D. Mass. Feb. 20, 2013) (applying similar injury requirement to 93A), and whether that injury was caused by Defendants' conduct, *see Katz v. Pershing, LLC*, 672 F.3d 64, 77 (1st Cir. 2012) (discussing causation for a false advertising-based claim). Adjudicating either of these elements would call for the type of educational-quality inquiry that courts do not conduct. *See supra* pp. 13-15.[22]

*Second*, Plaintiffs have not plausibly alleged any deceptive or misleading assertion, for the same reasons that they have failed under the Chapter 93A claim, *supra* pp. 25-27. *See DiCroce v. McNeil Nutritionals, LLC*, 640 F. Supp. 3d 182, 188 (D. Mass. 2022) (applying the

---

[22] Because Plaintiffs have not plausibly pleaded causation or injury, they are also not "aggrieved part[ies]" under the statute. *Ortiz v. Energy*, No. 24-1455-BLS1, 2025 WL 752568, at *5 (Mass. Super. Feb. 19, 2025) ("[A]n aggrieved party under G.L. c. 266, § 91, is a person who has suffered injury because of a false advertisement.").

same deceptiveness analysis to false advertising and 93A claims). Plaintiffs have likewise failed

to alleged any false "*advertisement*." Mass. Gen. L. ch. 266, § 91. Plaintiffs point only to

statements on websites related to the Literacy Materials.

## VI.    PLAINTIFFS SEEK TO IMPROPERLY EXTEND PRODUCTS LIABILITY LAW TO THE MARKETPLACE OF IDEAS

Massachusetts does not extend product liability law to ideas, methods, and instructions

contained in books. *See Garcia v. Kusan, Inc.*, 39 Mass. App. Ct. 322, 327-329 (1995) (no

warranty or negligence liability for instructions). Yet that is precisely what Plaintiffs hope to do

here. Although Plaintiffs label their claims under Chapter 93A and negligence, the actual contents

of the Complaint reveal that Plaintiffs are attempting to improperly advance products liability

claims under different names. The first paragraph of the Complaint describes this as a lawsuit

based on "marketing and sale of products." FAC ¶ 1. The Complaint is littered with references to

defective "products." *See id.* ¶¶ 3 ("Defendants failed to warn ... [about defects] in their alleged

literacy training products."); 6 (referring to Literacy Materials as "defective goods and services");

72 ("Defendants did not disclose the flaws in their products"); 88 (accusing Defendants of selling

"defective products to schools and teachers"). Plaintiffs' Chapter 93A claim boils down to their

allegation that Defendants engaged in unfair and deceptive practices arising from the "sale of

defective and deficient reading curricula, reading diagnostic tests, and teacher-training programs,"

"[f]ailing to provide adequate or complete disclosures and warnings regarding the deficient reading

curricula and other training and reading products," and "[d]isseminating false, misleading,

incomplete, and/or inadequate statements, instructions, training materials, and marketing materials

regarding their reading and training products." *Id.* ¶ 118. Plaintiffs' negligence claim is similarly

based on Defendants allegedly "breach[ing] their duties to exercise reasonable care or competence

by falsely and deceptively marketing their products." *Id.* ¶ 130.

Plaintiffs' reluctance to bring their claims under a products liability theory is understandable, as courts have correctly held that products liability does not extend to books and ideas, which are protected by the First Amendment. *See* Restatement (Second) of Torts, *Products Liability*, § 19, cmt. d. ("Most courts, expressing concern that imposing strict liability for the dissemination of false and defective information would significantly impinge on free speech have, appropriately, refused to impose strict products liability in these cases"); *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1036 (9th Cir. 1991) ("[W]e decline to expand products liability law to embrace the ideas and expressions in a book. We know of no court that has chosen the path to which the plaintiffs point."); *Walter v. Bauer*, 439 N.Y.S.2d 821, 822-823 (N.Y. App. Div. 1981) (rejecting argument that a science book describing an experiment that led to a classroom injury could be considered a "defective product").

Massachusetts courts have also expressly rejected the application of products liability law to speech, explaining that products liability is "geared to the tangible world and is unsuited to words and ideas." *Garcia*, 39 Mass. App. Ct. at 327. For example, in *Garcia* a father whose son was injured by a plastic hockey stick and puck asserted that the defendant made misrepresentations about the game's safety in the game's instructional materials to "induce elementary schools" to buy the game. *Id*. at 322-324. The Appeals Court rejected this effort to extend product liability concepts to the defendant's instructions for the game, noting that *it was the hockey stick and puck*—the tangible items—from which products liability could arise. *See id.* at 327-329; *see also Gorran v. Atkins Nutritionals, Inc*., 464 F. Supp. 2d 315, 319, 327 (S.D.N.Y. 2006) (rejecting plaintiffs' negligent misrepresentation and deceptive conduct claims concerning a diet book reasoning that products liability law did not to extend ideas expressed in books even if those ideas are "controversial and [] subject [to] criticism").

Here, Defendants did not manufacture and sell a defective hockey stick or puck, or any other tangible product.  Rather, the individual author defendants wrote about, and the publisher defendants published, their ideas on how to teach reading.  Plaintiffs may disagree with those ideas, but that is not a permissible basis for imposing civil liability under Massachusetts law.

## VII.    PLAINTIFFS CANNOT ESTABLISH A CLASS

To the extent Plaintiffs' claims are not dismissed in their entirety, Defendants move to dismiss, or alternatively to strike, Plaintiffs' class allegations because the proposed class cannot be maintained as a matter of law.[23]  For starters, named plaintiffs must be members of the proposed class.  7A Wright & Miller, *Federal Practice and Procedure* § 1761 (4th ed. June 2024).  A court must then "determine whether the scope of the class that plaintiffs seek to certify is appropriate, i.e., whether it is administratively feasible," an element referred to as "[a]scertainability."  *Kent v. SunAmerica Life Ins. Co.*, 190 F.R.D. 271, 278 (D. Mass. 2000).  In addition, Fed. R. Civ. P. 23(b)(3) demands that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See also* FAC ¶ 110 (alleging that predominance is satisfied).  Plaintiffs seek to represent a class of:

> All children and parents and/or legal guardians of children (1) currently or previously enrolled in kindergarten, first, second, or third grade in a Massachusetts elementary school that purchased, licensed, reproduced, or otherwise employed [the Literacy Materials], (2) who failed to meet state benchmarks on the Massachusetts Comprehensive Assessment System English Language Arts exam, (3) who suffered related developmental, emotional, and/or financial injuries as a result, and (4) who reached (or will reach) the age of majority on or after December 4, 2020.

---

[23] If "it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations."  *Rovinelli*, 2021 WL 752822, at *6 (quoting *Manning*, 725 F.3d at 59).

FAC ¶ 109.  Their class allegations should be stricken for three reasons: (1) the Plaintiffs do not allege that they are members of the class they propose; (2) the class is not ascertainable; and (3) individual questions predominate with respect to both causation and an assessment of whether Defendants' conduct can be sufficiently linked to the class members' alleged injuries.

### A.    The Named Plaintiffs Are Not Members Of The Proposed Class

It is a basic requirement of class certification that the named representative parties must be members of the class they purport to represent.  7A Wright & Miller, *Federal Practice and Procedure* § 1761 ("The Representatives Must Be Members of the Class.").  Plaintiffs seek a class that includes individuals who, among other things, "failed to meet state benchmarks on the [MCAS] English Language Arts exam."  FAC ¶ 109.  Yet the Complaint includes no allegation that the named Plaintiffs failed to meet state benchmarks on that exam.  *See, e.g.*, *id.* ¶¶ 103-106.  Since Plaintiffs do not allege that they are members of the class, they cannot represent it.

### B.    The Proposed Class Is Not Readily Ascertainable

Even if Plaintiffs were members of the proposed class, the class is not ascertainable.  In amending the complaint to try to evade Defendant's original argument that the putative class included uninjured members, *see* Dkt. 34 at 34-35 & n.21, Plaintiffs revised their putative class definition to require that any member must have "suffered related developmental, emotional, and/or financial injuries as a result" of Defendants' conduct.  FAC ¶ 109.  But this edit merely shifts the problem from predominance to ascertainability and introduces new hurdles Plaintiffs cannot clear.

*First*, Plaintiffs' proposed class definition would create an improper "fail-safe" class; that is, a class "defined so that whether a person qualifies as a member depends on whether the person has a valid claim on the merits."  *Bais Yaakov of Spring Valley v. ACT, INC.*, 328 F.R.D. 6, 13 (D. Mass. 2018), *aff'd as to class certification*, 12 F.4th 81 (1st Cir. 2021); *MSP Recovery Claims,*

*Series LLC & Series 17-04-631 v. Plymouth Rock Assurance Corp., Inc.*, 404 F. Supp. 3d 470, 485 (D. Mass. 2019) ("In approving a proposed class definition, a court must ensure that eligibility as a class member is not dependent upon a legal conclusion of liability." (cleaned up)).  Plaintiffs' requirement that class members must have "suffered related developmental, emotional, and/or financial injuries as a result" of Defendants' conduct, FAC ¶ 109, improperly bakes the merits into the class definition.  *See Rovinelli*, 2021 WL 752822, at *7 n.9 (warning that limiting a class to those "duped" would "lead to presentation of a fail-safe class").  "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment."  *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012); *Orduno v. Pietrzak*, 932 F.3d 710, 716-717 (8th Cir. 2019) ("A fail-safe class is also unmanageable, because the court cannot know to whom notice should be sent." (citations omitted)).

**Second**, it would not be "administratively feasible" to determine whether a particular individual is a member of the class, as Plaintiffs' proposed definition provides no objective standard to determine class membership.  *Crosby v. Soc. Sec. Admin. of U.S.*, 796 F.2d 576, 580 (1st Cir. 1986); *Kent*, 190 F.R.D. at 278.  As described below, many determinations relevant to liability and relief could only "be made only on a case-by-case basis."  *Crosby*, 796 F.2d at 580; *cf. Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81, 92 (1st Cir. 2021) (declining certification because court would be required to "identify and cull out" non-injured parties).  Thus, merely identifying the class would require extensive and fact-intensive mini-trials, all before the court could "decide and declare who will receive notice, who will share in any recovery, and who will be bound by the judgment."  *See Kent*, 190 F.R.D. at 278-279 (also noting that the "problem of ascertainability" defeats predominance); *see also Schonton v. MPA Granada Highlands LLC*,

No. 16-cv-12151-DJC, 2019 WL 1455197, at *3 (D. Mass. Apr. 2, 2019) ("The only way to determine class membership under Plaintiffs' proposed definition would be to conduct individualized inquiries about each putative class member.").

### C.    Proving Causation Would Require Extensive Individualized Inquiry

Even if Plaintiffs could feasibly identify and limit their proposed class to individuals who suffered an actual injury, determining whether Defendants caused injury to each putative class member would require individualized inquiry that likewise precludes class treatment. *See In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 398 (D. Mass 2007); *see also Wortman v. Logmein, Inc.*, No. 18-11475-GAO, 2022 WL 3714620, at *1-2 (D. Mass. Aug. 29, 2022). "What matters to class certification … is not the raising of common 'questions'—even in droves— but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

As described above, resolving whether the Literacy Materials caused any given student's failure to achieve educational benchmarks would be difficult enough. *See supra* pp. 13-14; *Ross*, 957 F.2d at 414 ("Factors such as the student's attitude, motivation, temperament, past experience and home environment may all play an essential and immeasurable role in learning," and thus "it may be a "practical impossibility [to] prov[e] that alleged [failures by the teacher] proximately caused the learning deficiency of the plaintiff student."). At a classwide level, the challenge of sorting through the variability of educational outcomes, and the potential causes that contribute to them, only multiply. These inefficiencies make class treatment inappropriate. *In re Asacol*

*Antitrust Litig.*, 907 F.3d 42, 58 (1st Cir. 2018) (reversing class certification where individual inquiries predominated as to whether particular class members were injured).[24]

### D.    Plaintiffs' Claims Cannot Be Resolved On A Classwide Basis

As set forth above, Plaintiffs' amended Complaint includes nondescript allegations that Defendants' representations induced various school districts to purchase and integrate the Literacy Materials into their literacy curricula. Even if Plaintiffs' individual claims were viable—which they are not—they are unfit for class treatment because "proving reliance" on misrepresentations under common law negligence or showing a causal connection between deceptive or unfair conduct as well as a distinct injury under Chapter 93A, "requires individualized factual determinations." *Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D. 194, 199 (D. Mass. 1999) (denying class certification of sub-group alleging reliance an implied warranty), *affd*, 208 F.3d 288 (1st Cir. 2000); *O'Hara v. Diageo-Guinness*, No. CV 1:15-cv-14139-MLW, 2021 WL 11749765, at *1 (D. Mass. Mar. 17, 2021) (denying certification of "negligent misrepresentation claims because reliance is an element of such claims under Massachusetts law and, therefore, they are not amenable to be resolved in a class action."); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. at 395-397 (declining to certify a class on plaintiff's negligent misrepresentation claims due to the individual inquiries necessary to prove reasonable reliance); *Loughlin v. Vi-Jon*, 728 F. Supp. 3d

---

[24] Claims involving LLI and BAS would be especially highly individualized and require fact-intensive analysis making them unsuitable for class treatment. Because LLI is an intervention resource that supplements core literacy instruction, any claim involving LLI would require a determination of a student's reading deficiency when the intervention began, and an individualized assessment of how LLI was used with that particular student. Similarly, any claim involving BAS would require a determination of each student's BAS results, the fidelity of the administration of the assessment by the teacher, whether other assessments or tests (such as MCAS) were administered and their comparative results, and the impact that any delayed identification of reading deficiencies (caused by other factors), may have had upon that student.

163, 180, 184 (denying class certification of Chapter 93A claims where essential elements of claims were subject to individual challenges).[25]

## VIII.   INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED

To the extent the Court finds that Plaintiffs have stated a claim at all, the claims against individual Defendants HMH, F&P, LLC, Mossflower, and authors Calkins, Fountas, and Pinnell must still be dismissed.

Plaintiffs have not alleged any facts about conduct by HMH.  Although Plaintiffs allege that "HMH publishes, markets, and sells" the Literacy Materials, FAC ¶ 23, *see also id.* ¶¶ 39-40, it attributes the alleged misrepresentations underlying all its claims to HMH's subsidiary, Heinemann.  *See, e.g.*, *id.* ¶ 19 ("institutional purchasers are able to locate their *Heinemann* Sales Representative"); *id.* ¶ 42 ("Defendants' Literacy Products … were all published by *Heinemann*"); *id.* ¶¶ 50, 53 (listing alleged misrepresentation from *Heinemann*'s website); *id.* ¶ 59 (referencing conduct only by Heinemann and its authors); *id.* ¶ 66 (discussing EdReports reviews of "*Heinemann*'s flagship early-literacy products"); *id.* ¶¶ 103-106 (identifying materials used in Plaintiffs' schools as "*Heinemann's Units of Study*" and "*Heinemann's Leveled Literacy Intervention*").  Without more, the mere fact that Heinemann is a subsidiary of HMH is insufficient to hold HMH liable for any alleged conduct of Heinemann.  *See, e.g.*, *Speakman v. Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122, 142 (D. Mass. 2005) ("[A] corporation's parents, subsidiaries, and other affiliates are not liable for the actions of the corporation under Chapter 93A unless they played an active role in the alleged wrongful conduct."); *Omni-Wave Elecs. Corp. v. Marshall*

---

[25] In addition to the reasons set forth above, Plaintiffs cannot establish their proposed class because no named plaintiff here is a "parent[] and/or legal guardian[]," FAC ¶ 109, and thus there is no basis to find that any named Plaintiff would be representative of those proposed class members. Relatedly, Plaintiffs have not defined parents or guardians in a way that would limit those with a cause of action to those who have control over their child's or ward's education.

*Indus.*, 127 F.R.D. 644, 650 (D. Mass. 1989) ("[T]he plaintiff must delineate the factual basis for holding [related companies] independently liable under Chapter 93A").

F&P, LLC and Mossflower should likewise be dismissed because Plaintiffs do not present any well-pleaded claims against those defendants in their individual capacity. The only factual allegation as to F&P, LLC is that it is an Ohio limited liability corporation. FAC ¶ 22. Similarly, the only allegations as to Mossflower are that it is a limited liability corporation that offers "state-of-the-art professional development services to K-8 educators,"[26] and its website links to Heinemann's website where UoS may be purchased. FAC ¶¶ 16, 18-19. Plaintiffs do not allege that F&P, LLC or Mossflower created, marketed, or sold any of the Literacy Materials, or that they made any alleged misstatements regarding the Literacy Materials. Plaintiffs, therefore, have not stated a claim against F&P, LLC or Mossflower. *See Canales v. Gatzunis*, 979 F. Supp. 2d 164, 170 (D. Mass. 2013) ("In order to satisfy the minimal requirements of notice pleading, a plaintiff cannot 'lump' multiple defendants together and must 'state clearly which defendant or defendants committed each of the alleged wrongful acts.'").

Plaintiffs' claims against the individual authors should also be dismissed. Plaintiffs identify a handful of quotes attributed to Ms. Calkins and included on the Heinemann and UoS websites, none of which are actionable. The alleged misrepresentations state that Ms. Calkins and her team "follow the research on phonics," that UoS is "research-based," and that she and her colleagues "began the research that … culminated in the publication of this series." FAC ¶ 50. For the same reasons explained above, these statements are not false because UoS *is* supported by research—even if it is research with which Plaintiffs disagree. *See supra* pp. 16-19, 25-27. The

---

[26] Although Plaintiffs allege that Mossflower provides professional development services "[i]n connection with the literacy products it creates," they do not allege that their teachers received those services from Mossflower or how those services caused Plaintiffs any harm.

sole remaining statement attributed to Calkins—that her workshops are like "an art studio or a researcher's laboratory," FAC ¶ 51)—is clearly a metaphor that does not plausibly indicate anything to the consumer about the underlying research and is thus non-actionable. *See supra* p. 27 n.10.

Similarly, the alleged misrepresentations attributed to Fountas and Pinnell individually are quotes from articles and blog posts stating that their literacy materials "are the result of over two decades of [their] research," and "researched-based." FAC ¶ 52. For the same reasons discussed *supra* pp. 16-19, 25-27, these statements are not false and Plaintiffs' own allegations show that their literacy materials are based on research. FAC ¶ 52 ("The Fountas and Pinnell website includes a page devoted to research."). Likewise, Plaintiffs' reliance on a 2022 blog post (FAC ¶ 52)—authored by Fountas and Pinnell in direct response to allegations that their literacy materials are ineffective and written *after* the named Plaintiffs were purportedly educated with the Literacy Materials—is also unavailing. The post's statement that their materials are based on a "gold standard study" is a direct reference to the U.S. Department of Education report endorsing the effectiveness of LLI, Ex. E, and even were it not, it is a non-actionable statement of opinion regarding the superlative quality of their materials. *See supra* pp. 26-27.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss all claims with prejudice.

Dated: April 8, 2025

Respectfully submitted,

/s/ Felicia H. Ellsworth
FELICIA H. ELLSWORTH (BBO # 665232)
ANDY O'LAUGHLIN (BBO # 691836)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
Felicia.Ellsworth@wilmerhale.com
Andy.Olaughlin@wilmerhale.com
*Counsel for Greenwood Publishing Group,
LLC; HMH Education Company*

/s/ David Thomas
DAVID THOMAS (BBO # 640854)
GREENBERG TRAURIG, LLP
1 international Pl #2000
Boston, MA 02110
Tel: (617) 310-6040
Fax: (617) 897-0940
David.Thomas@gtlaw.com
*Counsel for RWPN, LLC;
Lucy Calkins in her personal capacity*

/s/ Javier F. Flores
JAVIER F. FLORES (BBO # 666089)
DINSMORE & SHOL, LLP
101 Arch street, suite 1800
Boston, MA 02110
Tel: (857) 305-6383
Fax: (857) 305-6401
Javier.Flores@dinsmore.com
*Counsel for Fountas and Pinnell, LLC;
Irene C. Fountas in her personal capacity;
Gay Su Pinnell in her personal capacity*

## **LOCAL RULE 7.1 CERTIFICATION**

I, Felicia H. Ellsworth, certify that on April 8, 2025, the parties conferred in good faith to resolve or narrow the issue presented by this motion and were unable to resolve or narrow the issues.

*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth


## **CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of April, 2025, I caused this document to be filed through the CM/ECF system, where it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth