## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| S.C., by her parent and next friend KARRIE CONLEY; K.C., by her parent and next friend KARRIE CONLEY; and R.H., by his parent and next friend MICHELE HUDAK, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 1:25-cv-10007 |
| v. | |
| LUCY CALKINS; IRENE FOUNTAS; GAY SU PINNELL; RWPN, LLC, d/b/a THE READING & WRITING PROJECT AT MOSSFLOWER, LLC; BOARD OF TRUSTEES OF TEACHERS COLLEGE, COLUMBIA UNIVERSITY; FOUNTAS AND PINNELL, LLC; GREENWOOD PUBLISHING GROUP, LLC, d/b/a HEINEMANN PUBLISHING; and HMH EDUCATION CO., | |
| Defendants. | |

**DEFENDANTS LUCY CALKINS; IRENE FOUNTAS; GAY SU PINNELL; RWPN, LLC, d/b/a THE READING & WRITING PROJECT AT MOSSFLOWER, LLC; FOUNTAS AND PINNELL, LLC; GREENWOOD PUBLISHING GROUP, LLC, d/b/a HEINEMANN PUBLISHING; and HMH EDUCATION COMPANY'S <u>REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND, IN THE ALTERNATIVE, MOTION TO STRIKE CLASS ALLEGATIONS</u>**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

ARGUMENT .........................................................................................................1

    I.     PLAINTIFFS DO NOT DISPUTE THAT THIS CASE REQUIRES
         ADJUDICATION OF EDUCATIONAL QUALITY OR SUFFICIENCY 1

    II.    PLAINTIFFS CANNOT POINT TO FALSE OR MISLEADING
         STATEMENTS LET ALONE ALLEGE FALSITY WITH
         PARTICULARITY .....................................................................................6

    III.   PLAINTIFFS FAIL TO ALLEGE CONDUCT THAT SATISFIES
         CHAPTER 93A .........................................................................................9

         A.    Plaintiffs Have Failed to Allege the Requisite Commercial
              Relationship .................................................................................9

         B.    Defendants' Alleged Conduct Is Not Unfair ................................10

         C.    Defendants' Conduct Is Not Deceptive .......................................12

    IV.   PLAINTIFFS' NEGLIGENCE CLAIM FAILS ........................................15

         A.    A Negligent Misrepresentation Claim Requires Reliance, Which
              Plaintiffs Cannot Show ................................................................15

         B.    Plaintiffs' Hypothetical Harm Fails To Allege Injury ..................16

    V.    PLAINTIFFS FAIL TO DISTINGUISH LAW DEMONSTRATING
         THAT PRODUCTS LIABILITY PRINCIPLES DO NOT EXTEND TO
         BOOKS ...................................................................................................16

    VI.   PLAINTIFFS CONCEDE THAT THEY HAVE NOT PLAUSIBLY
         PLEADED A CLASS ...............................................................................17

CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
   512 F.3d 46 (1st Cir. 2008) .............................................................................................19

*Advance Dx, Inc. v. YourBio Health, Inc.*,
   753 F. Supp. 3d 53 (D. Mass. 2024) ......................................................................11, 14

*Ambrose v. N.E. Ass'n of Schs. & Colls., Inc.*,
   252 F.3d 488 (1st Cir. 2001) ........................................................................................3, 12

*Anoush Cab, Inc. v. Uber Techs., Inc.*,
   8 F.4th 1 (1st Cir. 2021) ................................................................................................11

*Begelfer v. Najarian*,
   381 Mass. 177 (1980) ....................................................................................................10

*Bittle v. Oklahoma City Univ.*,
   2000 OK CIV APP 66 (Okla. Civ. App. 2000) ..............................................................3

*In re Bos. Univ. COVID-19 Refund Litig.*,
   511 F. Supp. 3d 20, 23 n.5 (D. Mass. Jan. 7, 2021) ......................................................5

*Ciardi v. F. Hoffmann-La Roche, Ltd.*,
   436 Mass. 53 (2002) ........................................................................................................9

*Cleveland Bakers & Teamsters Health & Welfare Fund v. AMAG Pharms., Inc.*,
   2025 WL 1024103 (D. Mass. Mar. 12, 2025) ..........................................................6, 8

*Columbia Plaza Assocs. v. Ne. Univ.*,
   493 Mass. 570 (2024) ........................................................................................10, 11, 12

*Crommelin v. Takeda Pharms. U.S.A., Inc.*,
   747 F. Supp 3d 304 (D. Mass 2024) .............................................................................18

*Cumis Ins. Soc'y Inc. v. BJ's Wholesale Club, Inc.*,
   455 Mass. 458 (2009) ....................................................................................................15

*Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc.*,
   277 S.W.3d 696 (Mo. Ct. App. 2008) ........................................................................2, 3

*DiCroce v. McNeil Nutritionals, LLC*,
   640 F. Supp. 3d 182 (D. Mass. 2022) ..........................................................................14

*Durbeck v. Suffolk University*,
547 F. Supp. 3d 133 (D. Mass. 2021) ............................................................3, 5

*In re Evenflo Co., Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
707 F. Supp. 3d 103 (D. Mass. 2023) ...............................................................20

*Fernandes v. Centessa Pharms.*,
2024 WL 3638254 (S.D.N.Y. Aug. 2, 2024) ...................................................8, 9

*Fitzer v. Sec. Dynamics Techs.*, Inc.,
119 F. Supp. 2d 12 (D. Mass. 2000) ...................................................................7

*Ferring Pharms., Inc. v. Braintree Lab'ys, Inc.*,
38 F. Supp. 3d 169 (D. Mass. 2014) ...................................................................7

*Gally v. Columbia Univ.*,
22 F. Supp. 2d 199 (S.D.N.Y. 1998) ...................................................................3

*Gary B. v. Whitmer*,
957 F.3d 616 (6th Cir. 2020) ..............................................................................6

*Glorvigen v. Cirrus Design Corp.*,
796 N.W.2d 541 (Minn. Ct. App. 2011) .............................................................2

*Green v. Sirchie Acquisition Co. LLC*,
633 F. Supp. 3d 393 (D. Mass. 2022) .........................................................11, 14

*In re GNC Corp.*,
789 F.3d 505 (4th Cir. 2015) ............................................................................12

*Justiniano v. Walker*,
986 F.3d 11 (1st Cir. 2021) ...............................................................................10

*Kaufman v. CVS Caremark Corp.*,
836 F.3d 88, 91 (1st Cir. 2016) .......................................................................8, 9

*Klairmont v. Gainsboro Restaurant, Inc*
465 Mass. 165 (2013).) ....................................................................................12

*Lee v. Conagra Brands, Inc.*,
958 F.3d 70, 80 (1st Cir. 2020) ........................................................................12

*Lipton v. Nature Co.*,
71 F.3d 464, 474 (2d Cir. 1995) .......................................................................13

*Love v. Career Educ. Corp.*,
    2012 WL 1684572 (E.D. Mo. May 15, 2012) ................................................. 3

*Maio v. TD Bank, N.A.*,
    2023 WL 2465799 (D. Mass. Mar. 10, 2023) ............................................... 12

*Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*,
    142 F.3d 26 (1st Cir. 1998) ...................................................................... 11

*Moniz v. Bayer Corp.*,
    484 F. Supp. 2d 228, 230 (D. Mass. 2007) ................................................ 9

*Nestlenook, Inc. v. Atl. Design Eng'rs*,
    2003 WL 22670881 (Mass. Super. Nov. 7, 2003) ...................................... 15

*Nota Const. Corp. v. Keyes Assocs., Inc.*,
    45 Mass. App. Ct. 15 (1998) .................................................................... 15

*Nycal Corp. v. KPMG Peat Marwick LLP.*,
    426 Mass. 491 (1998) .............................................................................. 15

*Padnes v. Scios Nova Inc.*,
    1996 WL 539711 (N.D. Cal. Sept. 18, 1996) .............................................. 8

*Peter W. v. San Francisco Unified Sch. Dist.*,
    60 Cal. App. 3d 814 (1976) ....................................................................... 5

*Rafferty v. Merck & Co., Inc.*,
    479 Mass. 141 (2018) ................................................................................ 9

*Rovinelli v. Trans World Ent. Corp.*,
    2021 WL 752822 (D. Mass. Feb. 2, 2021) ............................................ 17, 18

*Ryan v. Greif, Inc.*,
    708 F. Supp. 3d 148 (D. Mass. 2023) ....................................................... 9

*Steinmetz v. Coyle & Caron, Inc.*,
    862 F.3d 128 (1st Cir. 2017) ..................................................................... 9

*Stone/Cong. v. Town of Andover*,
    1997 WL 11737 (Mass. Super. Jan. 3, 1997) ............................................ 15

*In re Suffolk Univ. Covid Refund Litig.*,
    616 F. Supp. 3d 115 (D. Mass. 2022) .................................................... 2, 5

*Tapogna v. Egan*,
    141 F.R.D. 370 (D. Mass. 1992) ................................................................ 8

*Tomasella v. Nestlé USA, Inc.*,

962 F.3d 60 (1st Cir. 2020)................................................................................10, 12

*Waugh v. Morgan Stanley & Co.,*
966 N.E.2d 540 (Ill. App. Ct. 2012) ...............................................................2, 3

## STATUTES, RULES, AND REGULATIONS

Mass. Gen. Laws ch. 266, § 2(a)...................................................................................9

Mass. Gen. Laws ch. 266, § 91 ...................................................................................14

Fed. R. Civ. P. 9(b) ...............................................................................................6, 7, 8

## **INTRODUCTION**

Plaintiffs' Opposition ("Opp.") only underscores why their claims must be dismissed.  Dkt. 63.  Courts consistently hold that judges are not in the business of supplanting decisions made by educators about what and how to teach.  Realizing that their claims are foreclosed by this controlling case law, Plaintiffs try to escape dismissal by recasting their suit as one about alleged misrepresentations rather than the underlying quality of the Literacy Materials.  This attempted pivot fails.  *First*, Plaintiffs' theory of harm is undeniably that they were not taught to read well, *see, e.g.*, Dkt. 47 ("FAC") ¶¶ 89, 103-104, 106, 119, 132, because the Literacy Materials they used were "defective," *see, e.g.*, FAC ¶¶ 26, 47, 58, 88, 99, 106, 113, 118-119, 132.  Their claims cannot be resolved without addressing underlying questions of educational achievement and quality that Plaintiffs' Opposition purports to avoid.  Opp. 10 ("Plaintiffs do not seek this Court's intervention to resolve questions about a school's choice of books").  *Second*, Plaintiffs' claims that Defendants made actionable misrepresentations that the Literacy Materials were based on data and research is at odds with their own allegations; the Complaint acknowledges that the Literacy Materials are in fact supported by research and data that is posted on Defendants' websites.  *See, e.g.*, FAC ¶¶ 50-53.  Whether styled as an education quality suit or a misrepresentation one, the result is the same.  Plaintiffs' Complaint advances non-viable claims, fails to meet basic pleading requirements, and should be dismissed.

## **ARGUMENT**

## I.    **PLAINTIFFS DO NOT DISPUTE THAT THIS CASE REQUIRES ADJUDICATION OF EDUCATIONAL QUALITY OR SUFFICIENCY**

Plaintiffs acknowledge that this case involves a "debate about educational theories." Opp. 8.  They also do not meaningfully dispute that courts have uniformly declined to adjudicate cases that require judgments about educational theories or the quality of an educational program.

1

Opp 8-9 (acknowledging impropriety of "educational malpractice" claims). Plaintiffs hope to evade dismissal by arguing that the "essence" of their action is not about educational quality but instead about misrepresentation. Opp. 10. Their attempt to use misrepresentation allegations as a trojan horse to advance barred education-quality claims should be rejected.

Plaintiffs' theory of harm is fundamentally and undeniably that the Literacy Materials resulted in a lack of educational achievement. FAC ¶ 89 (alleging "devastating setbacks in [] educational development"). Their Complaint goes well beyond alleging simple misrepresentations by alleging that "meaningful phonics instruction [is] the one thing essential to literacy success." FAC ¶ 3. Similarly, their request to impose civil penalties on those who do not sufficiently hew to Plaintiffs' views would have the practical effect of making it illegal to teach reading in the Commonwealth using the methods with which Plaintiffs disagree. Against this backdrop, Plaintiffs' suggestion that "[t]he claims at issue here … would have no impact on what schools or teachers in this Commonwealth do or do not do" blinks reality. Opp. 12.

Courts recognize that whether a claim is barred under the legal doctrine that prevents courts from resolving questions of educational quality—the so-called "educational malpractice" bar or doctrine—depends on what questions the court must answer not on how the claim is styled, *i.e.*, does the claim "require the judiciary to define the sufficiency or quality of an educational program." *In re Suffolk Univ. Covid Refund Litig.*, 616 F. Supp. 3d 115, 118 (D. Mass. 2022) (limiting plaintiff to a damages calculation that did not require evaluating educational quality); *accord Waugh v. Morgan Stanley & Co.*, 966 N.E.2d 540, 549 (Ill. App. Ct. 2012) (claims barred that "require[] an analysis of the quality of education"); *Glorvigen v. Cirrus Design Corp.*, 796 N.W.2d 541, 552 (Minn. Ct. App. 2011) (claims barred that "would require the court to engage in a comprehensive review of a myriad of educational and pedagogical factors"); *Dallas Airmotive,*

*Inc. v. FlightSafety Int'l, Inc.*, 277 S.W.3d 696, 700 (Mo. Ct. App. 2008) (claims barred "[w]here the court is asked to evaluate the course of instruction or the soundness of the method of teaching").

In assessing whether the doctrine bars a claim, courts "must ensure that the [p]laintiffs' claims are not merely 'cloak[ed]' with 'creative labeling.'" *Durbeck v. Suffolk Univ.*, 547 F. Supp. 3d 133, 139 (D. Mass. 2021) (quoting *Ambrose v. N.E. Ass'n of Schs. & Colls., Inc.*, 252 F.3d 488, 499 (1st Cir. 2001)). *See, e.g.*, *Bittle v. Oklahoma City Univ.*, 2000 OK CIV APP 66, ¶ 14, 6 P.3d 509, 514 (Okla. Civ. App. 2000) (barring claims involving educational quality styled as fraud, breach of contract, negligence, and unjust enrichment); *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206-207 (S.D.N.Y. 1998) (same for breach of contract); *Love v. Career Educ. Corp.*, 2012 WL 1684572, at *3 (E.D. Mo. May 15, 2012) (same for fraud); *Waugh*, 966 N.E.2d at 548-555 (same for negligence). The fact that Plaintiffs have tactically avoided including an educational malpractice "cause of action or ever us[ing] the terminology" is irrelevant. Opp. 9. If it walks like a duck, and quacks like a duck, it is a duck.

Plaintiffs' claims plainly require a judicial inquiry into educational theories and the quality and sufficiency of an educational program. Specifically, Plaintiffs allege that they developed reading delays as a result of inadequate literacy instruction provided in their respective elementary schools. The Plaintiffs attribute the ineffective instruction to their respective schools' use of the Literacy Materials, which they purport are "defective," FAC ¶¶ 26, 47, 58, 88, 99, 106, 113, 118-119, 132, and allege that these defects were due to insufficiently incorporating Plaintiffs' preferred educational theory, FAC ¶¶ 3, 5, 38-39, 42, 49, 68, 83-84, 89, that these defects caused specific, education-related injuries, FAC ¶¶ 89, 103-104, 106, 119, 132, and that Defendants are liable for actual and compensatory damages from their "ineffective and harmful" materials, FAC p. 35. Adjudicating these allegations would necessarily require a judicial assessment of the quality of the

educational program offered by the Plaintiffs' schools and the degree to which deficiencies, if any, are attributable to the content of the Literacy Materials and caused Plaintiffs harm.

Plaintiffs' Opposition only reaffirms that the educational quality of the Literacy Materials is central to their claims. Opp. 12 (arguing that "daily phonics instruction is necessary for literacy success"); Opp. 24 (discussing alleged consequences for "literacy levels for school children"); Opp. 28 ("With respect to injury, Plaintiffs and other children have suffered catastrophic consequences"); Opp. 30 (arguing that the Literacy Materials caused "setbacks in educational development"). Moreover, Plaintiffs' claimed injury is based entirely on the allegation that they struggled with learning to read because they were taught using the allegedly "defective" Literacy Materials. Even their standing to bring this suit thus unavoidably turns on questions of education quality and achievement.

Even if the court were to focus narrowly on the alleged misrepresentations (the "Challenged Statements"[1]), assessing whether those statements were misrepresentations would *still* require resolving underlying questions of educational policy and quality. Plaintiffs' Opposition argues that the reason it is misleading to describe the Literacy Materials as "research-backed" is because they did not sufficiently focus on phonics. *See, e.g.*, Opp. 3 ("due to the failure to include explicit and systematic phonics instruction, the Literacy Products were … not backed by research"). Adjudicating Plaintiffs' misrepresentation claims would thus necessarily require the court to determine whether it agrees with Plaintiffs' premise that a curriculum cannot be described as "research-based" if it does not sufficiently focus on phonics. Plaintiffs' attempted

---

[1] The Challenged Statements are the representations on Defendants' "websites and publications that the Literacy Products were … 'research-based' 'data-based,' [and] based on 'gold-standard' research." Opp. 3; *see also* FAC ¶¶ 50-53.

end run around the educational quality doctrine runs in a circle, only to lead back to the same problem: There is no way to resolve their claims without taking up questions that are explicitly reserved to the non-judicial branches. *See* Dkt. 53 ("Mot.") at 10-12.

Plaintiffs' invocation of *Durbeck* does not change the analysis. Opp. 9-10 (citing 547 F. Supp. 3d at 139). *Durbeck* allowed a claim to proceed because, rather than concerning educational quality, it concerned the complete denial of the in-person experience that had been purchased by the student. *Durbeck* nevertheless indicated that the plaintiffs' claim may ultimately be "non-actionable" if the damages calculation "inextricably implicate[d] the issue of [educational] quality." *Id.* at 141 (quoting *In re Bos. Univ. COVID-19 Refund Litig.*, 511 F. Supp. 3d 20, 23 n.5 (D. Mass. Jan. 7, 2021)). Here, by contrast, every element of Plaintiffs' claims (including damages) focuses on the alleged poor educational quality of the Literacy Materials, *see supra* pp. 3-4; and is thus "non-actionable" under *Durbeck*'s framework. *Durbeck*, 547 F. Supp. 3d at 139.[2]

Plaintiffs raise a handful of additional arguments for why their claims do not implicate the "educational malpractice" doctrine, none of which are persuasive. On the issue of causation, Plaintiffs fail to engage, let alone counter, the argument that it is a "practical impossibility" to prove proximate causation in the context of claims based on educational achievement, *see Ross v. Creighton University*, 957 F.2d 410, 414 (7th Cir. 1992), as "achievement in literacy in the schools … [is] influenced by a host of factors which affect the pupil subjectively," *Peter W. v. San Francisco Unified Sch. Dist.*, 60 Cal. App. 3d 814, 824 (1976); *see also* Mot. 13-14. Plaintiffs

---

[2] Plaintiffs similarly assert that *In re Suffolk University Covid Refund Litigation* does not "address the proposition that Defendants urge this court to adopt." Opp. 9. But like *Durbeck*, that case involved a suit related to online education during the COVID-19 pandemic, and the court limited the plaintiffs' damages calculations to only a calculation that did not require a judicial evaluation of educational quality. *See* 616 F. Supp. 3d at 118.

purport to distinguish *Peter W.* based on its jurisdiction and posture, but cite no authority and offer no explanation to dispute *Peter W.*'s analysis of causation.  Nor do they demonstrate how causation can be established for claims premised on lack of achievement in literacy.  *See* Opp. 11.  On the issue of a cognizable injury, Plaintiffs rely on a vacated Sixth Circuit decision applying the Fourteenth Amendment, Opp. 11-12, but even that (vacated) decision recognized that a court "cannot guarantee a specific educational outcome, such as literacy or proficiency rates."  *Gary B. v. Whitmer*, 957 F.3d 616, 659-660 (6th Cir. 2020).  Plaintiffs here allege injury and seek damages based on just such a failure to obtain a "specific educational outcome."  *See id.*

## II.    PLAINTIFFS CANNOT POINT TO FALSE OR MISLEADING STATEMENTS LET ALONE ALLEGE FALSITY WITH PARTICULARITY

Plaintiffs claim that the Challenged Statements are misleading because the Literacy Materials were not actually backed by research.  But their Complaint cites to the very research that underpins the statements.  Plaintiffs therefore fail to state a claim under any pleading standard— let alone the heightened one that applied here.

Plaintiffs do not contest that Rule 9(b) applies to their claims.  Opp. 12.  Rule 9(b) requires that a party "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Plaintiffs fail to state a claim because they have not sufficiently alleged or explained how the Challenged Statements are actually misleading—let alone false.  *See Cleveland Bakers & Teamsters Health & Welfare Fund v. AMAG Pharms., Inc.*, 2025 WL 1024103, at *9 (D. Mass. Mar. 12, 2025) ("[T]he complaint must specifically allege … why [each statement] is false or misleading.").  Plaintiffs take issue with certain statements relating to the studies and data that underpinned the Literacy Materials.  For example, they target statements that UoS is "data-based," and "research-based, FAC ¶ 50, was "based on 30 years of intensive research," based on "decades

of research," and was "refined over decades of research and piloting." *Id.* ¶ 51. Or that the F&P materials were "research-based." *Id.* ¶ 52. However, the same paragraphs of the Complaint that identify these supposedly "misleading" statements also note that the Defendants' websites "contain[] links to data reports and case studies." FAC ¶ 50. Those links allow users to, for example, "download the Research Base document for a summary … of the research that informs the[] work." *Id.* Faced with the problem that the Literacy Materials are *actually* supported by research, Plaintiffs make three arguments to stave off dismissal. None are convincing.

*First*, Plaintiffs contend that the Literacy Materials definitionally cannot have been based in research because their failure to include any phonics is at odds with a supposed "scientific consensus" regarding the primacy of phonics. Opp 17. This argument fails because Plaintiffs' Complaint acknowledges that the Literacy Materials include phonics-based instruction, FAC ¶¶ 38, 45, 68. The Complaint also acknowledges the existence of a long public and academic debate concerning the role of phonics in teaching reading. *Id.* ¶¶ 33, 39-40, 50, 52, 55. Plaintiffs cast this debate as settled in favor of Plaintiffs' preferred approach (*see, e.g.*, *id.* ¶¶ 2, 31, 38), but they do not allege that there are no studies going the other way. Although Plaintiffs may disagree with those studies, they cannot dispute that they exist.

*Second*, Plaintiffs claim that "Defendants did not conduct any rigorous research or collect any data to support their methodologies until the early 2020s." Opp. 15-16. This allegation is conclusory and lacks the particularity required by 9(b), especially as it is made "upon information and belief." FAC ¶ 54; *Fitzer v. Sec. Dynamics Techs.*, Inc., 119 F. Supp. 2d 12, 18 (D. Mass. 2000) (allegations based on information and belief do not satisfy Rule 9(b)). Plaintiffs do not explain what approaches or methodologies make the 2020s research "rigorous" that earlier research was lacking. Indeed, Plaintiffs do not even identify any of the pre-2020s research—let

alone when it occurred, who conducted it, how it was carried out, or what about it was deficient. *See Cleveland Bakers*, 2025 WL 1024103, at *9 (Rule 9(b) requires "specifically alleging" "why [the statement] is false or misleading."); *Tapogna v. Egan*, 141 F.R.D. 370, 377 (D. Mass. 1992) (A "catalogue" of statements "no matter how exhaustive, coupled with the bare allegation that the representations were false and misleading, quite simply is not enough.").

*Third*, Plaintiffs contend that the cited research cannot support the Challenged Statements because it contains "significant limitations and marginal results." Opp. 16. Again, Plaintiffs fail to allege with any particularity what the supposed "limitations" actually are. But even if they had, courts are not in the habit of serving as peer reviewers on academic journals, and the Challenged Statements do not actually make any representations about the specifics of the research used to develop the Literacy Materials. Plaintiffs do not dispute that research was conducted. That alone is sufficient to undermine Plaintiffs' contention that the Challenged Statements are misleading. In fact, they are demonstrably true. *See Padnes v. Scios Nova Inc.*, 1996 WL 539711, at *5 (N.D. Cal. Sept. 18, 1996) (noting in dismissing claims that "the fact that plaintiffs disagree with the [] researchers and with defendants about the import of the [] data does not make defendants' summaries of the study false or misleading"); *Fernandes v. Centessa Pharms.*, 2024 WL 3638254, at *18-20 (S.D.N.Y. Aug. 2, 2024) (dismissing for lack of an actionable misstatement about studies, under ordinary plausibility pleading, where plaintiff "merely disagree[s] with the underlying studies' designs").[3]

---

[3] Plaintiffs' reliance on *Kaufman v. CVS Caremark Corp.* is misplaced. As an initial matter, the defendant in *Kaufman* made no argument that the complaint did not provide the needed particularity under Rule 9(b), 836 F.3d 88, 91 (1st Cir. 2016), and the case involved a preemption analysis under the unique requirements of the federal Food, Drug, and Cosmetic Act, *id.* at 91-96. Moreover, the case does not help Plaintiffs here due to the nature of both the alleged

## III.     PLAINTIFFS FAIL TO ALLEGE CONDUCT THAT SATISFIES CHAPTER 93A

### A.     Plaintiffs Have Failed to Allege the Requisite Commercial Relationship

To state a claim under Chapter 93A, Plaintiffs must allege facts sufficient to establish a *commercial* relationship between themselves and Defendants. *Rafferty v. Merck & Co., Inc.*, 479 Mass. 141, 162 (2018) (emphasis added).  Although contractual privity is not required, the alleged unfair or deceptive act must have occurred in the course of trade or commerce.  Mass. Gen. L. ch. 93A § 2(a); *Steinmetz v. Coyle & Caron, Inc.*, 862 F.3d 128, 141 (1st Cir. 2017).  As the cases cited by Plaintiffs acknowledge, "there must be some kind of commercial link."  *Ryan v. Greif, Inc.*, 708 F. Supp. 3d 148, 179 (D. Mass. 2023).  Plaintiffs fail to establish this link.

The two cases Plaintiffs cite confirm that a commercial relationship is required and demonstrate that Plaintiffs have failed to allege one.  In *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53 (2002), a consumer who paid more money for vitamins than she otherwise would have sued manufacturers and distributors alleging a price-fixing conspiracy.  The court found that "the plaintiff ha[d] alleged a connection between herself and the defendants, albeit an indirect one, as [a party] to consumer transactions."  *Id.* at 66.  Similarly, in *Moniz v. Bayer Corp.*, the court rejected the argument that a consumer plaintiff lacked "the requisite business relationship with the alleged price-fixers" and concluded that "indirect purchasers may bring suit against up-stream price-fixers under Chapter 93A." 484 F. Supp. 2d 228, 230 (D. Mass. 2007).

---

misrepresentation and the research at issue.  In *Kaufman*, a customer sued CVS for touting a supplement as supporting "heart health" on its label, allegedly misleading consumers.  *Id.* at 89. The plaintiff identified specific studies that undermined the health benefits of the supplement and other studies that showed its risks.  *Id.* at 90.  Here, the vague Challenged Statements relate to research itself—rather than benefits or outcomes of the Literacy Materials—and the Complaint references the particular research that Defendants relied on, not merely research that allegedly contradicts it.

Here, Plaintiffs are not direct or indirect consumers—they are not consumers at all. The school districts select and purchase the Literacy Materials. They then mix and match them with other materials to develop bespoke curricula taught by teachers who apply their own methods and practices. The children who are ultimately taught by those teachers are not "downstream purchasers" of "products" or "third party beneficiaries" of a commercial contract with the Defendants; they are students in elementary schools. The "nature of the transaction" and the "nature of the parties" in this case confirm that the Plaintiffs are not engaged with Defendants in the sort of business relationship or transaction that is required to state a Chapter 93A claim. *Begelfer v. Najarian*, 381 Mass. 177, 190-191 (1980).

### B. Defendants' Alleged Conduct Is Not Unfair

An act or practice is unfair under Chapter 93A if it (1) falls "within the penumbra of any common-law, statutory, or other established concept of unfairness"; (2) is "immoral, unethical, oppressive, or unscrupulous"; and (3) "causes substantial injury to consumers," "plus the conduct must generally be of an egregious, non-negligent nature." *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 70-71 (1st Cir. 2020) (cleaned up). Plaintiffs' claim that this is a disjunctive test where they must satisfy only one of the three prongs, Opp. 22-23, is incorrect. The Massachusetts Supreme Judicial Court has recently described these three prongs together as "factors" "[t]o determine whether conduct rises to the level of an unfair act or practice." *Columbia Plaza Assocs. v. Ne. Univ.*, 493 Mass. 570, 587 (2024).

Ignoring the first factor altogether, Plaintiffs begin with the second. To support their claim that Defendants' alleged conduct was "immoral, unethical, oppressive, or unscrupulous" Plaintiffs begin by pointing back to their Complaint's allegation that Defendants' conduct was at a "minimum deceptive and unfair, if not willful, wanton, malicious, reckless, oppressive, and/or

fraudulent." FAC ¶ 131. These are not facts. They are legal conclusions and therefore must be disregarded. *Justiniano v. Walker*, 986 F.3d 11, 19 (1st Cir. 2021) (Courts "ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."). Plaintiffs next point to their allegation that "Defendants' misconduct was motivated by their desire to increase sales of the Literacy Products." FAC ¶ 56. Without more, simply alleging that a business was motivated to earn profit falls well short of pleading with particularity that its conduct was immoral and oppressive. *See Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 20 (1st Cir. 2021) (affirming that conduct was not egregious even where company allegedly engaged in an "aggressive and disruptive" strategy including "leveraging regulatory ambiguity").[4]

Plaintiffs' argument with respect to the third "substantial injury" factor fares no better. Plaintiffs' assertion (Opp at 25) that merely alleging substantial injury without more can suffice to state an unfairness claim is incorrect as a matter of law. While the extent of injury caused by alleged unfair conduct is a factor that a court will consider, *see Columbia Plaza Assocs.*, 493 Mass. at 587, it alone is insufficient to state a claim under Chapter 93A as Plaintiffs must also show that conduct was "egregious," *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 41 (1st Cir. 1998). As discussed above, Plaintiffs have not alleged facts to support such a

---

[4] The two cases cited by Plaintiffs are not to the contrary. *Green v. Sirchie Acquisition Co. LLC* did not independently analyze how the conduct met the "immoral, unethical, oppressive, or unscrupulous" factor. 633 F. Supp. 3d 393, 403 (D. Mass. 2022). Moreover, the plaintiffs in *Green* alleged that the defendants made specific, verifiable, and knowing false certifications about the particular false-positive rates of the drug-testing equipment that they sold to prisons, *id.* at 398-400, unlike the Challenged Statements here, which are both vague and true. *Advance Dx, Inc. v. YourBio Health Inc.*, likewise does not help the Plaintiffs, as there the court expressly refused to even analyze whether the allegations plausibly demonstrated "immoral, unethical, oppressive, or unscrupulous" conduct. 753 F. Supp. 3d 53, 74 (D. Mass. 2024).

11

finding. The closest they come is alleging that Defendants were motivated by profit. Opp at 8. Were this enough, no Chapter 93A claim against a business could ever be dismissed.[5]

### C. Defendants' Conduct Is Not Deceptive

To show that Defendants' conduct is deceptive within the meaning of Chapter 93A, Plaintiffs must allege (1) "a deceptive act or practice"; (2) "an injury or loss suffered"; and (3) "a causal connection between the [Defendant]'s deceptive act or practice and [Plaintiffs'] injury." *Tomasella*, 962 F.3d at 71 (cleaned up). While Plaintiffs quote large portions of Chapter 93A case law, they fail to identify any support in their factual allegations to show they have adequately alleged a claim based on deceptive conduct.

*First*, Plaintiffs insist that representing that the Literacy Materials were "research-backed" constituted a "misstatement of fact," Opp. 26, but the Complaint itself demonstrates that the Literacy Materials *were* research-backed. *See Maio v. TD Bank, N.A.*, 2023 WL 2465799, at *8 (D. Mass. Mar. 10, 2023) (dismissing where a statement "was accurate at the time of that transaction"); *Ambrose*, 252 F.3d at 495 (1st Cir. 2001) (finding no misleading statement as a matter of law when the statement was true); *Columbia Plaza Assocs.*, 493 Mass. at 587-588. (affirming no deceptive practice as a matter of law where characterization "was essentially accurate"); *In re GNC Corp.*, 789 F.3d 505, 515 (4th Cir. 2015); *supra* pp. 6-8. While Plaintiffs argue that a statement can be literally true and still have a capacity to mislead, Plaintiffs do not argue—nor could they—that a reasonable consumer would understand the Challenged Statements

---

[5] The cases cited by Plaintiff are easily distinguished. In *Lee v. Conagra Brands, Inc.*, the court was analyzing injury for the purposes of standing, not to support the unfairness factors, and did not consider whether plaintiff plausibly alleged "substantial injury to consumers." 958 F.3d 70, 80 (1st Cir. 2020). *Klairmont v. Gainsboro Restaurant, Inc.* similarly does not analyze this factor or assert that it is independently sufficient. 465 Mass. 165, 188 (2013).

to mean anything other than that there is some research supporting the Literacy Materials. Opp. 26-27. Thus, even if a true statement can still be actionable under Chapter 93A, Plaintiffs have made no plausible factual allegations or argument that these statements *were* misleading or described *how* they were misleading. *Compare, e.g., Lee*, 958 F.3d at 996 (in case concerning the phrase "100% Natural," plaintiffs specifically alleged that "surveys show that many scientists and consumers do not consider GMO-containing products to be natural").

Plaintiffs confusingly argue that it was misleading to represent that the "Literacy Products are *science-backed*." *See, e.g.*, Opp. 16. Indeed, the term "science backed" is repeated nine times throughout the Opposition. Opp. 5, 12, 15, 16, 17, 25, 27. But the phrase "science backed" does not actually appear anywhere in the Challenged Statements that are identified in the Complaint. FAC ¶¶ 50-52. To the extent Plaintiffs' Opposition argues it was misleading to use the specific tern "science-backed" they are taking aim at a strawman target that is not contained in the actual Challenged Statements identified in their Complaint.

*Second*, even if Plaintiffs had argued or plausibly alleged that the Challenged Statements were false or misleading because they indicated something about the quality of the research or the quality of the Literacy Materials more generally, such implications would be non-actionable statements of opinion or "superlative quality." *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) (advertising claim regarding "thorough research" was non-actionable "puff[ery]" and a "[s]ubjective claim … which cannot be proven either true or false"); Mot. 26-27.

*Third*, Plaintiffs seek refuge in case law indicating that questions of deceptiveness are often deferred at the motion to dismiss phase. These cases do not help them. In *Lee v. Conagra Brands, Inc.*, the plaintiffs had specifically alleged that "surveys show that many scientists and consumers do not consider GMO-containing products to be natural." 958 F.3d at 76. No similar

13

allegations here plausibly indicate that a reasonable consumer would have understood the Challenged Statements and alleged nondisclosures to be misleading. Both *Ferring Pharms., Inc. v. Braintree Lab'ys, Inc.*, and *Advance Dx, Inc. v. YourBio Health, Inc.*, involved specific claims of superiority over competitors. *See* 38 F. Supp. 3d 169, 178 (D. Mass. 2014) (concerning a "verifiable claim that Prepopik is superior to competing products); *Advance Dx*, 753 F. Supp. 3d at 66-67 (concerning a statement about a competitor's product's "inferiority and lower accuracy compared to [defendant's]"). And *Green v. Sirchie* involved hyper-specific and verifiable certifications regarding industry standards, false positive rates, and cross-reactive substances, 633 F. Supp. 3d at 398. None of the Challenged Statements resemble these types of specific, verifiable, and allegedly false statements.[6]

*Finally*, in addition to being unable to show that the Challenged Statements were deceptive, Plaintiffs cannot show that the statements caused their alleged injury. Plaintiffs' causation analysis focuses on the wrong relationship. Without providing any supporting facts or details, they simply assert that schools relied on the Challenged Statements when purchasing the Literacy Materials. Opp. 27. Even if this were true, that allegation provides no facts about whether or how the Plaintiffs (as opposed to schools) relied on any of the allegedly deceptive statements to their detriment. And crucially, it does not establish how the Challenged Statements (as opposed to the Literacy Materials themselves) actually *caused* the Plaintiffs' alleged injury, which is their alleged lack of educational achievement. Plaintiffs would like to have their cake

---

[6] Plaintiffs' claim for false advertising under Mass. Gen. Laws ch. 266, § 91 fails for the same reasons their Chapter 93A claim fails, *see DiCroce v. McNeil Nutritionals, LLC*, 640 F. Supp. 3d 182, 188 (D. Mass. 2022), and for the reasons described in the Motion. Mot. 30-31. Plaintiffs offer no independent argument in support of their false advertising claim. Opp. 32.

and eat it too.  They claim that their case is just about misrepresentations and not about the underlying quality of alternatives to phonics-centric curricula.  Opp at 10 ("Plaintiffs do not seek this Court's intervention to 'resolve questions about a school's choice of books,' or to resolve a debate regarding differing educational theories.").  However, they allege injury caused by the "defects" in the Literacy Materials themselves, not caused by the misrepresentations.  They cannot have it both ways.

Plaintiffs attempt to solve this causation problem by claiming an "indirect connection" to Defendants based on some sort of "duty of good faith and fair dealing" or because Plaintiffs are "third party beneficiaries of the contracts their schools entered into with Defendants."  Opp. 27.  These claimed legal relationships are entirely beside the point.  In order to state a claim under the deceptive prong of Chapter 93A Plaintiffs must allege a *causal* relationship between the alleged deceptive conduct and the alleged injury—not some sort of "indirect" legal connection.

## IV.    PLAINTIFFS' NEGLIGENCE CLAIM FAILS

### A.    A Negligent Misrepresentation Claim Requires Reliance, Which Plaintiffs Cannot Show

Plaintiffs appear to acknowledge, as they must, that a negligent misrepresentation claim requires, among other things, that a plaintiff actually rely on the alleged misrepresentation.  Opp. 28; *see, e.g.*, *Cumis Ins. Soc'y Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 471-474 (2009).  But Plaintiffs conflate using the Literacy Materials themselves with relying on the alleged misrepresentations about the Literacy Materials.  *See* Opp. 29 ("Certainly, Defendants here knew that schools and students would rely on their Literacy Products for the purpose of teaching literacy skills.").  Plaintiffs do not (and cannot, in light of the allegations that the Literacy Materials were

marketed to and purchased only by schools, *see* FAC ¶ 132) argue that Plaintiffs relied on the alleged misrepresentations themselves. *See also* Mot. 28.[7]

### B.    Plaintiffs' Hypothetical Harm Fails To Allege Injury

On negligence, Plaintiffs try to avoid the economic loss doctrine, which bars recovery for negligence unless a plaintiff can establish that their injuries involved physical harm or property damage, by referencing "setbacks in their educational development." Opp. 30.  This argument fails because, as the Plaintiffs' cited authorities acknowledge, a physical manifestation is required to assert damages for emotional or psychological injuries. Opp. 30-31; *see* Mot. 29.  But the closest that Plaintiffs come to describing such a physical manifestation is arguing that "children who did not learn to read proficiently could be expected to suffer trauma and embarrassment when that fact was revealed to their teachers, classmates, and families."  Opp. 30.  They do not cite to any allegations that they personally suffered such trauma and embarrassment—they only suggest that hypothetical children might.  Nor do they cite any cases indicating that such "trauma or embarrassment" would demonstrate the necessary physical manifestation of an emotional or psychological injury.  By contrast, the cases Plaintiffs cite refer to allegations like "lost sleep, anxiety, and depression," and "severe emotional distress manifested by objective symptomology." Opp. 30-31.  Because the alleged emotional and psychological injuries lack an alleged physical

---

[7] All of the cases cited by the Plaintiffs demonstrate that a plaintiff must rely on the alleged misrepresentation.  *Nota Const. Corp. v. Keyes Assocs., Inc.*, 45 Mass. App. Ct. 15, 20 (1998) (noting a key disputed fact is whether plaintiff "was justified in its reliance on the information"); *Stone/Cong. v. Town of Andover*, 1997 WL 11737, at *4 (Mass. Super. Jan. 3, 1997) (One who "supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information."); *Nestlenook, Inc. v. Atl. Design Eng'rs*, 2003 WL 22670881, at *2 (Mass. Super. Nov. 7, 2003) (Defendant "knew the identity of the plaintiff contractor and knew that the contractor would be relying on the [information]."); *Nycal Corp. v. KPMG Peat Marwick LLP.*, 426 Mass. 491, 496-497 (1998) (adopting the Second Restatement test, which requires reliance).

manifestation, they are insufficient to overcome the economic loss doctrine, and thus fail to state a negligence claim.  Mot. 28-29.

## V.    PLAINTIFFS FAIL TO DISTINGUISH LAW DEMONSTRATING THAT PRODUCTS LIABILITY PRINCIPLES DO NOT EXTEND TO BOOKS

Plaintiffs' argument that their claims "have nothing to do with products liability theories," Opp. 32, is belied by the fact that the Complaint uses the term "products" 102 times and alleges that "Defendants' Literacy Products" caused significant injury.  *See generally* FAC.  In any event, they fail to distinguish the case law establishing that Massachusetts and other jurisdictions do not allow parties to bring products-liability-style claims (whatever the particular cause of action) based on words or ideas in books.  Opp. 32-33.  The question in *Garcia v. Kusan* was whether a book alone, even if it allegedly led to an injury, could support liability against the publisher or author, and the court concluded that it could not, holding that such actions are "unsuited to words and ideas" and touches on First Amendment concerns.  39 Mass. App. Ct. 322, 327-328 (1995) (rejecting negligence, negligent misrepresentation, and breach of warranty actions).  Yet here, Plaintiffs seek to impose liability based solely on the words and ideas found in books. Massachusetts courts have rejected such attempts, *see id.*, and, bound by Massachusetts law, this Court should do so here.

## VI.    PLAINTIFFS CONCEDE THAT THEY HAVE NOT PLAUSIBLY PLEADED A CLASS

Plaintiffs concede that they have failed to allege they are members of their proposed class, Opp. 34, and they do not meaningfully dispute that they have proposed an improper fail-safe class, Opp. 34-35.  Still, Plaintiffs attempt to maintain their proposed class action by arguing that (1) these problems can be resolved at the class certification stage, and (2) any concerns about administrative feasibility should be assessed after discovery.  Neither of these arguments are

persuasive, primarily because the filing of a complaint may not "serve as a placeholder to obtain discovery to determine whether or not they have a class claim." *Rovinelli v. Trans World Ent. Corp.*, 2021 WL 752822, at *2 (D. Mass. Feb. 2, 2021).[8]

*First*, Plaintiffs argue that their failure to allege that they are members of the proposed class can be "cured at the time of class certification." Opp. 34. They cite no authority for this proposition. For good reason: Case law demonstrates that courts strike class allegations when it is "clear from the face of the Complaint that the plaintiff has fail[ed] to properly allege facts sufficient to make out a class." *Rovinelli*, 2021 WL 752822, at *6 (internal quotation marks omitted). Moreover, the relevant information here—whether Plaintiffs "failed to meet state benchmarks on the [MCAS] English Language Arts Exam," FAC ¶ 109—is already in Plaintiffs' possession, making discovery unnecessary even had Plaintiffs alleged that they were or may be class members.

Plaintiffs go on to indicate that they may rely on discovery to craft a new class definition, in light of their failure to include themselves within the defined class. Opp. 34 ("Discovery will allow Plaintiffs to identify particular testing utilized by schools that would identify students whose literacy skills are less than proficient."). But "[c]lass certification discovery is not a substitute to the pleading requirements of Rule 8 and *Twombly*." *Rovinelli*, 2021 WL 752822, at *7. The Complaint does not allege that Plaintiffs are class members, and allowing the allegations to

---

[8] Plaintiffs' discussion of *Crommelin v. Takeda Pharms. U.S.A., Inc*., 747 F. Supp 3d 304, 309 (D. Mass 2024), fails to recognize that both sets of class claims suffer from the same defect: The overwhelming predominance of individualized issues. As in *Crommelin*, the irreparable flaws in the Complaint's class allegations warrant striking them at the pleading stage.

proceed notwithstanding that failure would permit class actions to be "discovery vehicles" and encourage "expansive class allegations and definitions to permit a fishing expedition." *Id.* at *7.

*Second*, Plaintiffs do not dispute that they have proposed a fail-safe class. Instead, they contend this can be fixed by redefining the class, though they offer no suggestion of how to refine the class definition or of the "objective criteria" on which they may base the class. Opp. 35. This suggestion to refine the injury requirement in the class definition is, moreover, untenable and improper in light of the case history. Plaintiffs added an injury element to the class definition in their amendment to the Complaint, in an apparent effort to evade Defendants' argument that the class defined in the original complaint included too many uninjured individuals. *See* Dkt. 34 at 34-35. Thus, refining the class definition to eliminate this fail-safe language would doom the class as it would again include too many uninjured members. Equally, granting Plaintiffs' request to once again refine the class definition would improperly permit them a third bite at the apple and would allow them to avoid the arguments that Defendants raised in their original motion to dismiss, but with which they do not engage here. *Cf. ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008) ("[P]laintiffs do not get leisurely repeated bites at the apple, forcing a district judge to decide whether each successive complaint [is] adequate.").

*Third*, it is clear from the face of the Complaint that it will not be administratively feasible to determine who is a member of the proposed class and, for similar reasons, it is clear that individual questions predominate, namely with respect to causation and injury. Plaintiffs make no effort to address the inappropriateness of their claims for class treatment given the extensive individualized inquiries that would be required; instead, they ask the Court to ignore these deficiencies and defer judgment. They rely on an inapposite case in which the court declined to strike class allegations related to a misrepresentation where the alleged injury was "economic"

based on purchasing a product that the plaintiffs otherwise would not have purchased or would have paid less for. *See In re Evenflo Co., Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 707 F. Supp. 3d 103, 115 (D. Mass. 2023); Opp. 36. The alleged injury in *In re Evenflo* was, in other words, not based on the "unsafe nature of" the product itself, *id.* at 118, and the court determined that the possible variations as to exposure to the misrepresentations or consumer choices did not justify preventing the class allegations from proceeding to the class certification stage, *id.* at 141. Here, by contrast, the alleged causation and injuries are far more complicated and individualized, as they involve personalized exposure not to the alleged misrepresentations but to the Literacy Materials themselves, and this exposure took place in different classrooms, among other educational offerings, and resulted in widely varied educational outcomes. Determining class membership and resolving individualized causation and injury would plainly not be administratively feasible, *see* Mot. 35-37.[9]

## **CONCLUSION**

The Court should dismiss all claims with prejudice.

---

[9] Plaintiffs summarily address Defendants' arguments regarding individual Defendants. Opp. 37. As explained in the Motion, these individual Defendants should be dismissed. Mot. 38-40.

Dated: May 21, 2025                    Respectfully submitted,

                                       /s/ Felicia H. Ellsworth
                                       FELICIA H. ELLSWORTH (BBO # 665232)
                                       ANDY O'LAUGHLIN (BBO # 691836)
                                       WILMER CUTLER PICKERING
                                         HALE AND DORR LLP
                                       60 State Street
                                       Boston, MA 02109
                                       Tel: (617) 526-6000
                                       Fax: (617) 526-5000
                                       Felicia.Ellsworth@wilmerhale.com
                                       Andy.Olaughlin@wilmerhale.com
                                       *Counsel for Greenwood Publishing Group,*
                                       *LLC; HMH Education Company*

                                       /s/ David Thomas
                                       DAVID THOMAS (BBO # 640854)
                                       GREENBERG TRAURIG, LLP
                                       1 International Place #2000
                                       Boston, MA 02110
                                       Tel: (617) 310-6040
                                       Fax: (617) 897-0940
                                       David.Thomas@gtlaw.com
                                       *Counsel for RWPN, LLC;*
                                       *Lucy Calkins in her personal capacity*

                                       /s/ Javier F. Flores
                                       JAVIER F. FLORES (BBO # 666089)
                                       DINSMORE & SHOHL, LLP
                                       101 Arch Street, Suite 1800
                                       Boston, MA 02110
                                       Tel: (857) 305-6383
                                       Fax: (857) 305-6401
                                       Javier.Flores@dinsmore.com
                                       *Counsel for Fountas and Pinnell, LLC;*
                                       *Irene C. Fountas in her personal capacity;*
                                       *Gay Su Pinnell in her personal capacity*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of May, 2025, I caused this document to be filed through the CM/ECF system, where it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth